1  HOWARD HOLDERNESS (SBN 169814)
2  MORGAN, LEWIS & BOCKIUS LLP
   One Market, Spear Street Tower
3  San Francisco, CA 94105
   Telephone: 415.442.1000
4  Facsimile: 415.442.1001
   E-mail: hholderness@morganlewis.com
5
   JOHN F. SCHULTZ (PAB 67331) (*Pro Hac Vice*)
6  ROBERT A. PARTICELLI (PAB 82651) (*Pro Hac Vice*)
   BARRY L. McCOY (PAB 88117) (*Pro Hac Vice*)
7  MORGAN, LEWIS & BOCKIUS LLP
   1701 Market Street
8  Philadelphia, PA 19103
   Telephone: 215.963.5000
9  Facsimile: 215.963.5001
   E-mail: john.schultz@morganlewis.com
10 E-mail: rparticelli@morganlewis.com
   E-mail: bmccoy@morganlewis.com
11
12 Attorneys for Defendant
   HEWLETT-PACKARD COMPANY
13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                  SAN JOSE DIVISION

17 | NATHAN NYGREN and STEPHEN SHIFFLETTE, on behalf of themselves and all others similarly situated, | Case No. 07-05793 (JW) |
|---|---|
18 | | **NOTICE OF MOTION AND MOTION OF DEFENDANT HEWLETT-PACKARD COMPANY TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
19 |                    Plaintiff, | |
20 |           vs. | |
21 | HEWLETT-PACKARD COMPANY, | |
22 |                    Defendant. | Date:      May 19, 2008<br>Time:      9:00 a.m.<br>Place:     Courtroom 8, 4th Floor<br>Before:   Honorable James Ware |
23

24      TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

25          PLEASE TAKE NOTICE that on May 19, 2008, at 9:00 a.m., or as soon thereafter as the

26 matter may be heard, in Courtroom 8 of the above-captioned court, defendant Hewlett-Packard

27 Company ("HP") will, and hereby does, move this Court for an order under Fed. R. Civ. P.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1  12(b)(6), dismissing all of the claims and causes of action contained in the First Amended Class

2  Action Complaint (the "Amended Complaint") filed in this action by Plaintiffs Nathan Nygren

3  and Stephen Shifflette (collectively, the "Plaintiffs").

4        This motion is based, *inter alia*, on: (a) the fact that Plaintiff Nygren cannot maintain a

5  breach of warranty claim because he has refused to give HP the opportunity to comply with the

6  written warranty contract; (b) the fact that Plaintiff Shifflette's warranty contract expired before

7  his notebook allegedly malfunctioned; (c) the fact that Plaintiffs' warranty "by description" claim

8  is subsumed by the written warranty contract; (d) the fact that the disclaimer in HP's warranty

9  contract bars Plaintiffs' warranty "by description" claim; (e) the fact that HP's products operated

10 in accordance with HP's statements; (f) Plaintiffs' failure to allege that they ever saw or relied

11 upon the alleged statements that form the basis of their claims arising under the California Unfair

12 Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, the Consumer Legal

13 Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, or the False Advertising Act, Cal. Bus.

14 & Prof. Code § 17500; (g) Plaintiffs' failure to demonstrate that HP had pre-sale knowledge of

15 the alleged defect; (h) Plaintiffs' failure to allege a viable predicate violation in support of their

16 "unlawful" UCL claim; (i) Plaintiffs' failure to allege an "unfair" business practice or show a

17 "substantial injury" under the UCL; and (j) Plaintiffs' failure to plead their UCL claim under the

18 "fraudulent" prong in accordance with Federal Rule of Civil Procedure 9(b).

19       HP's motion is based on this Notice, the attached memorandum of points and authorities,

20 the Original Complaint, the Amended Complaint, the Court's records and files in this matter, and

21 any such other evidence and argument that the Court may entertain at any hearing of this matter.

22 Dated: March 31, 2008                    Respectfully submitted,

23
                                           **MORGAN, LEWIS & BOCKIUS LLP**
24

25

26                                         By: _____/s/Robert A. Particelli_____

27                                              Robert A. Particelli

28                                         Attorneys for HEWLETT-PACKARD COMPANY

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

STATEMENT OF THE RELIEF SOUGHT ....................................................................... 1

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND .................................................................................. 3

     A.     Summary of Amended Complaint ............................................................. 3

     B.     HP's Repair Program ................................................................................. 5

III.    STANDARD AND SCOPE OF REVIEW ............................................................ 6

IV.    ARGUMENT ......................................................................................................... 7

     A.     Plaintiffs Have Failed to State a Claim for Breach of Warranty ............................ 7

           1.     The Decisional Law From This Court and Other California State And Federal Courts Establishes That HP's Warranty Obligation Requires That HP Repair Or Replace Defective Products For One Year From Purchase ................................................................................. 7

           2.     Plaintiff Shifflette's Warranty Claim Must be Dismissed Because It Is Contractually Time-Barred ................................................................. 10

           3.     Plaintiff Nygren Cannot Maintain A Warranty Claim Premised On A Breach Of HP's Warranty Because He Refused To Allow HP To Diagnose And/Or Repair His Computer Or To Take Advantage of HP's Repair Program ........................................................................... 11

           4.     Plaintiffs' Warranty By Description Claim Fails Because The Computers Functioned As Intended And The Subject Matter Of Their Amended Complaint Falls Squarely Within The Four Corners Of The Written Warranty Contract ............................................ 14

     B.     Plaintiffs' UCL, FAA And CLRA Claims Must Be Dismissed Because Those Claims Cannot Be Sustained Under The Facts Pled In The Amended Complaint .......................................................................... 17

           1.     Plaintiffs Cannot Maintain Their UCL, FAA Or CLRA Claims, Based On HP's Alleged Misrepresentations, Because The Statements Made By HP Were True And Because Neither Named Plaintiff Alleges That He Ever Saw Or Relied Upon Those Statements ...................................................................................... 17

           2.     Plaintiffs Cannot Maintain Their UCL Or CLRA Claims, Based On HP's Alleged Failure To Disclose, Because They Do Not Allege That HP Had Pre-Sale Knowledge Of The Purported Defect And Because California Law Does Not Allow Such A Claim Under The Facts Presented By Plaintiffs ................................................. 19

     C.     Plaintiffs' UCL Claims Are Flawed As a Matter of Law ...................................... 20

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1

       1.    Plaintiffs' Claim Arising Under the "Unlawful" Prong Of The UCL Must Be Dismissed Because There Is No Viable Predicate Violation ................................................................................ 21

       2.    Plaintiffs' Claim Under The "Unfair" Prong Of The UCL Must Fail Because HP's Conduct Cannot Reasonably Be Characterized As Unfair and Because Neither Named Plaintiff Has Suffered "Substantial Injury" ................................................................................ 22

       3.    Plaintiffs' Claims Arising Under The "Fraud" Prong Of The UCL Must Fail Because That Claim Was Not Pled In Accordance With Federal Rule Of Civil Procedure 9(b) ................................................ 24

V.     CONCLUSION ............................................................................................ 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

**TABLE OF AUTHORITIES**

**CASES**

*Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238 (2d Cir. 1986) ................................. 8

*Akkerman v. Mecta Corp., Inc.*, 152 Cal. App. 4th 1094 (2d Dist. 2007)..................................... 18

*Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005) ...................... 1, 8, 13

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) .................................. 6

*Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (4th Dist. 2006) ............................ 19

*Barretto v. Smith*, 2007 U.S. Dist. LEXIS 93760 (E.D. Cal. Dec. 20, 2007) .............................. 20

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........................................ 6, 7, 12

*Boston Helicopter Charter, Inc. v. Augusta Aviation Corp.*, 767 F. Supp. 363
    (D. Mass. 1991).......................................................................... 9

*Brothers v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 82027
    (N.D. Cal. Oct. 31, 2006) ............................................................ 8, 15

*Brothers v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 13155
    (N.D. Cal. Feb. 12, 2007)........................................................ 8, 11, 13

*Buller v. Sutter Health*, 160 Cal. App. 4th 981 (1st Dist. 2008).............................. 3, 19

*Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223 (2006) ............................ 18

*Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394
    (2d Dist. 2006) ...................................................................... 22, 23

*Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988 (1st Cir. 1992)..................................... 8

*Carrau v. Marvin Lumber & Cedar Co.*, 93 Cal. App. 4th 281 (1st Dist. 2001)........................... 8

*Daugherty v. American Honda Motor Co.*,
    144 Cal. App. 4th 824 (2d Dist. 2006).........................................................*passim*

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604 (3d Cir. 1995) ........................... 8

*Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942 (Ill. App. Ct. 2005)........................... 8

*In re Ford Motor Co. Speed Control Deactivation Switch Prods.*
    *Liab. Litig.*, No. 1718, 2007 WL 2421480 (E.D. Mich. Aug. 24, 2007) ......................... 8

*Hall v. Time, Inc.*, 158 Cal. App. 4th 847 (3d Dist. 2008)......................................... 18

*Hoey v. Sony Elecs, Inc.*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007) ................ 1, 2, 7, 10, 18, 19, 20

*Jefferson v. Chase Home Fin.*, 2007 U.S. Dist. LEXIS 94652
    (N.D. Cal. Dec. 14, 2007) ............................................................ 18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

Case No. 07-05793 (JW)

DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS

*Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612 (2d Dist. 1993).................................. 23

*Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965 (1st Dist. 1997).................. 17, 20, 21, 22, 23

*Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991) ...................................... 16

*Long v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 79262
    (N.D. Cal. July 27, 2007) ............................................................................................. *passim*

*Lopez v. Washington Mut. Bank, F.A.*, 2002 U.S. App. LEXIS 24344
    (9th Cir. Aug. 6, 2002) ...................................................................................................... 21

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ............................................................................. 5

*Meinhold v. Sprint Spectrum, L.P.*, 2007 U.S. Dist. LEXIS 35806
    (E.D. Cal. May 16, 2007) .............................................................................................. 17, 18

*Nat'l Rural Telecommunications Co-op v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059
    (C.D. Cal. 2003) ................................................................................................................. 21

*Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) .................... 6

*In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308 (N.D. Cal. 2007) ............................................ 6

*Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001).......................................................................... 6, 12

*Salyards ex rel. Salyards v. Metso Minerals Tampere Oy*,
    2005 U.S. Dist. LEXIS 29360 (E.D. Cal. Nov. 10, 2005) ................................................. 16

*Sampler v. City Chevrolet Buick Geo*, 10 F. Supp. 2d 934 (N.D. Ill. 1998) ............................. 8, 9

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303
    (N.D. Cal. 1997)................................................................................................................. 23

*Tercica, Inc. v. Insmed Inc.*, 2006 U.S. Dist. LEXIS 41804
    (N.D. Cal. June 9, 2006) .................................................................................................... 18

*In re Vaccine Cases*, 134 Cal. App. 4th 438 (2d Dist. 2005)....................................................... 21

*Vess v. Ciba-Geigy Corp*, 317 F.3d 1097 (9th Cir. 2003)........................................................... 24

*Walsh v. Ford Motor Co.*, 588 F. Supp. 1513 (D.D.C. 1984)........................................................ 9

*Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135 (2d Dist. 1986) ............................ 12

## STATUTES AND RULES

Fed. R. Civ. P. 8(a)(2) ................................................................................................................. 20

Cal. Bus. & Prof. Code § 17200 ........................................................................................ *passim*

Cal. Bus. & Prof. Code § 17500 ........................................................................................ *passim*

Cal. Civ. Code § 1750................................................................................................................ *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal. Civ. Code 1795.6(b) ........................................................................................................ 13

Cal. Com. Code § 1201(10) .................................................................................................... 16

Cal. Com. Code § 2719 ........................................................................................................... 13

### OTHER AUTHORITIES

18 Williston On Contracts § 52:46 (4th ed.) ............................................................................ 8

Anderson on the Uniform Commercial Code § 2-313.188 (3d ed.) .......................................... 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

**STATEMENT OF THE ISSUES**

1.    Whether Plaintiff Nygren's breach of express warranty claim should be dismissed because he has refused to give HP the opportunity to repair his computer?

2.    Whether Plaintiff Shifflette's breach of express warranty claim should be dismissed because it is time-barred?

3.    Whether Plaintiffs' breach of express warranty "by description" claim should be dismissed because the computers operated as intended and/or because the "defect" complained about by Plaintiffs is covered by the written warranty contract?

4.    Whether Plaintiffs' warranty claims should be dismissed pursuant to *Long v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 79262 (N.D. Cal. 2007)?

5.    Whether the disclaimer in HP's Limited Warranty bars Plaintiffs' breach of express warranty "by description" claim?

6.    Whether Plaintiffs' statutory claims based on HP's alleged misrepresentations must be dismissed because the computers operated as intended and/or because neither Plaintiff alleges that they saw the representations that form the basis of their claims?

7.    Whether Plaintiffs' statutory claims based on HP's alleged "failure to disclose" must be dismissed pursuant to *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2d Dist. 2006) and its progeny?

8.    Whether Plaintiffs' UCL claims must be dismissed because: (a) they have not established a viable predicate violation in connection with their claim arising under the "unlawful" prong; and/or (b) they have not suffered "substantial injury" or pled any conduct that could be deemed "unfair"; and/or (c) they have failed to comply with Federal Rule of Civil Procedure 9(b) in pleading their claim arising under the "fraud" prong?

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1

**STATEMENT OF THE RELIEF SOUGHT**

2          Hewlett-Packard Company ("HP") has moved the Court to dismiss the First Amended

3   Class Action Complaint ("Amended Complaint") filed by Plaintiffs Nathan Nygren ("Plaintiff

4   Nygren") and Stephen Shifflette ("Plaintiff Shifflette") (collectively, the "Plaintiffs") pursuant to

5   Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, Plaintiffs' Amended

6   Complaint fails to state a claim upon which relief can be granted.

7

**MEMORANDUM OF POINTS AND AUTHORITIES**

8   **I.   INTRODUCTION**

9          Plaintiffs have filed this putative nationwide class action alleging that HP breached its

10  Limited Warranty and violated the California Unfair Competition Law ("UCL"), Consumer Legal

11  Remedies Act ("CLRA") and False Advertising Act ("FAA") by selling notebook computers with

12  an alleged defect that causes the wireless capability in certain notebook computers to cease

13  operating during the computer's "five-year" useful life.  Plaintiffs contend that some purchasers

14  of these notebook computers, such as Plaintiff Shifflette, manifest the wireless problem after their

15  one-year HP Limited Warranty expires, while others, such as Plaintiff Nygren, experience this

16  issue while the product remains under warranty.  In both circumstances, Plaintiffs have failed to

17  state a claim upon which relief can be granted.

18         Indeed, numerous California courts, including this particular Court, have repeatedly held

19  that a manufacturer's warranty obligations expire at the end of the warranty term.  *Long v.*

20  *Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 79262, at *12-*13 (N.D. Cal. July 27, 2007); *Hoey*

21  *v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007).  As a corollary to this general

22  rule, these same courts have held that an in-warranty repair of a defective product is sufficient as

23  long as it returns the product to its warranted condition until the warranty expires; whether the

24  product fails again after the warranty expires is immaterial.  *See Long*, 2007 U.S. Dist. LEXIS

25  79262, at *12-*13; *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005).

26         In light of this established case law, neither Plaintiff can state a claim for breach of HP's

27  one year written warranty.  Plaintiff Shifflette's warranty claim is time-barred because he alleges

28  that he did not experience any problems with the computer until after his warranty expired.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1    Plaintiff Nygren's warranty claim fails because he has refused to tender his computer to HP for a

2    repair; the alleged reason for failing to comply with *his* warranty obligation — that he believes

3    the repair will fail again after the expiration of the one-year warranty but during the computer's

4    alleged five-year useful life — is neither factually sound nor legally valid.  Indeed, HP has no

5    obligation to make certain the repair works beyond the term of the one-year written warranty

6    given to both Plaintiffs, and Plaintiffs have no legal justification for refusing a repair that will

7    satisfy HP's one year warranty obligation.  *Long*, 2007 U.S. Dist. LEXIS 79262, at *12-*13;

8    *Hoey*, 515 F. Supp. 2d at 1105; *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824,

9    830 (2d  Dist. 2006).  Thus, as a matter of law, Plaintiffs' warranty claims fail and the only

10    reasonable expectation Plaintiffs could have had was that HP would repair the computer during

11    the warranty term if an issue arose – not that the unit would operate flawlessly for "five" years.

12        What's more, although it was not legally obligated to do anything for individuals with

13    expired warranties, HP began – in order to avoid customer dissatisfaction – development of a

14    repair and warranty enhancement program for the notebook computer models purchased by

15    Plaintiffs and many other (if not all) of the models in the putative class.  Coincidentally, the day

16    after the filing of the Original Complaint, but prior to HP's acceptance of service, HP

17    implemented this repair program by posting the existence of the program on its website.  HP

18    followed this initial publishing of the repair program with postings on the HP Forum frequented

19    by Plaintiff Nygren, emails to notebook computer owners who had registered their notebooks

20    with HP, and multiple other types of notifications. The substance and effect of HP's repair

21    program is simple: a consumer who purchased a notebook computer that falls within the group of

22    models identified by HP, and which has experienced certain wireless capability issues, is entitled

23    to a free hardware repair for a period of twenty-four months from the date of purchase.  If the

24    repair fails during that twenty-four month period, HP will repair the computer again.

25        Despite the fact that: (1) both Plaintiffs are eligible for the repair program; and (2) HP's

26    voluntary repair program goes well beyond any contractual or legal obligation it has under

27    California law to repair products after the expiration of its Limited Warranty, Plaintiffs have

28    nonetheless brought this class action against HP.    Thus, Plaintiffs' warranty claims are

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                                    Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1   unjustifiable and without merit; indeed, HP's repair program ensures that it will repair either

2   Plaintiffs' computer beyond the term of their original HP Limited Warranty — for a full twenty-

3   four months from the date of purchase (until January 2009 in Nygren's case) — in the event that

4   the wireless issue reappears.  In short, HP has gone above and beyond its legal obligation by

5   providing a repair program for out of warranty consumers.  Plaintiffs cannot now refuse to take

6   advantage of that repair program in order to pursue legal claims for breach of warranty against

7   HP and, as a result, their warranty claims must be dismissed.

8        Plaintiffs' claims under the UCL, CLRA and FAA also must be dismissed.  Those claims

9   are, in part, premised upon HP's alleged misrepresentation that the "HP Pavilion notebooks come

10  with a wireless LAN for complete mobility."  Such claims fail because, by the Plaintiffs' own

11  admission, the notebooks did in fact come with a wireless LAN and the wireless function did in

12  fact operate correctly when Plaintiffs purchased their computers.  Likewise, Plaintiffs' claim that

13  HP violated the UCL and CLRA by "failing to disclose" that the wireless components would

14  "prematurely" fail also cannot survive because: (1) HP could not have disclosed to Plaintiffs in

15  late 2006 and early 2007 (the time frame when each purchased their notebooks) what it did not

16  know at that time; and (2) even if HP had such knowledge, it had no legal duty to disclose the

17  matter under well-established California law discussed in cases like *Daugherty v. American*

18  *Honda*, 144 Cal. App. 4th 824 (2d Dist. 2006) and *Buller v. Sutter Health*, 160 Cal. App. 4th

19  981 (1st Dist. 2008).  Furthermore, HP did disclose the issue on its website in November 2007

20  when it announced the repair program; thus, the idea that HP was intentionally hiding something

21  is without merit.  For these reasons, as well as the reasons set forth below, Plaintiffs' claims

22  against HP must fail and the Amended Complaint should be dismissed with prejudice.

23  **II.  FACTUAL BACKGROUND**

24      **A.    Summary of Amended Complaint.**

25       On November 14, 2007, Plaintiff Nygren filed the Original Complaint, alleging that HP's

26  notebooks "suffer from a flaw that renders them unuseable for remote internet access."  Original

27  Complaint ¶ 18.  On February 28, 2008, an Amended Complaint was filed by Plaintiff Nygren,

28  and an additional named plaintiff, Stephen Shifflette, was added to the lawsuit.    Amended

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

Complaint. ¶ 6.  In the Amended Complaint, Plaintiffs allege that "[o]ne of the primary uses of a notebook computer is for remote access to the internet," and that HP's computers "suffer from a common defect that causes a substantial number of these HP Notebook Computers' wireless capability to fail within the first five years, including during the first year of use, rendering these computers unable to connect remotely to the internet."  *Id.* at ¶¶ 18, 19.

Plaintiff Nygren is a resident of Wisconsin who purchased an HP notebook computer model dv6110 on January 14, 2007.  *Id.* ¶ 5.  According to Plaintiff Nygren, he "expected that the wireless features would last five years without material failure."  *Id.*  He further alleges that, on September 14, 2007, the "wireless feature failed" and that "HP has refused Plaintiff's request to refund his purchase price or replace his notebook computer . . . ."  *Id.*  Plaintiff Shifflette is a resident of Goochland County, Virginia who purchased an HP notebook computer model 6140 in October 2006 at a CompUSA.  *Id.* ¶ 6.  Like Plaintiff Nygren, he alleges that "he reasonably expected that the wireless features would last five years without material failure."  *Id.*  He further alleges that, on December 17, 2007, "the wireless capabilities on the computer began to malfunction" and that he "bought an external wireless device to enable his computer to connect to wireless networks." [1]  *Id.*

While Plaintiffs acknowledge that HP initiated a program that provides its consumers with a free-of-charge repair (described in detail below) if the alleged wireless issue of which they complain occurs within two years from the date of purchase, Plaintiffs nonetheless assert causes of action against HP for breach of warranty, and for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, and the False Advertising Act, Cal. Bus. & Prof. Code § 17500.  Plaintiffs brought the lawsuit on behalf of "all persons and entities who since January 1, 2007 purchased or leased HP Pavilion Series 6000 and 9000 [or] Presario Series 6000 notebook

---

[1]     In support of their claims, Plaintiffs make reference to statements allegedly made by other putative class members on an internet forum maintained by HP (the "Forum").  *Id.* ¶¶ 20-23.  An examination of Plaintiff Nygren's entries on the Forum show that he has denied HP the opportunity to conduct an in-warranty diagnosis or repair his computer.  *See* Section IV(A)(3), *infra.*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1    computer[s] . . . ." *Id.* ¶¶ 8, 24.  Plaintiffs seek restitution, an injunction ending HP's allegedly

2    deceptive conduct, compensatory and statutory damages, prejudgment interest and attorneys'

3    fees.  *Id.* at Section XII.

4    **B.    HP's Repair Program.**

5            Although it was not obligated to do so, HP had, by November 2007, decided to implement

6    a formal warranty enhancement and repair program to address certain issues with the HP dv6000,

7    dv9000 and Compaq v6000 notebook computers, and posted the details of that program on its

8    website.[2]  Among the symptoms addressed by the repair program were those that form the basis

9    of Plaintiffs' claims here: that "[t]he notebook does not detect wireless networks and the wireless

10   adapter is not detected in the Device Manager."  *See* Exhibit "A."  The webpage for the repair

11   program assists HP's customers in determining whether they are eligible for the program's

12   benefits (eligibility is determined by the model of the notebook and the symptoms experienced),

13   informs customers that they should update their BIOS in order to correct the issue, and states that

14   "[i]f your notebook needs to be returned to HP for repair, the shipping costs are free.  HP will

15   immediately send you a postage paid container in which to send in your computer, and we will

16   pay the return shipping.  After HP repairs your notebook, you will continue to be covered by the

17   HP Limited Warranty Service Enhancement program for 24 months after the start of your original

18   standard limited warranty, or 90 days after receiving your free repair, whichever is later."  *See id.*

19           Thus, those customers who have experienced a problem with the wireless capability of

20   their notebook computers "have up to 24 months after the start of [their] original standard limited

21   warranty entitlement to get [their] notebook repaired if it is listed in the Product Numbers

22   Included document and displays one or more than one of the symptoms listed in the support

23   article."[3]  Moreover, any repairs made by HP under the program will continue to be covered by

24   [2]    Attached at Exhibit "A" is a copy of the web posting that is referenced in the Amended
       Complaint and which describes HP's repair program and one year warranty enhancement.
25     Amended Complaint ¶ 24.  While the scope of review on a motion to dismiss for failure to state a
       claim is generally limited to the contents of the complaint, "[a] court may consider evidence on
26     which the complaint 'necessarily relies' if:  (1) the complaint refers to the document; (2) the
       document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy
27     attached to the 12(b)(6) motion."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

28   [3]    HP posted a notification about the program in the Forum referred to by the Plaintiffs in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5                                    Case No. 07-05793 (JW)

DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS

1    the HP Limited Warranty Service Enhancement for at least two years from the date that the

2    computer was purchased.  Although both Plaintiff Nygren and Plaintiff Shifflette are eligible for a

3    repair under HP's repair program, neither has taken advantage of their eligibility.

4          For the reasons set forth below, Plaintiffs' Amended Complaint should be dismissed.

5    **III.    STANDARD AND SCOPE OF REVIEW**

6          Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where there is

7    either a "lack of a cognizable legal theory" or the "absence of sufficient facts alleged under a

8    cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

9    Although the Court must accept all factual allegations as true, it does not need to "accept as true

10   unreasonable inferences or conclusory legal allegations cast in the form of factual allegations."

11   *Neilson v. Union Bank of California*, N.A., 290 F. Supp. 2d 1101, 1112 (C.D. Cal. 2003).

12   "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

13   dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).  Moreover, "[w]hile a complaint

14   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

15   plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

16   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

17   do." *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 313-14 (N.D. Cal. 2007) (citation

18   omitted).  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007), the United States

19   Supreme Court elaborated further and stated that: "[w]hile for most types of cases, the Federal

20   Rules eliminated the cumbersome requirement that a claimant 'set out in detail the facts upon

21   which he bases his claim,' Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion,

22   of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a

23   claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the

24   claim, but also 'grounds' on which the claim rests." 127 S. Ct. at 1965 n.3.

25

26   their Amended Complaint; indeed, on November 16, 2007, HP employee Jim Kahler posted a link
     to the program on the Forum, stating that "I just want to highlight that the program notice has
27   been posted regarding this wireless issue.  If you are out of warranty and your product
     experiences the issue and falls with the defined product and serial number range, we will provide
28   a repair at no charge."  *See* November 16, 2007 Forum Posting, attached hereto as Exhibit "B."

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1    **IV.    ARGUMENT**

2    **A. Plaintiffs Have Failed to State a Claim for Breach of Warranty.**

3    Plaintiffs have asserted a count for "breach of express warranty" that alleges HP breached

4    its Limited Warranty.  In addition, Plaintiffs have asserted what can best be described as a claim

5    for "breach of warranty by description," alleging that HP breached its promise that "HP Pavilion

6    notebooks come with wireless LAN for complete mobility."  Amended Complaint at ¶ 52.  In light

7    of the fact that (1) this Court and other California state and federal courts have unequivocally held

8    that HP's obligation under its warranty contract is limited to repairing or replacing defects that

9    manifest during the warranty term such that its computers operate as warranted for one full year

10    from the date of purchase, and (2) HP has implemented a repair program that provides for a free

11    hardware repair of Plaintiffs' computers for *two years* from the date of purchase, Plaintiffs cannot

12    conceivably state a claim for breach of warranty against HP.  By making available a free hardware

13    repair of the wireless issue identified by Plaintiffs for an extra year beyond the expiration of

14    Plaintiffs' Limited Warranty, HP has, by definition, complied fully with its warranty obligation.

15    Plaintiffs' breach of warranty claim must, therefore, be dismissed.

16    **1.    The Decisional Law From This Court and Other California State and Federal**

17    **Courts Establishes That HP's Warranty Obligation Requires That HP Repair or Replace Defective Products For One Year From Purchase.**

18    California state and federal courts have made clear that a manufacturer's warranty

19    obligations expire at the end of the warranty term; thus, if a product operates as warranted during

20    the term of the warranty and fails thereafter, or if a product is repaired during the warranty period

21    and does not fail again until the warranty has expired, the manufacturer has satisfied its warranty

22    obligations and any breach of express warranty claim is barred.  *See Hoey*, 515 F. Supp. 2d at

23    1104-05 (noting that a plaintiff cannot bring a warranty claim after the expiration of a warranty);

24    *Long*, 2007 U.S. Dist. LEXIS 79262, at *12 (reaffirming the dismissal of plaintiff's warranty

25    claim with prejudice and stating that "[i]n this case, HP fulfilled its warranty promises, by

26    providing Long with a computer that was fully operable during the one-year warranty period.")

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7                                                    Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

(Ware, J.);[4] *Brothers v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 13155, at *13-14 (N.D. Cal. Feb. 12, 2007) (dismissing breach of warranty claim with prejudice and stating that "replacement or repair of malfunctioning components during the life of the warranty is exactly what the Limited Warranty provides. HP could not have breached the Limited Warranty by acting in conformance with it."); *Brothers v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 82027, at *25 (N.D. Cal. Oct. 31, 2006) (dismissing breach of warranty claim where a defect repaired during warranty period reappeared after warranty expiration, and stating that "[t]o the extent plaintiff alleges that HP breached the warranty by failing to repair the computer when it again displayed problems, it is undisputed that the warranty had already expired."); *Annunziato*, 402 F. Supp. 2d at 1141-42 (holding that plaintiff's "express warranty [] expired, and hence his claims based on breach of the express warranty fails as a matter of law."); *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2d  Dist. 2006) ("The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed."); *Carrau v. Marvin Lumber & Cedar Co.*, 93 Cal. App. 4th 281, 288-92 (1st Dist. 2001) (reversing jury verdict on express warranty claim because "no defect in the windows was discovered or reported until over one year had passed from the date of purchase").  These authorities stand for the "black letter" proposition that a manufacturer's warranty obligation expires at the end of the agreed upon period.[5]

---

[4]    Despite the fact that the great weight of judicial authority is against them, the *Long* plaintiffs have appealed this decision to the United States Court of Appeals for the Ninth Circuit.

[5]    *See* ANDERSON ON THE UNIFORM COMMERCIAL CODE § 2-313.188 (3d ed.) ("When a time limitation on a warranty provision is valid, the buyer must comply with the limitation and is barred if he or she does not act within the required time . . . .  When the defect arises in the goods after the warranty period has expired and the buyer knew that there was such a time limitation, neither the manufacturer nor the seller is liable for breach of warranty . . . ."); 18 WILLISTON ON CONTRACTS § 52:46 (4th ed.) ("[T]here can be no recovery on a warranty that is limited to a specified time period, if the defects are discovered only after the term of the warranty has expired.").  Moreover, numerous other jurisdictions follow the same rule.  *See Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995); *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (1st Cir. 1992); *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, No. 1718, 2007 WL 2421480, at *7 (E.D. Mich. Aug. 24, 2007); *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. Ct. 2005); *Sampler v. City*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

Case No. 07-05793 (JW)

DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS

Indeed, in *Long v. Hewlett-Packard Company*, this Court directly rejected the assertion, also brought here by Plaintiffs, that HP has some obligation to ensure that its notebook computers operate in a defect-free manner for their "useful lives" or some other period beyond the one-year term of the Limited Warranty. Relying on the California Court of Appeal decision in *Daugherty*, this Court dismissed with prejudice the claims of (1) a plaintiff whose notebook computer manifested an alleged defect *after* the expiration of HP's Limited Warranty, and (2) a plaintiff whose notebook computer manifested an alleged defect *during* the Limited Warranty term, was repaired during the warranty period, and then manifested a defect again after the Limited Warranty expired. The *Long* Court held:

> Simply stated, it is clear following Daugherty that a plaintiff cannot maintain a breach of warranty claim under California law for a product that is repaired within the warranty period and fails again months after the warranty has expired, or for a product that fails for the first time after the warranty has lapsed. This is for the reasons stated by the Daugherty trial court: "Opening the door to plaintiffs' new theory of liability would change the landscape of warranty and product liability law in California. Failure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself."

2007 U.S. Dist. LEXIS 79262 at *10-11 (quoting *Daugherty*, 144 Cal. App. 4th at 829) (internal citations omitted).

In dismissing the warranty claims of the *Long* plaintiff whose repaired product failed again outside the warranty period, this Court concluded that "HP made three relevant representations in its express warranty. First, that HP hardware, accessories and supplies 'will be free from defects in materials and workmanship after the date of purchase' for a one-year period. Second, if HP receives notice of a defect during the warranty period, it will, at its option, repair or replace products which prove defective. Third, HP does not warrant that its products will operate uninterruptedly or free of errors – simply that HP will repair or replace any product to the warranted condition within a reasonable time." *Id.* at *12; *see also* Worldwide Limited Warranty and Technical Support (the "Limited Warranty"), attached hereto as Exhibit "C" at 1, 3

*Chevrolet Buick Geo*, 10 F. Supp. 2d 934, 940-41 (N.D. Ill. 1998); *Boston Helicopter Charter, Inc. v. Augusta Aviation Corp.*, 767 F. Supp. 363, 374 (D. Mass. 1991); *Walsh v. Ford Motor Co.*, 588 F. Supp. 1513, 1536 (D.D.C. 1984).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9                                            Case No. 07-05793 (JW)

DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS

1   (stating that "duration of warranty period" is "1 year" and "HP does not warrant that the

2   operation of this product will be uninterrupted or error-free.").  As a result, this Court held that

3   when HP "tendered an adequate repair of the Pavilion" such that "the Pavilion was again fully

4   operable when HP returned it to Long," HP "fulfilled its warranty promises, by providing Long

5   with a computer that was fully operable during the one-year warranty period."  2007 U.S. Dist.

6   LEXIS 79262, at *12.

7       As *Long*, *Daugherty*, *Brothers, Annunziato*, and the other cases cited above establish, HP

8   does not promise that the product will operate flawlessly during the warranty period; similarly,

9   HP does not promise that it will provide free repairs of defects that manifest after its one-year

10  warranty has expired.  *See also Hoey*, 515 F. Supp. 2d at 1104 (holding that there is nothing in a

11  near-identical Sony computer warranty that expressly or impliedly warrants that the "computer

12  will be defect-free either during the warranty period or thereafter").  To the contrary, HP

13  warrants that it will repair or replace any defective products that manifest a defect *during* the

14  warranty period and that are tendered to it for repair.  Consequently, Plaintiffs' assertion that

15  they "reasonably expected that the wireless features would last five years without material

16  failure" is not only a non-sequitur, it is legally irrelevant.  When this black-letter interpretation of

17  California law and HP's Limited Warranty is applied to Plaintiffs' allegations, it is indisputable

18  that their breach of warranty claims must be dismissed.  Any conceivable question regarding the

19  propriety of this result is obviated by the fact that HP has a program in place that provides for a

20  hardware repair of both Plaintiffs' computers for an extra year beyond the expiration of their

21  one-year Limited Warranties – a repair program they are both aware of and for which they are

22  both still eligible to participate.

23       **2.**      **Plaintiff Shifflette's Warranty Claim Must be Dismissed Because It Is**
         **Contractually Time-Barred.**

24

25       Pursuant to *Daugherty*, *Brothers, Long*, and their progeny, Plaintiff Shifflette's breach of

26  warranty claim must be dismissed.  Plaintiff Shifflette purchased his computer in October of

27  2006, but alleges that he did not experience any problems with the computer until December 17,

28  2007.  Amended Complaint ¶ 6.  Thus, Plaintiff Shifflette cannot state a claim for breach of HP's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10                                Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1    Limited Warranty because his one year warranty had already expired by the time of the alleged

2    malfunction. *See Long*, 2007 U.S. Dist. LEXIS 79262, at *12; *Brothers*, 2007 U.S. Dist. LEXIS

3    13155, at *13-14; *Daugherty*, 144 Cal. App. 4th at 829.

4        For the reasons set forth above in Section IV(A)(1), Plaintiff Shifflette's allegation that he

5    "reasonably expected that the wireless features would last five years without material failure"

6    does not save his claim for breach of warranty. Amended Complaint at ¶ 6. Indeed, Plaintiff

7    Shifflette's "expectation" is far from "reasonable" because HP's Limited Warranty Statement is

8    clear that its products might not operate in an error-free fashion during the one-year warranty

9    term, and that HP's repair/replace obligation is limited to one year. *See* Exhibit "C" at 3. Plaintiff

10   Shifflette's "expectation" is, therefore, not based upon any statement or promise made by HP.

11   Although Plaintiff Shifflette's Limited Warranty has expired, he is not without recourse; he

12   remains eligible until October 2008 to obtain a free repair of his HP notebook computer under the

13   HP repair program for the wireless issue of which he complains.

14    **3.    Plaintiff Nygren Cannot Maintain A Warranty Claim Premised On A Breach
          Of HP's Warranty Because He Refused To Allow HP To Diagnose And/Or
15        <u>Repair His Computer or to Take Advantage of HP's Repair Program</u>.**

16        Unlike Plaintiff Shifflette, Plaintiff Nygren alleges that his notebook computer

17   experienced an alleged wireless issue during the term of his Limited Warranty. Plaintiff Nygren

18   alleges that he purchased his notebook computer on January 14, 2007, that a malfunction

19   occurred on September 14, 2007, and that the wireless card provided by HP shortly thereafter

20   failed to remedy the issue. Amended Complaint ¶ 5. Plaintiff Nygren's breach of warranty

21   claim nonetheless fails because he repeatedly refused to allow HP to provide an in-warranty

22   repair while his computer remained under warranty (until January 14, 2008) and, subsequently,

23   failed to take advantage of the free hardware repair made available under HP's repair program.

24   Indeed, Plaintiff Nygren's postings on the HP website establish that he has affirmatively

25   prevented HP from complying with its warranty obligation:

26        So get this, the other day I get a call from a Matthew Meyers of HP's Escalation
          team. *He tells me that HP has assigned him to this issue and he's re-opened my*
27        *case to see if I'd like to send in my notebook for repair*.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                                    Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1

2
> *. . . . **He said that they need to see my notebook to diagnose it**. . . His response . . . "**it's possible that your issue has a different cause, so we need to have your machine in to diagnose the prob**."*

3
> *. . . . Yet he was insistent that they need to diagnose mine.*

4
> HP still doesn't have a certain fix and *I still refuse to send my machine in without some certainty that the source of the issue will be remedied.*

5

6
*See* Excerpt from Forum, Dated November 21, 2007, attached hereto as Exhibit "B" (emphasis

7
added) (third ellipsis in original). Similarly, in an earlier post, Plaintiff Nygren proclaimed: "*I

8
speaking for myself, refuse to send it in for a motherboard replacement* because I'll only get

9
another lemon, prone to the same issues this one was." *See* Excerpt from Forum, Dated October

10
23, 2007, attached hereto as Exhibit "B" (emphasis added). As shown by these postings, Plaintiff

11
Nygren has not allowed HP to fulfill its obligations under the warranty contract, and cannot

12
allege, as is required of him by California law, that HP committed any breach of warranty or that

13
he was injured in any way as a result of HP's conduct. *See Williams v. Beechnut Nutrition Corp.*,

185 Cal. App. 3d 135, 142 (2d Dist. 1986).

14

15
Plaintiff Nygren's refusal to allow HP to repair his computer appears to arise from his

16
mistaken belief, as set forth in the Amended Complaint, that: (1) he is entitled to a repair that will

17
render the computer "defect-free" for the remainder of its alleged five-year useful life; and (2) he

18
may sue HP for breach of warranty without tendering his computer to HP if he unilaterally

19
concludes that HP cannot repair his computer in a manner that meets his self-defined standard.

Neither of these assertions are supported by California law.[6]

20

21
As a threshold matter, *Long* and *Annunziato*, among other cases, establish that an in-

22
warranty repair performed by a manufacturer is sufficient if the repaired product operates as

warranted for the remainder of the warranty period. As this Court noted in *Long*, the fact that the

23

24
[6]      While Plaintiffs vaguely allege that the hardware repair offered by HP is "not an adequate

25
fix" – making the "warranty extension an inappropriate and inadequate remedy " – those are exactly the kinds of conclusory allegations that should be disregarded by the Court when deciding

26
a motion to dismiss. Amended Complaint ¶ 24; *Twombly*, 127 S. Ct. at 1965 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement

27
of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."); *Ove*, 264 F.3d at 821 ("[C]onclusory allegations of law and unwarranted inferences

28
are insufficient to defeat a motion to dismiss.").

12                                          Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

repaired part may malfunction again outside the warranty period is "immaterial to [plaintiff's] breach of express warranty claim." *Long*, 2007 U.S. Dist. LEXIS 79262, at *13; *see also Annunziato*, 402 F. Supp. 2d at 1141-42 (rejecting assertion that the alleged computer defect was "continuing in nature" and that the in-warranty repair "simply masked the problem until after the express warranty had allegedly expired," and dismissing plaintiff's warranty claim as contractually time-barred).[7]  In other words, there is no logical or legal basis under California law for distinguishing between a consumer whose product "is repaired within the warranty period and fails again months after the warranty has expired" and one whose product "fails for the first time after the warranty has lapsed." *Long,* 2007 U.S. Dist. LEXIS 79262, at *10.  In both instances, the customers are subject to the temporal limitation on their right to obtain repair or replacement of defective parts, have received the benefit of their bargain, and fall within the "general rule" that a warrantor's obligations end when the warranty expires.

Although it is always HP's goal and intention to produce or repair a product in a fashion that ensures customer satisfaction (and it believes it has done so here through its repair program), it is neither Nygren's contractual right nor prerogative to refuse an offered hardware repair that would render his computer fully operable for the remainder of the warranty period simply because he believes that it will fail again *after* the warranty expires.[8]  *See, e.g.*, *Brothers*, 2007 U.S. Dist. LEXIS 13155, at *13-*14 (dismissing the warranty claim on the ground that it was contractually time-barred, and noting that while the plaintiffs argued that "replacing the failed

---

[7]    Under the terms of HP's Limited Warranty Statement, Plaintiff Nygren's "sole and exclusive remedy" is a "repair or replacement."  Exhibit "C" at 3  ("IF YOUR HP BRANDED HARDWARE PRODUCT FAILS TO WORK AS WARRANTED ABOVE, YOUR SOLE AND EXCLUSIVE REMEDY SHALL BE REPAIR OR REPLACEMENT."); *see also* Cal. Com. Code § 2719 (expressly permitting sellers to contractually limit a buyer's "sole remedy" to "repair and replacement of nonconforming goods").

[8]    The Song-Beverly Act ("the Act"), CAL. CIV. CODE 1795.6(b) expressly states that a "warranty period shall expire in accordance with its terms" when a consumer obtains a product repair that does not "remedy the nonconformity" unless "the buyer notified the manufacturer or seller of this failure within 60 days after the repairs or service was completed." Regardless of whether this section can be interpreted as a legislative declaration that a repaired product that operates properly for sixty days and reaches the end of its warranty term is deemed "adequately repaired" under California law, it is notable because it directly repudiates Plaintiff Nygren's assertion that HP's proposed repair is inadequate under California because he believes it would not permanently remedy his wireless issue.

motherboard with a motherboard equipped with the same [allegedly defective part] was inadequate, replacement or repair of malfunctioning components during the life of the warranty is exactly what the Limited Warranty provides.  HP could not have breached the Limited Warranty by acting in conformance with it.") (citation omitted).

Consequently, HP's warranty obligation to Plaintiff Nygren was to repair his notebook computer so that it remained operable until his warranty expired in January 2008.  HP was prepared to provide such a repair while Nygren was under his original Limited Warranty, and remains prepared to provide Nygren with a free hardware repair pursuant to its repair program.  Plaintiff Nygren, however, has refused to tender his computer to HP or otherwise allow HP the opportunity to perform such a repair.  He cannot now properly be permitted to assert a self-manufactured breach of warranty claim that arises solely from his own refusal to comply with *his* warranty obligations.  As a result, Plaintiff Nygren's warranty claim should be dismissed with prejudice and he should avail himself of the free hardware repair that HP has made available.

> **4.    Plaintiffs' Warranty By Description Claim Fails Because The Computers Functioned As Intended And The Subject Matter Of Their Amended Complaint Falls Squarely Within The Four Corners Of The Written <u>Warranty Contract</u>.**

Cognizant of their inability to state a claim under the HP Limited Warranty, Plaintiffs attempt to circumvent the application of California law and cases like *Hoey, Long, Brothers, Daugherty* and *Carrau* by also asserting a breach of warranty "by description" claim, premised upon HP's alleged statements that the "HP Pavilion notebooks come with a wireless LAN for complete mobility."  For several reasons, this warranty "by description" claim must also fail.

First, the statements Plaintiffs allege create express warranties simply cannot serve as the basis of their claim because there are no facts to support the contention that the product did not "come with a wireless LAN for complete mobility" at the time of purchase, or that the computer did not perform as expected with respect to that statement when the wireless functionality was operating correctly.  In other words, Plaintiffs simply do not allege any facts to show that their notebook computers were not sold with "a wireless LAN for complete mobility."    Indeed,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14                          Case No. 07-05793 (JW)

DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS

1   Plaintiffs acknowledge that their computers did in fact work – in Plaintiff Shifflette's case well

2   past the expiration of the one year warranty – and, thus, HP did not breach any alleged warranty

3   that the products would come with a "wireless LAN for complete mobility" because the products

4   in fact came with that capability, the products were in fact mobile when the wireless capability was

5   functioning, and the products functioned properly after purchase.  To the extent that the wireless

6   capability did not function as intended at any point in time – thus requiring a connection to the

7   internet via a cable – HP has put in place a program to provide Plaintiffs with a hardware repair; as

8   a result, it is hard to imagine how HP has breached any warranty "by description" as it relates to

9   the product's "mobility." *See Brothers*, 2006 U.S. Dist. LEXIS 82027, at *16-17 (dismissing

10   plaintiff's claims and stating that "[n]evertheless, the statement is not actionable as there are no

11   allegations that such fact is false or misleading. HP allegedly touted that the Pavilion contained a

12   particular graphics card: the 'NVIDIA GeForce GPU with 8X APG for [having] the most

13   cinematic graphics and special effects.'  That the Pavilion contained an NVIDIA GeForce card is a

14   factual assertion that cannot be disputed as false since plaintiff does not allege that the notebook

15   does not come with that graphics card.").

16          Second, Plaintiffs' true complaint is not about HP's representations regarding the

17   product's wireless functionality – because, as pointed out above, what HP said about the product

18   was true – but that the computers contained an alleged "***common defect*** that causes a substantial

19   number of these HP notebook computers' wireless capability to fail before that expected lifetime."

20   Amended Complaint ¶ 19 (emphasis added).  Thus, the alleged problem about which Plaintiffs

21   complain – a "common defect" that effects the wireless component of the computer – is subsumed

22   wholly by HP's Limited Warranty contract.  *See* Worldwide Limited Warranty and Technical

23   Support, attached hereto as Exhibit "C" at 2 ("HP warrants that the HP hardware product and all

24   internal components of the product that you have purchased or leased from HP are free from

25   ***defects*** in materials and workmanship under normal use during the Limited Warranty Period.")

26   (emphasis added).  Because that contract addresses the alleged "defect" that forms the actual

27   subject matter of Plaintiffs' lawsuit, Plaintiffs should not be allowed to maintain an even-farther-

28   removed warranty claim premised upon the assertion that the alleged "defect" renders to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15                                                    Case No. 07-05793 (JW)

DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS

1  computers not "mobile." As the subject matter of the Amended Complaint unquestionably falls

2  within the four corners of HP's Limited Warranty, that contract governs and Plaintiffs' warranty

3  "by description" claim cannot survive for the same reasons set forth above in Sections IV(A)(1)-

4  (3).[9]

5         Third, HP's Limited Warranty contains a prominently-featured disclaimer:

6    EXCEPT AS EXPRESS SET FORTH IN THIS LIMITED WARRANTY, HP
     MAKES NO OTHER WARRANTIES OR CONDITIONS, EXPRESS OR
7    IMPLIED . . . . HP EXPRESSLY DISCLAIMS ALL WARRANTIES AND
8    CONDITIONS NOT STATED IN THIS LIMITED WARRANTY.

9  *Id.* at 1 (emphasis in original).  Such disclaimers are valid under California law so long as they are

10  "conspicuous," which requires that it "is so written that a reasonable person against whom it is to

11  operate ought to have noticed it."  Cal. Com. Code § 1201(10).  The disclaimer in HP's warranty

12  clearly meets this standard; consequently, Plaintiffs' breach of express warranty "by description"

13  claim must be dismissed because HP disclaimed any "warranty" created by virtue of the extra-

14  contractual statements identified by Plaintiffs.  *Long*, 2007 U.S. Dist. LEXIS 79262, at *18-*19

15  (addressing nearly identical warranty language and stating that the "Court finds that HP validly

16  disclaimed any express warranty created by virtue of its extracontractual statements identified by

17  Plaintiffs. Accordingly, the Court grants  HP's motion to dismiss Plaintiffs' Second Cause of

18  Action for Breach of Express Warranty of Description with prejudice."); *Salyards ex rel. Salyards*

19  *v. Metso Minerals Tampere Oy*, 2005 U.S. Dist. LEXIS 29360, at *27 (E.D. Cal. Nov. 10, 2005)

20  ("A defendant can exclude express and implied warranties if the disclaimer is conspicuous.");

21  *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 212-13 (1991) ("A seller is

22  permitted to limit its liability for defective goods by disclaiming or modifying a warranty.").  For

23  the reasons set forth above, Plaintiffs' warranty "by description" claims should not be allowed to

24  survive HP's motion to dismiss.

25

26  [9]    If Plaintiffs are right and the warranty contract does not encompass (and extinguish) their
       claim that the computers contained a "common defect," then any breach of warranty claim
27     premised on a written contract could easily be transformed into a breach of express by description
       claim by alleging that the product was defective and therefore failed to meet its description.  This
28     is not what the law intended.

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

16

Case No. 07-05793 (JW)

DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS

**B.** **Plaintiffs' UCL, FAA And CLRA Claims Must Be Dismissed Because Those Claims Cannot Be Sustained Under The Facts Pled In The Amended Complaint.**

Plaintiffs' UCL, CLRA and FAA claims are premised on HP's alleged misrepresentations, purportedly made on the internet and in various maintenance and service guides, that: (a) the "HP Pavilion notebooks come with a wireless LAN for complete mobility"; and (b) there was "integrated wireless support" for the computers. Plaintiffs' UCL and CLRA claims are also premised on HP's alleged failure to disclose "that its notebook computers suffered from a design defect that caused these computers to prematurely lose their wireless capabilities . . . ." Amended Complaint ¶¶ 11, 26, 27, 33, 48, 65, 66. For the reasons discussed below, none of Plaintiffs' statutory claims can survive dismissal.

**1.** **Plaintiffs Cannot Maintain Their UCL, FAA Or CLRA Claims, Based On HP's Alleged Misrepresentations, Because The Statements Made By HP Were True And Because Neither Named Plaintiff Alleges That He Ever Saw Or Relied Upon Those Statements.**

Plaintiffs' statutory claims that are based on HP's alleged misrepresentations must be dismissed for two reasons. First, they must be dismissed for the same reason discussed above in Section IV(A)(4) – there are no facts to support the contention that the product did not "come with a wireless LAN for complete mobility" or have "integrated wireless support" at the time of purchase, or that the computer did not perform as expected when the wireless functionality was operating correctly. To the contrary, both Plaintiffs have acknowledged that their products came with a wireless LAN and that the wireless LAN worked as expected after purchase. To the extent such a wireless problem manifested during Plaintiffs' ownership of their computers, HP has implemented a repair program to fix that problem free-of-charge. Because Plaintiffs' computers actually did come with a "wireless LAN" that allowed them to maintain "complete mobility," there have been no actionable misrepresentations by HP.[10] *E.g.*, *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (1st Dist. 1997) ("In our view the unintentional distribution of a defective product is beyond the scope and policy of the 'unlawful' prong of section 17200."); *Meinhold v.*

---

[10]    Plaintiffs' own Amended Complaint shows that HP did not have knowledge of the alleged problem until October of 2007, well after both Plaintiffs had purchased their computers. Amended Complaint ¶ 20.

Case No. 07-05793 (JW)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   *Sprint Spectrum, L.P.*, 2007 U.S. Dist. LEXIS 35806, at *19 (E.D. Cal. May 16, 2007) (dismissing

2   claims under 17200 and 17500 when plaintiff did not describe "how the statements made in those

3   specific advertisements were untrue or misleading"); *Daugherty*, 144 Cal. App. 4th at 834 (holding

4   that car buyers did not state a claim against manufacturers under the CLRA because the "complaint

5   fail[ed] to identify any representation by Honda that its automobiles had any characteristic they do

6   not have"); *Hoey*, 515 F. Supp. 2d at 1104 (dismissing a CLRA claim because the complaint failed

7   to identify any representation by the defendant that the computers at issue had a characteristic they

8   did not have); *see also Akkerman v. Mecta Corp., Inc.*, 152 Cal. App. 4th 1094, 1102 (2d Dist.

9   2007) ("Private plaintiffs may not file UCL actions unless they have suffered injury in fact and lost

10  money or property due to the defendant's conduct.").

11      Second, even if the statements set forth in the Amended Complaint could properly form the

12  basis of a misrepresentation claim, such a claim would fail because there is no allegation that either

13  Plaintiff actually saw or relied on those statements *before or at the time of purchase*.  California

14  law is clear that plaintiffs cannot bring a lawsuit about allegedly false statements or advertising if

15  they never saw the advertising or statements that form the subject matter of their claim.  *Hall v.

16  Time, Inc.*, 158 Cal. App. 4th 847, 855-58 (3d Dist. 2008) (noting that the "as a result of" language

17  in Proposition 64 requires causation and for a plaintiff to have seen and relied upon the alleged

18  misrepresentation); *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228

19  (2006) ("Proposition 64 was intended to prevent private lawsuits by plaintiffs who had not "viewed

20  the defendant's advertising."); *Meinhold*, 2007 U.S. Dist. LEXIS 35806, at *19 (dismissing claims

21  under 17200 and 17500 where plaintiff did not identify "what advertisements she [was] referring

22  to, when she saw them, [or] where she saw them . . . ."); *see also Jefferson v. Chase Home Fin*.,

23  2007 U.S. Dist. LEXIS 94652, at *50 (N.D. Cal. Dec. 14, 2007) (noting that the FAA only applies

24  to actual "advertisements" – meaning statements that were viewed prior to, and not after, purchase,

25  and which were made in circumstances "likely to induce" consumers to make a purchase); *Tercica,

26  Inc. v. Insmed Inc*., 2006 U.S. Dist. LEXIS 41804, *60-62 (N.D. Cal. June 9, 2006) (dismissing

27  claims under the Lanham Act and FAA because the alleged misleading statements were not made

28  "for the purpose of influencing consumers to buy defendant's goods or services" and thus did not

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

constitute "advertisements").  Accordingly, Plaintiffs' UCL, CLRA and FAA claims, premised on HP's alleged "misrepresentations," should be dismissed with prejudice.

> **2.    Plaintiffs Cannot Maintain Their UCL Or CLRA Claims, Based On HP's Alleged Failure To Disclose, Because They Do Not Allege That HP Had Pre-Sale Knowledge Of The Purported Defect And Because California Law Does Not Allow Such A Claim Under The Facts Presented By Plaintiffs.**

For similar reasons, to the extent Plaintiffs' UCL and CLRA claims are premised on HP's alleged "failure to disclose" that the wireless component might "prematurely" fail sometime short of the Plaintiffs' "five year" expectation, they cannot survive dismissal.  First, California law is clear that a manufacturer cannot be held liable under the UCL or CLRA for failing to disclose that a component part might fail sometime short of Plaintiffs' expectations, unless the non-disclosure would be contrary to a prior representation made by the manufacturer.  *Daugherty*, 144 Cal. App. 4th at 836; *Long*, 2007 U.S. Dist. LEXIS 79262, at *24 ("In this case, HP is not alleged to have made any representation as to the life of its inverter, or even as to the useful life of its Pavilions. As such, a consumer's only reasonable expectation was that the Pavilions would function properly for the duration of HP's limited one-year warranty.").

Where, as here, the sole affirmative representation made regarding the life expectancy of the product or the product's components (including the wireless LAN) is found in the one year Limited Warranty, there is no duty to disclose that the product may fail after the one year warranty expires, and Plaintiffs' claims under the UCL and CLRA must be dismissed.  *See id.*; *see also Buller*, 160 Cal. App. 4th at 987; *Daugherty*, 144 Cal. App. 4th at 836; *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (4th Dist. 2006); *see also* Worldwide Limited Warranty and Technical Support, attached hereto as Exhibit "C" at 2 ("HP warrants that the HP hardware product and all internal **components** of the product that you have purchased or leased from HP are free from defects in materials and workmanship under normal use during the Limited Warranty Period.") (emphasis added); *id.* at 2 ("During the Limited Warranty Period, HP will repair or replace defective **component parts** or the hardware product.") (emphasis added); *id.* at 1 (stating that "duration of warranty period" is "1 year").  Indeed, as recently held by the Court in *Hoey*, "[t]here is no authority that provides that the mere sale of a consumer electronics product in

California can create a duty to disclose any defect that may occur during the useful life of the product." 515 F. Supp. 2d at 1105.

Second, even assuming HP had a duty to disclose, Plaintiffs' omission claims still fail because they have not alleged that HP had pre-sale knowledge of an alleged defect such that HP could disclose what it purportedly knew; indeed, if anything, the Amended Complaint shows that HP did not have knowledge of the alleged problem until well after both Plaintiffs had purchased their computers. Amended Complaint ¶ 20; *see also*, *e.g.*, *Klein*, 59 Cal. App. 4th at 969 ("In our view the unintentional distribution of a defective product is beyond the scope and policy of the 'unlawful' prong of section 17200."). Moreover, as Plaintiffs allege, after HP learned about the problem: "on or about November 15, 2007, HP posted on its website, HP.com, a program with an extension of its limited warranty . . . ." Amended Complaint ¶ 24. Thus, Plaintiffs' assertion that HP was purposefully hiding something has no basis in fact. While Plaintiffs conveniently conclude, in order to minimize the impact of HP's free repair program on their lawsuit, that the offered repair and remedy are "inadequate" (Amended Complaint ¶ 24), such vague and conclusory allegations should be cast aside by the Court when addressing HP's motion to dismiss. In order to maintain a nationwide class action lawsuit against HP – especially after HP initiated its free repair program – more should be required of Plaintiffs.[11] For this reason as well, Plaintiffs' "failure to disclose" claims are ill-conceived and should be dismissed with prejudice.

## C.    Plaintiffs' UCL Claims Are Flawed As a Matter of Law

Plaintiff has brought three counts for violations of the UCL, one arising under the "unfair" prong (Count II), one arising under the "unlawful" prong (Count III), and one arising under the "fraudulent" prong (Count IV). For the reasons set forth below, each of these counts fails as a

---

[11]    Indeed, even where no "special" pleading standard is required, a plaintiff must, at the very least, set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "short and plain statement" contemplated by Rule 8(a) must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Barretto v. Smith*, 2007 U.S. Dist. LEXIS 93760, at *3-4 (E.D. Cal. Dec. 20, 2007) (citation omitted). Moreover, with respect to Rule 8(a)(2), "[a]lthough the Federal Rules adopt a flexible pleading policy, a complaint must . . . allege facts that support the elements of the claim plainly and succinctly. Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support his claims." *Barretto*, 2007 U.S. Dist. LEXIS 93760, at *7 (citation omitted).

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

20

Case No. 07-05793 (JW)

DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS

1    matter of law.

2        **1.    Plaintiffs' Claim Arising Under the "Unlawful" Prong Of The UCL Must Be**
3        **Dismissed  Because There Is No Viable Predicate Violation.**

4        Because the UCL borrows violations from other laws and treats them as independently

5    actionable, an "unlawful" UCL claim fails where there is no violation of a predicate law. *E.g.,*

6    *Lopez v. Washington Mut. Bank, F.A.*, 2002 U.S. App. LEXIS 24344, at *18 (9th Cir. Aug. 6,

7    2002) (where there is no predicate violation of underlying statute, Section 17200 claims

8    necessarily fail); *In re Vaccine Cases*, 134 Cal. App. 4th 438, 459 (2d Dist. 2005) (dismissing

9    UCL claim where "no statutory violation remains to provide the 'unlawful' business act or

10   practice necessary").

11       Here, contrary to Plaintiffs' belief that each and every one of their causes of action can

12   serve as the predicate violation for their UCL claim (Amended Complaint ¶ 34), their claim for

13   breach of express warranty, even if successful, cannot support it as a matter of law.  *Compare*

14   *Klein*, 59 Cal. App. 4th at 969 (holding that claim for breach of the implied warranty of fitness

15   will not support an independent action under the "unlawful" prong of the UCL and stating that

16   "[w]hile these doctrines do provide for civil liability upon proof of their elements they do not, by

17   themselves, describe acts or practices that are illegal or otherwise forbidden by law"); *Nat'l Rural*

18   *Telecomms. Co-op v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074-75 (C.D. Cal. 2003)

19   (dismissing "unlawful" UCL claims predicated, without more, on a common law breach of

20   contract) *with* Amended Complaint ¶ 34 ("Defendant's business practices are unlawful because

21   the conduct constitutes a breach of warranty, false marketing and advertising, as well as the other

22   causes of action herein alleged.").   In any event, as discussed herein, Plaintiffs' breach of

23   warranty claims must be dismissed.  Moreover, as pointed out in Section IV(B), Plaintiffs cannot

24   state a claim under either the FAA or the CLRA; thus, Plaintiffs' "unlawful" UCL claim likewise

25   cannot survive to the extent that it is premised upon a violation of those statutes.

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

21

Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1

2

**2.    Plaintiffs' Claim Under The "Unfair" Prong Of the UCL Must Fail Because HP's Conduct Cannot Reasonably Be Characterized As Unfair and Because Neither Named Plaintiff Has Suffered "Substantial Injury."**

3

4

5

6

7

8

9

10

11

12

13

14

15

Plaintiffs have failed to allege that HP's conduct constituted an "unfair" business practice under the UCL.  Indeed, without offering any factual support, Plaintiffs merely conclude that HP's business practices were unfair because "Defendant is selling its products and marketing them in a manner that is likely to deceive the public, and Plaintiffs suffered actual harm as a result" and because HP's business practices "offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that HP notebook computers can be used for wireless service when they cannot."  Amended Complaint ¶ 32.  Although the standard for determining unfair conduct is unsettled, California courts have recently held that the factors used for determining whether a practice is "unfair" for purposes of the UCL are the same as those used under Section 5 of the Federal Trade Commission Act.  *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2d Dist. 2006).  Regardless of the standard, however, Plaintiffs' claim under the "unfair" prong fails for several reasons.

16

17

18

19

20

21

22

23

24

25

First, Plaintiffs' own Amended Complaint, on its face, makes clear that: (1) HP has treated its customers fairly by putting in place a program that provides for a free-of-charge repair (Amended Complaint ¶ 24); and (2) HP did not have pre-sale knowledge of the alleged defect (Amended Complaint ¶ 23).  *Klein*, 59 Cal. App. 4th at 969 (holding that the unintentional distribution of a defective product is not a violation of the UCL).  In *Klein*, the California Court of Appeal was addressing whether a pet food distributor's unintentional distribution of contaminated pet food was a violation of the UCL.  The Court concluded that the defendant's conduct was not unfair because it was "undisputed that Earth Elements acted promptly to recall the contaminated products, advertised the recall effort and afforded restitution to customers."  *Id.* at 967.  The Court further stated:

26

27

28

> Clearly, Earth Elements' conduct does not fit the "unfairness" bill.  While dogs did get sick, the company's act was accidental and, once discovered, it moved quickly to abate the harm.  To set the standard at perfection or no mistakes is too high a

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1
2
3

> price to pay for eliminating the potential harm to the dogs from the unwitting distribution of contaminated dog food.  The balance here is in Earth Element's favor.  Moreover, there is absolutely nothing deceptive or sharp about the company's behavior.  To the contrary, its conduct was exemplary.

4
5
6
7
8
9
10
11

*Id.* at 970.  There is no substantive difference between the actions taken by Earth Elements in recalling the dog food and providing its customers with restitution and HP's implementation of a program that provides its customers with a free-of-charge repair.  Like Earth Elements, HP has taken steps to make sure that its customers are content and its conduct in that regard has been exemplary; indeed, while HP has no legal obligation to repair Plaintiff Shifflette's computer because his warranty has expired, HP has offered to repair it for free up until October 2008 (two years from the date he purchased it).  Thus, HP's conduct cannot reasonably be characterized as "unfair."

12
13
14
15
16
17
18
19
20
21

Second, "an act or practice is unfair [only] if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves *could reasonably have avoided*."  *Camacho*, 142 Cal. App. 4th at 1403 (emphasis added).  Like the plaintiffs in Daugherty, the injury to the Plaintiffs in this case is not substantial, "if indeed it can be characterized as a cognizable injury at all."  *Daugherty*, 144 Cal. App. 4th at 839.  Indeed, Plaintiff Shifflette has not been injured because his warranty contract expired and, more importantly, because he can get his computer repaired via HP's program if he chooses to do so and thus avoid any injury – substantial or otherwise.  Similarly, for Plaintiff Nygren, to the extent he has incurred any injury, he "could reasonably have avoided" it if he had simply allowed HP an opportunity to diagnose and/or repair his computer.

22
23
24
25
26
27
28

Finally, it bears note that a plaintiff alleging unfair business practices under the UCL must state the facts supporting the statutory elements of that violation with "reasonable particularity."  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (2d Dist. 1993); *see also Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997).  Thus, to the extent either named plaintiff tries to establish a "substantial injury" based upon their allegation that the repair and remedy offered by HP is "inadequate," more detail is required before they can credibly make such a claim – especially because neither one of them have tendered their units to

DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS

1    HP for a repair.  *See* Section IV(B)(2).  Accordingly, neither Plaintiff can maintain a claim under

2    the "unlawful" prong of the UCL.

3          **3.    Plaintiffs' Claims Arising Under The "Fraud" Prong Of The UCL Must Fail**
              **Because That Claim Was Not Pled In Accordance With Federal Rule Of Civil**
4             **Procedure 9(b).**

5          It is well-established in the Ninth Circuit that *all* averments of fraudulent conduct be pled

6    with the particularity required by Rule 9(b).  *Vess v. Ciba-Geigy Corp*, 317 F.3d 1097, 1107-08

7    (9th Cir. 2003).  With respect to claims based upon alleged misrepresentations, it is well-settled

8    that "a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The

9    plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Id.* at

10   1106 (citations omitted).  Instead, when alleging fraud, the "[a]verments . . . must be accompanied

11   by 'the who, what, when, where, and how' of the misconduct charged."  *Id.*

12         Here, Defendant merely concludes that "HP has engaged in fraudulent conduct"

13   (Amended Complaint ¶ 45), and that "Defendant's wrongful business acts constituted, and

14   constitute, a continuing course of fraudulent conduct . . . ." (*id.* at ¶ 46).  Notwithstanding that this

15   claim has no merit in light of HP's repair program, it also must fail because Plaintiffs provide

16   absolutely no detail with respect to what HP conduct rises to the level of "fraud"; in short,

17   Plaintiffs have fallen woefully short of showing the "who, what, when, where, and how of the

18   misconduct charged" and, thus, their claim arising under the fraudulent prong of the UCL should

19   be dismissed by the Court.[12]

20   **V.    CONCLUSION**

21         For the foregoing reasons, Plaintiffs' Amended Complaint fails to state a claim upon

22   which relief can be granted and should be dismissed pursuant to Rule 12(b)(6) of the Federal

23   Rules of Civil Procedure.

24

25

26

27
     _____
28   [12]    HP has attached, as Exhibit "D," a declaration of Robert Particelli regarding the Exhibits
            that have been attached to this memorandum.

                                                  24                          Case No. 07-05793 (JW)

                 **DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**

1    Dated: March 31, 2008                        Respectfully submitted,

2                                                 **MORGAN, LEWIS & BOCKIUS LLP**

3

4

5                                                 By: _____/s/Robert A. Particelli_____

6                                                         Robert A. Particelli

7                                                 Attorneys for HEWLETT-PACKARD COMPANY

8
     [/][/]
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
   BOCKIUS LLP
ATTORNEYS AT LAW
  SAN FRANCISCO

**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS**