LEVY, RAM & OLSON
Michael F. Ram (SBN 104805)
mfr@lrolaw.com
639 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

EDELSON & ASSOCIATES, LLC
Marc H. Edelson (*Pro Hac Vice*)
medelson@hofedlaw.com
45 W. Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

SPECTOR, ROSEMAN & KODROFF, P.C.
Jeffrey L. Kodroff (*Pro Hac Vice*)
jkodroff@srk-law.com
John A. Macoretta
JMacoretta@srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (SAN JOSE DIVISION)

| | |
|---|---|
| NATHAN NYGREN and STEPHEN SHIFFLETTE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY, a Delaware corporation,<br><br>Defendant. | CASE NO.  07-05793 JW<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**DATE:** June 9, 2008<br>**TIME:** 9:00 a.m.<br>**PLACE:** Courtroom 8, 4th Floor<br>[Hon. James Ware] |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL BACKGROUND ............................................................................. 3

III.    PLAINTIFFS' AMENDED COMPLAINT ADEQUATELY STATES CLAIMS
        UNDER THE CALIFORNIA FALSE ADVERTISING LAW, UNFAIR
        COMPETITION LAW, AND CONSUMERS LEGAL REMEDIES ACT, AND
        FOR BREACH OF PROMISES HP MADE OUTSIDE ITS LIMITED
        WARRANTY ...................................................................................................... 5

        A.      Applicable Legal Standards.................................................................... 5

        B.      Plaintiffs Have Properly Alleged Claims Under The California False
                Advertising Law, Unfair Competition Law, and Consumers Legal
                Remedies Act ......................................................................................... 6

                1.      Plaintiffs have Properly Pled Deception for Purposes of the FAL,
                        UCL and CLRA........................................................................... 6

                2.      Plaintiffs' Third Cause of Action Sufficiently Alleges A Claim
                        Under the "Unlawful Prong" of the UCL.................................... 11

                3.      Plaintiffs' Second Cause of Action Sufficiently Alleges a Claim
                        Under the "Unfairness Prong" of the UCL .................................. 11

                4.      Plaintiffs' Fourth Cause of Action Sufficiently Alleges a Claim
                        Under the "Fraud Prong" of the UCL and Satisfies the
                        Requirements of Rule 9(b) .......................................................... 13

        C.      Because Plaintiffs Allege Breach of Warranty Based on Representations
                That HP Made Entirely Separate From the Limited Warranty Document,
                the Complaint Properly States an Express Warranty Claim Under *Brothers
                v. HP* ...................................................................................................... 14

        D.      If Necessary, the Court Should Grant Plaintiffs Leave To Amend To Plead
                Additional Facts In Support Of Their Claims ......................................... 18

IV.     CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Balistreri v. Pacifica Police Dept.*
  901 F.2d 696 (9th Cir. 1988)...........................................................6

*Bardin v. DaimlerChrysler Corp.*
  136 Cal. App. 4th 1255 (2006).....................................................2, 9

*Bell Atlantic Corp. v. Twombly*
  127 S.Ct. 1955 (2007)..................................................................5

*Bonfield v. AAMCO Transmissions, Inc.*
  708 F. Supp. 867 (N.D. Ill. 1989).................................................13

*Brothers v. Hewlett-Packard*
  2007 U.S. Dist. LEXIS 13155 (N.D. Cal. 2007)......................passim

*Buller v. Sutter Health*
  160 Cal. App. 4th 981 (2008)......................................................10

*Camacho v. Automobile Club of Southern California*
  142 Cal. App. 4th 1394 (2006)....................................................11

*Chabner v. United Omaha Life Ins. Co.*
  225 F.3d 1042 (9th Cir. 2000).....................................................11

*Chamberlan v. Ford*
  369 F. Supp. 2d 1138 (N. D. Cal. 2005).........................................9

*Committee for Children's Television v. General Foods Corp.*
  35 Cal. 3d 197 (1983)................................................................11

*Consumer Advocates v. Echostar Satellite Corp.*
  113 Cal. App. 4th 1351 (2003).......................................................7

*Falk v. GMC*
  496 F. Supp. 2d 1088 (N.D. Cal. 2007)...............................passim

*Fundin v. Chicago Pneumatic Tool Co.*
  152 Cal. App. 3d 951 (1984).......................................................16

*Hoey v. Sony Electronics, Inc*
  515 F. Supp. 2d 1099 (N.D. Cal. 2007)........................................10

*Klein v. Earth Elements*
  59 Cal. App. 4th 965 (1997).......................................................12

*Lewis v. Hermann*
  775 F. Supp. 1137 (N.D. Ill. 1991).............................................13

*Long v. Hewlett-Packard Co.*
  2007 U.S. Dist. LEXIS 79262 (N.D. Cal. 2007).........................1, 15

*Mass. Mutual Life Ins. Co. v. Superior Court*
  97 Cal. App. 4th 1282 (2002) ...................................................................................10

*McKell v. Washington Mutual, Inc.*
  142 Cal. App. 4th 1457 (2006) ..................................................................................11

*Meinhold v. Sprint Spectrum, L.P.*
  2007 U.S. Dist. LEXIS 35806 (E.D. Cal. 2007) .......................................................10

*Oestreicher v. Alienware Corp.*
  2008 U.S. Dist. LEXIS 26160 (N.D. Cal. 2008) .......................................................10

*Outboard Marine Corp. v. Superior Court*
  52 Cal. App. 3d 30 (1975) ...........................................................................................7

*Pareto v. FDIC*
  139 F.3d 696 (9th Cir. 1998) ........................................................................................6

*Rhoades v. Powell*
  644 F. Supp. 645 (E.D. Cal. 1986) ............................................................................14

*Schnall v. Hertz Corp.*
  78 Cal. App. 4th 1144 (2000) .....................................................................................11

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ........................................................................................6

*Stickrath v. Globalstar, Inc.*
  2008 U.S. Dist. LEXIS 12190 (N.D. Cal. 2008) .......................................................13

*United States v. Hempfling*
  431 F. Supp. 2d 1069 (E.D. Cal. 2006) ...............................................................13, 14

*Washington v. Baenziger*
  673 F. Supp. 1478 (N.D. Cal. 1987) ..........................................................................13

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................6, 11, 12, 13

Cal. Bus. & Prof. Code § 17500 ....................................................................................6

Cal. Civ. Code § 1750 ....................................................................................................6

Cal. U. Com. Code § 2313 ...........................................................................1, 14, 15, 16

# I.    INTRODUCTION

Defendant Hewlett-Packard, Inc. ("HP") has by word and deed admitted that it has been selling Pavilion and Presario notebook computers with defective wireless connectivity.  HP Total Care stated:

> I'm sorry some of you are having trouble with your wireless WLAN not detecting your wireless network and not displaying in your device manager.  The issue appears to be affecting AMD based DV 6000, V6000 and DV 9000 notebooks running Microsoft Windows Vista.

First Amended Complaint ("Complaint" or "FAC" [Docket No. 22], ¶ 20.)  HP Total Care later announced that "HP is working around the clock on this issue."  FAC ¶ 22.  Then, after Plaintiff Nathan Nygren repeatedly complained to HP and filed this action, HP extended its one-year limited warranty for a full additional year to address "certain issues with the HP dv6000, dv9000 and Compaq v6000."  Motion to Dismiss ("MTD") at 5:5-8.

In the face of HP's explicit and implicit admissions that it has knowingly sold notebook computers with defective wireless capabilities, HP now seeks to preclude Plaintiffs from proceeding on their statutory consumer protection claims by invoking HP's Limited Warranty.  Recasting the entire Complaint as if it turned on one claim for breach of HP's Limited Warranty, *a claim that Plaintiffs do not allege,* HP attempts to force the case into the mold of *Long v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 79262 (N.D. Cal. 2007), appeal pending.  *Long* does not apply here because there is no claim based on HP's one-year Limited Warranty; the sole express warranty claim is instead based on statements HP made separate from the Limited Warranty in its PC checklists and maintenance and warranty guides.  (Cal. U. Com. Code § 2313.)

More importantly, the gravamen of the Complaint is that HP violated the California False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and Consumers Legal Remedies Act ("CLRA").  Five of the six causes of action are based on these California consumer protection statutes.  These claims allege that HP knew that the wireless features of its Pavilion and Presario notebook computers are defective and that the wireless feature is material to

consumers. HP represented that the computers had wireless connectivity and compatibility and failed to disclose the defect, an actionable omission.

Since these claims are not based in any way on the Limited Warranty, the Limited Warranty is irrelevant. Indeed, the California consumer protection statutes transcend the common law of warranty; otherwise there would be no purpose in the California Legislature having enacted them. Nor are these consumer protection claims barred by cases such as *Daugherty* or *Bardin* in which the manufacturer said nothing about the challenged part. Unlike in those cases, here Plaintiffs allege affirmative statements about the wireless feature that create a duty to disclose.

In addition, in the Fifth Cause of Action Plaintiffs allege a single claim for breach of express warranty created by HP's product statements. This claim is *not* based on the Limited Warranty but rather on representations *outside* of the Limited Warranty document that the notebooks have connectivity to and compatibility with wireless systems. Thus this claim is governed by Judge Whyte's analysis of similar claims in *Brothers v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 13155 (N.D. Cal. 2007). As Judge Whyte held in *Brothers*, HP's Limited Warranty cannot effectively disclaim what HP has explicitly promised. Since HP represented that its notebooks would be compatible with and connect to certain types of wireless networks, and they do not, Plaintiffs' warranty claim is not circumscribed by the Limited Warranty.

Fundamentally, because Plaintiffs' claims are not based on the Limited Warranty, Plaintiffs' relief is not limited by any of the procedures, time restraints, and remedies specified by the Limited Warranty. Nor is HP's one year extension of its Limited Warranty a sufficient remedy for the claims alleged in the Complaint. HP's implicit admission that its notebook computers are defective means that the issue is not whether Plaintiffs were injured, but what is the remedy for HP's conduct in knowingly marketing notebook computers with defective wireless capabilities? Relief is not properly restricted, as a matter of law, to another year of shipping allegedly defective laptops back to HP to see whether HP can correctly diagnose and remedy the problem. Both Plaintiffs have already worked with HP technical personnel to attempt to fix their computers. These efforts failed. FAC ¶¶ 5-6. Under the UCL and FAL, Plaintiffs are

entitled to restitution and/or injunctive relief. Under the CLRA, Plaintiffs are entitled to restitution and/or damages and injunctive relief. The remedy for a breach of the express warranty is to require HP to provide a replacement notebook that complies with its representations for the reasonable expected life of the wireless features of the notebook. Just as HP cannot unilaterally limit its consumer protection liability to one year, HP cannot by fiat now limit that liability to two years.

The Court should deny HP's motion to dismiss.

## II.    FACTUAL BACKGROUND

HP manufactures and sells notebook computers, including the Pavilion and Presario lines. FAC ¶ 1. A central feature of a notebook computer is its ability to connect to wireless networks. FAC ¶ 18. HP touts its wireless capabilities. The PC checklist on HP's website states that "HP Pavilion notebooks come with a wireless LAN for complete mobility" and "Compaq Presario notebooks come with wireless LAN for complete mobility." FAC ¶ 26. This feature is patently material to reasonable consumers of notebook computers in our modern world of internet cafés with wifi connections. The product specifications for the notebooks posted on the internet on HP's website state that the notebooks have wireless connectivity for "802.1 1b/g WLAN" and for a "Wireless Home Network." FAC ¶ 26.

HP's notebooks are defective in that the wireless devices do not work, fail prematurely, and otherwise do not work as described. FAC ¶¶ 5, 6, 19, 20, 21, 23. The wireless features stop working entirely. The notebooks do not connect to wireless networks. *See, e.g.*, FAC ¶ 23. As detailed in the customer complaints excerpted in the FAC, the issues arise on HP notebooks using both AMD and Intel chips, affect a substantial number of customers, arise both early and later in the first year of use of the notebook and beyond, recur even after HP repairs the notebooks, including when HP replaces the motherboard of the computer, and occur whether the customer is using Windows XP or the newer Windows Vista operating systems. *See generally* FAC ¶ 23.

The FAC alleges that HP "knew or was reckless in not knowing that its representations regarding the HP Notebook Computers wireless capabilities were false." FAC ¶ 48; *see also* ¶27 ("At all relevant times HP failed to disclose that its HP Notebook Computers suffered from a

1    design defect . . .").)  The Complaint further alleges, "<u>At all times</u>, HP had knowledge of the

2    deceptive and misleading nature of the wireless capabilities of the HP Notebook Computers . . . ."

3    FAC ¶ 55 (emphasis added).

4        While HP has long known of the issue, HP began partly disclosing its awareness of the

5    defect only in late October 2007.  On October 22, 2007, HP Total Care stated:

6            I'm sorry some of you are having trouble with your wireless
             WLAN not detecting your wireless network and not displaying in
7            your device manager.  The issue appears to be affecting AMD
             based DV 6000, V6000, and DV 9000 notebooks running
8            Microsoft Windows Vista.

9    FAC ¶ 20.  On November 3, 2007, HP Total Care followed up and said:

10           The reason for the BIOS fix is that the internal WLAN card may
             not work because the signal amplitude on the internal bus to the
11           chipset is too low.  As a result, the wireless card and the
             motherboard cannot communicate.  By downloading Softpaq
12           36551, it is possible to boost the amplitude of the signals on the
             bus and thereby solve some WLAN issues.
13           . . .

14           If the issue does not stem from low amplitude, it could also be an
             issue between the system board and the wireless card as some have
15           pointed out on this board.  That said, it is unlikely that replacing
             the wireless card will solve the issue, so please do not do this.
16           Historically it is more likely that a system board issue would cause
             this type of problem, than an issue with the wireless card.  So, if
17           Softpaq 36551 doesn't help, the next step is to call 800-HP-Invent
             for additional help.
18
             As mentioned earlier HP is working around the clock on this issue.
19           Engineers are reading the posts and have actually printed them out
             to bring them into meetings to discuss them.
20
     FAC ¶ 22.  As the Complaint alleges, HP had long known about and had been tracking the
21
     problem.  The FAC pleads that at all relevant times HP knew about the defects.  FAC ¶¶ 48, 55.
22
         On or about November 15, 2007, after Mr. Nygren filed this action, HP posted a link to a
23
     Limited Warranty extension program.  FAC ¶ 24.  HP extended its Limited Warranty for certain
24
     computer models for one year for a number of serious and related problems that plague its
25
     notebook computers, including:  "The notebook does not detect wireless networks and the
26
     wireless adapter is not detected in the Device Manager."  MTD, Ex. A, p. 2.
27

28

HP did not:

1.    offer to restore the purchase price;

2.    offer to replace the computer with one that is not defective;

3.    identify the nature of the defect that led to the extension;

4.    explain how it would remedy the defect;

5.    offer to provide repairs for five years, the expected life of the computer's wireless function; or

6.    compensate for lost use of the computer during shipment and return.

Plaintiffs Nygren and Schifflette purchased HP notebook computers in January 2007 and October 2006 respectively. FAC ¶¶ 5-6. Nygren's wireless features failed in September 2007 and Schifflette's failed in December 2007. *Id.* HP's efforts at fixing their computers failed. FAC ¶¶ 5-6. Neither has been offered an adequate remedy for the defective products HP sold to them. FAC ¶ 24. HP offered neither to refund their purchase price nor to replace their computers with ones that are not defectively designed.

## III.    PLAINTIFFS' AMENDED COMPLAINT ADEQUATELY STATES CLAIMS UNDER THE CALIFORNIA FALSE ADVERTISING LAW, UNFAIR COMPETITION LAW, AND CONSUMERS LEGAL REMEDIES ACT, AND FOR BREACH OF PROMISES HP MADE OUTSIDE ITS LIMITED WARRANTY

Because the gravamen of the FAC arises under the consumer protection statutes, Plaintiffs will first address HP's arguments regarding those statutes. Then, Plaintiffs will show why the FAC also adequately pleads a claim for breach of promises that HP made outside its Limited Warranty.

### A.    Applicable Legal Standards

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A court should deny a motion to dismiss when a claim is adequately supported by any set of facts showing that the plaintiff may be entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). A court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.

1998).  The complaint must be read in the light most favorable to the plaintiff.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

**B.    Plaintiffs Have Properly Alleged Claims Under The California False Advertising Law, Unfair Competition Law, and Consumers Legal Remedies Act**

The gist of Plaintiffs' action is that HP had a duty to disclose the material information that its notebooks' wireless features were defective and would prematurely fail, and failed to disclose this.  These allegations state claims under the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.), Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.), and Consumers Legal Remedies Act (Cal. Civ. Code § 1750 et seq.).

**1.    Plaintiffs have Properly Pled Deception for Purposes of the FAL, UCL and CLRA**

The central issue in this omissions case is whether HP had a duty to disclose the omitted material information.

HP does not deny representing that its Pavilion and Presario notebook computers had wireless capability.  Nor does HP deny failing to disclose (at least until October 2007) that these notebooks suffer from a defect that causes the wireless features to prematurely fail.  Instead, HP claims that it had no duty to say more than it did and misconstrues the Complaint as alleging that HP only became aware of the defect in October 2007.

HP misreads the allegations of the FAC regarding the state of HP's knowledge.  While it is true that in October and November 2007 HP acknowledged that its notebook computers are defective, the FAC alleges that HP knew of the defects long before.  For example, the Complaint alleges that "Defendant knew or was reckless in not knowing that its representations regarding the HP Notebook Computers wireless capabilities were false."  FAC ¶ 48.)  Similarly, the FAC alleges "<u>At all times</u>, HP had knowledge of the deceptive and misleading nature of the wireless capabilities of the HP Notebook Computers . . . ."  FAC ¶ 55 (emphasis added).)

1    HP had a duty to disclose its knowledge of the defects. Such a duty arises in four

2    circumstances:

> (1) when the defendant is in a fiduciary relationship with the
> plaintiff; (2) when the defendant had exclusive knowledge of
> material facts not known to the plaintiff; (3) when the defendant
> actively conceals a material fact from the plaintiff; and (4) when
> the defendant makes partial representations but also suppresses
> some material fact.

7    *Falk v. GMC*, 496 F. Supp. 2d 1088, 1095-99 (N.D. Cal. 2007) (quoting California law, citation

8    omitted). *See also Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 37 (1975)

9    ("Fraud or deceit may consist of the suppression of a fact by one who is bound to disclose it or

10   who gives information of other facts which are likely to mislead for want of communication of

11   the fact.") Here, Plaintiffs have properly alleged HP's duty to disclose under the fourth and

12   second prongs of *Falk*, each of which, alone, is sufficient.

13       Both the second and fourth prong involve material information. Materiality, for consumer

14   protection claims, is judged by the effect on a "reasonable consumer." *Consumer Advocates v.*

15   *Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). Here, as the Complaint alleges,

16   "A reasonable consumer expects that notebook computers like the HP Notebook Computers will

17   have wireless access for at least five years, and do not expect that they will come with a design

18   defect that will cause wireless capability to fail before that expected lifetime." FAC ¶ 18.

19   Consumers would not have paid the full asking price for these notebooks had they known the

20   wireless features would not work reliably. Wireless was essential, as HP itself said, "for

21   complete mobility." FAC ¶ 26.

22       HP implicitly admitted that consumers reasonably expect their wireless features to

23   continue working far longer than the one-year Limited Warranty period. In response to the

24   public outcry about the defect, HP extended the Limited Warranty to two years. While Plaintiffs

25   disagree that two years represents the limits of consumers' reasonable expectations, HP's

26   extension of the Limited Warranty is a tacit admission that consumers reasonably expect that the

27   wireless features will last far longer than a year. HP's unilateral one year warranty extension

28   does not, as a matter of law, establish the reasonable consumers' expectations at two years.

1    Instead, it highlights that there is a fact issue regarding the length of consumers' reasonable

2    expectations that cannot be resolved on a motion to dismiss.

3        Second, Plaintiffs have also pled that the omitted information was material by showing

4    the reactions of the consuming public to the existence and extent of the wireless defects. (*See,*

5    *e.g.,* FAC ¶ 23 ("This is an obvious problem that HP recognizes and should address regardless to

6    length of warranty coverage. Could this be a recall issue?").) The comments from HP notebook

7    purchasers whose wireless fails, a brief few of which are excerpted in the Complaint, show how

8    important the wireless feature was to notebook purchasers. The length and number of

9    participants on this thread, which of course is only the tip of the iceberg since not everyone

10   experiencing the problem posted comments on this forum, demonstrate the centrality of the

11   wireless feature.

12       Third, by referring to the extensive customer posts, Plaintiffs have pled facts showing that

13   there is a substantial likelihood that a substantial number of notebook computers will fail. *See,*

14   *e.g.,* FAC ¶ 23 ("it is painfully obvious that it is a pretty widespread problem"). This is not a case

15   where a product might fail sometime late in its life expectancy.

16       Because information regarding the defect was material, HP had a duty to disclose the

17   omitted information under both the fourth and second prongs of the test cited in *Falk,* either one

18   of which alone would suffice. With respect to the fourth prong, Plaintiffs allege that HP made

19   specific representations regarding the notebooks' wireless connectivity and compatibility with

20   wireless systems. Having made these representations, HP was then under a duty to disclose

21   material information within its knowledge regarding the lack of wireless connectivity and

22   compatibility.

23       Even absent these specific, affirmative representations, HP had a duty to disclose the

24   omitted information under the second prong of the California law test. In *Falk,* plaintiffs alleged

25   that GM knew but did not disclose that its speedometers were defective. The complaint was

26   predicated only on omissions; GM had not said anything affirmatively about its speedometers.

27   Also, each plaintiff's defect manifested after the expiration of the limited warranty.

28   Nevertheless, Judge Alsup found that the *Falk* complaint stated a claim:

> Common experience supports plaintiffs' claim that a potential car buyer would view as material a defective speedometer. That a speedometer is prone to fail and to read a different speed than the vehicle's actual speed, even a difference of ten mile per hour, would be material to the reasonable consumer, driver and passenger.

*Falk*, 496 F. Supp. 2d at 1096.

It is no defense to a consumer protection claim for HP to say that the product does not fail one hundred percent of the time but, rather, sometimes works. In numerous cases, plaintiffs have stated CLRA and UCL claims even though the products failed only after the warranty period expired. *See, e.g., Falk*, 496 F. Supp. 2d at 1092 (speedometers that functioned properly until after the warranty period lapsed); *Chamberlan v. Ford*, 369 F. Supp. 2d 1138, 1144-45 (N.D. Cal. 2005) (whether manifolds' post-warranty performance was material was question of fact); *Brothers*, 2007 U.S. Dist. LEXIS 13155 at *3, *32 (HP notebook computers in compatibility with nVidia cards manifested after warranty period).

Nor are the cases cited by HP on point. *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 829 (2006), involved oil seals that failed at high mileages, including as much as 162,000 miles. The plaintiffs failed to allege that Honda made any statement about the oil seals or the type of engine, and failed to allege that any reasonable customer expectation was frustrated. 144 Cal. App. 4th at 835. Here, there are precisely such allegations with respect to the wireless features. Similarly, in *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006), the "complaint did not allege a single affirmative representation by [DaimlerChrysler] regarding the exhaust manifolds" (that were steel rather than iron) and the plaintiffs failed to allege materiality to a reasonable consumer. 136 Cal. App. 4th at 1276.

> Since the *Bardin* and *Daugherty* plaintiffs alleged no consumer expectations about the matter in question, it could not be material. Here, however, plaintiffs allege that they did, in fact, have expectations about the product in question. Plaintiffs plead that a reasonable consumer would expect a speedometer to last for the life of a vehicle.

*Falk*, 496 F. Supp. 2d at 1096.

1    Here Plaintiffs have identified HP's affirmative representations about the wireless

2    function and explained why HP's failure to provide the omitted information was material to

3    reasonable consumers.[1]

4    Nor is it the law of California that a company can limit the effect of its product

5    representations (made separate and apart from the limited warranty) to the duration of a limited

6    warranty. As *Falk* recognizes, where a duty to disclose exists, the time frame of a limited

7    warranty is not a barrier to a consumer protection claim. 496 F. Supp. 2d at 1095-1096.

8    Finally, HP argues that Plaintiffs failed to allege reliance. In fact, the FAC is replete with

9    allegations of causation and reliance. For example, "These advertisements and practices have

10   deceived, and are likely to deceive, the consuming public. . . ." FAC ¶ 27 and "have caused

11   injury to the Plaintiff . . ." FAC ¶ 28. "Plaintiffs have suffered actual harm as a result." FAC

12   ¶32. "Plaintiffs have been injured . . . as a result of the wrongful conduct . . . Defendant's

13   business acts and practices, as alleged herein, have caused injury to Plaintiffs . . ." FAC ¶ 35.

14   Second, this is an omissions case where reliance can be inferred from materiality. *Mass. Mutual*

15   *Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1293-94 (2002) ("purchases common to

16   each class member would in turn be sufficient to give rise to the inference of common reliance on

17   materially deficient representations.") Here, Plaintiffs purchased their notebooks believing that

18   they had a material feature -- reliable wireless compatibility and connectivity -- that they did not.

19   But for the omissions, Plaintiffs would not have purchased the HP notebooks or would have paid

20   substantially less for them. Finally, with respect to the fraud prong of the UCL, "it is only

21

---

22   [1] In *Meinhold v. Sprint Spectrum, L.P.,* 2007 U.S. Dist. LEXIS 35806, *19 (E.D. Cal. 2007) the "plaintiff failed to identify any specific statement made by defendant, let alone explain

23   why such specific statements were fraudulent." In *Hoey v. Sony Electronics, Inc.,* 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007), plaintiffs alleged no specific representation beyond the limited

24   warranty. In *Klein v. Earth Elements, Inc.,* 59 Cal. App. 4th 965 (1997), there was no allegation that customers were deceived by the *unintentional* distribution of contaminated dog food

25   followed by voluntary recall and restitution. In *Buller v. Sutter Health,* 160 Cal. App. 4th 981, 990 (2008), there was no showing that a reasonable consumer expectation was frustrated or that

26   an affirmative statement made the omission misleading. In *Oestreicher v. Alienware Corp.,* 2008

27   U.S. Dist. LEXIS 26160 *23 (N.D. Cal. 2008), the plaintiff "provided no specific statement or absolute characteristic regarding Alienware laptops. Thus, the generalized and vague statements

28   of product superiority such as 'superb, uncompromising quality' and 'faster, more powerful, and more innovative than competing machines' [were] non-actionable puffery."

---

1   necessary to show that members of the public are likely to be deceived." *Schnall v. Hertz Corp.*

2   78 Cal. App. 4th 1144, 1167 (2000) (citation omitted).  *See also*, *McKell v. Washington Mutual,*

3   *Inc.*, 142 Cal. App. 4th 1457, 1471-72 (2006) ("as a reasonable consumer likely would believe

4   that fees charged in connection with a home mortgage loan bore some correlation to services

5   rendered.")  Here, a reasonable member of the consuming public would expect that his wireless

6   system would be compatible and connect with wireless systems for a reasonable period.

### 2.   Plaintiffs' Third Cause of Action Sufficiently Alleges A Claim Under the "Unlawful Prong" of the UCL

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus.
& Prof. Code § 17200.  Plaintiffs' Third Cause of Action alleges that HP violated the "unlawful"
prong of the UCL, which incorporates other laws and treats violations of those laws as unlawful
business practices independently actionable under state law. *Chabner v. United Omaha Life Ins.
Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

Here there are multiple predicate violations.  First, Plaintiffs allege violations of the False
Advertising Law.  "Any violation of the false advertising law, moreover, necessarily violates the
unfair competition law." *Committee for Children's Television v. General Foods Corp.*, 35 Cal.
3d 197, 210 (1983).  Second, as in *Brothers*, plaintiffs here properly allege a breach of an express
warranty and therefore also have a claim under the UCL unlawful prong on that basis. *Brothers
v. Hewlett Packard Co.*, 2007 U.S. Dist. LEXIS 13155 at *29.  Third, the violations of the CLRA
serve as a predicate.  For all these reasons, Plaintiffs have stated claims under the "unlawful"
prong of the UCL.

### 3.   Plaintiffs' Second Cause of Action Sufficiently Alleges a Claim Under the "Unfairness Prong" of the UCL

Plaintiffs' Second Cause of Action alleges a violation of the unfairness prong of the UCL.
The allegations satisfy the UCL unfairness standard set forth in *Camacho v. Automobile Club of
Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).  That case held:

> (1) The consumer injury must be substantial; (2) the injury must
> not be outweighed by any countervailing benefits to consumers or
> competition; and (3) it must be an injury that consumers
> themselves could not reasonably have avoided.  [Citation] . . . This
> definition of 'unfair' is on its face geared to consumers and is for
> that reason appropriate in consumer cases.  It is also suitably broad

and is therefore in keeping with the 'sweeping' nature of section 17200.

142 Cal. App. 4th at 1403 (fns. omitted).

Here, there is a substantial consumer injury that is not outweighed by countervailing benefits and which consumers themselves could not reasonably have avoided.

HP claims to have treated customers fairly as a matter of law because it has offered one additional year of its Limited Warranty. HP's one year extension is entirely unlike the complete product recall in *Klein v. Earth Elements*, 59 Cal. App. 4th 965 (1997). Plaintiffs' notebooks have not been recalled, as in *Klein*. 59 Cal. App. 4th at 967. Nor have Plaintiffs been offered restitution, as in *Klein*. *Id*. HP has already tried and failed to fix Plaintiffs' computers. FAC ¶¶ 5-6. Plaintiffs have no assurance that if they send their notebooks to HP they will receive notebooks that satisfy the descriptions HP provided or that will not prematurely fail. If, rather than insisting on restitution or replacement, Plaintiffs send their computers in and they fail after two years, Plaintiffs will have no recourse whatsoever, even though the notebook's wireless connectivity will have lasted several years less than what Plaintiffs reasonably expected.

HP personnel already attempted, and failed, to repair Plaintiffs' notebook computers FAC ¶¶ 5-6. Defendant argues that Plaintiffs' decision to demand restitution or replacement rather than sending in their notebooks for repeated, serial repair attempts precludes their claims. Since restitution or replacement are appropriate remedies, it is inappropriate to preclude Plaintiffs' claims as a matter of law based only on an offer to try to repair the computer. More importantly, this argument ignores one salient fact: Over 84 pages (as of November 12, 2007) of HP's customers' testimonials make clear that the various repairs and fixes HP offered its customers fail to resolve the problem. *See* FAC ¶21. The fact is, as HP acknowledges, that there is a design defect inherent in Plaintiffs' notebook computers and HP has no guaranteed fix for the defect. *See* FAC ¶¶19, 21. "HP has refused Plaintiff's request to refund his purchase price or replace his notebook computer with a computer that is not subject to design and/or component Defects." FAC ¶ 5.

1    It is premature to decide on a motion to dismiss whether HP has acted unfairly under the

2    circumstances.  Plaintiffs' insistence on restitution or replacement is not unreasonable as a mater

3    of law given that HP could not offer Plaintiffs a repair that Plaintiffs could reasonably expect

4    would cure the problem and would last five years.  Significantly, in *Brothers*, the Court held that

5    the Plaintiffs had also alleged a claim under the unfairness prong of the UCL.  2007 U.S. Dist.

6    LEXIS 13155, *32.

7           **4.    Plaintiffs' Fourth Cause of Action Sufficiently Alleges a Claim Under
              the "Fraud Prong" of the UCL and Satisfies the Requirements of Rule
8             9(b)**

9    HP contends that Plaintiffs have not pled their Fourth Cause of Action -- brought under

10   the fraudulent prong of § 17200 -- with sufficient particularity to satisfy Rule 9(b).  In fact,

11   Plaintiffs have alleged their claims with the specificity required in an omission case where the

12   fraud occurred over time.

13   Generally, a fraud claim satisfies the specificity requirement of Rule 9(b) "if it alleges the

14   time, place, and content of the fraudulent statements, including reasons why the statements are

15   false." *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1075 (E.D. Cal. 2006).  Rule 9(b)'s

16   general requirements are less stringent where, as here, the plaintiff alleges fraud by omission and

17   the fraud occurred over a period of time.

18   Where a fraud claim is based on a defendant's alleged omissions, courts have recognized

19   that, "[l]ike Sherlock Holmes' dog that did not bark in the night, an actionable omission

20   obviously cannot be particularized as to 'the time, place and contents of the false representations'

21   or the 'identity of the person making the misrepresentation.'" *Bonfield v. AAMCO*

22   *Transmissions, Inc.*, 708 F. Supp. 867, 875 (N.D. Ill. 1989), superseded by statute on other

23   grounds in *Lewis v. Hermann*, 775 F. Supp. 1137, 1153 (N.D. Ill. 1991).

24              [W]here allegations rest on claims of omission, this standard is
                relaxed because, "[f]or example, a plaintiff cannot plead either the
25              specific time of [an] omission or the place, as he is not alleging an
                act, but a failure to act," *Washington v. Baenziger*, 673 F. Supp.
26              1478, 1482 (N.D. Cal. 1987).

27   *Stickrath v. Globalstar, Inc.*, 2008 U.S. Dist. LEXIS 12190 * 7 (N.D. Cal. 2008).

28              Clearly, a plaintiff in a fraud by omission suit will not be able to
                specify the time, place, and specific content of an omission as

precisely as would a plaintiff in a false representation claim. . . . accordingly, plaintiffs' fraud by omission claim will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct.

*Falk v. GMC*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007).  Similarly, courts apply 9(b) less stringently where the circumstances of the fraud occurred over a period of time. *Hempfling*, 431 F. Supp. 2d at 1075; *Rhoades v. Powell*, 644 F. Supp. 645, 666 (E.D. Cal. 1986).

Here Plaintiffs have alleged specific representations on which the material omissions are based.  They have alleged where those statements were made.  They have explained why the statements were false and misleading as a result of HP's omissions.  The fraud has unfolded over a period of time.  Under these circumstances, Plaintiffs have sufficiently alleged a claim under the fraudulent prong of the UCL.

> **C.** **Because Plaintiffs Allege Breach of Warranty Based on Representations That HP Made Entirely Separate From the Limited Warranty Document, the Complaint Properly States an Express Warranty Claim Under *Brothers v. HP***

Although the essence of the Complaint is that HP violated California's consumer protection statutes, HP has attempted to cast this case as one for breach of the HP Limited Warranty.  It is not.  Instead Plaintiffs have pled an express warranty claim under Cal. U. Com. Code § 2313 based on statements HP made entirely outside the Limited Warranty.  Under *Brothers v. Hewlett Packard Co.,* 2007 U.S. Dist. LEXIS 13155 (N.D. Cal. 2007), Plaintiffs have adequately alleged this claim.

Plaintiffs' Fifth Cause of Action identifies a series of product statements that HP made outside of the Limited Warranty document.  In paragraph 26 of the FAC, Plaintiffs quote these express warranty statements and identify the source of each.  HP warranted in its PC Checklists that the notebooks "come with wireless LAN for complete mobility."  FAC ¶ 26.  The notebooks are warranted in the product specifications to have "Wireless Connectivity  802.11b/g."  *Id.*  The notebooks are warranted in the maintenance and service guides to have "Integrated wireless support for Mini Card IEEE 802.11b and 802.11b/g WLAN device."  *Id.*  Those are the express descriptions of the capabilities of the HP Pavilion and Presario notebook computers upon which

1   Plaintiffs premise their sole express warranty claim under Cal. U. Com. Code § 2313. Plaintiffs

2   did not intend to invoke, nor does the FAC invoke, the terms of HP's Limited Warranty.[2]

3       HP spends most of its brief building up and then knocking down a Limited Warranty

4   straw man. *See, e.g.*, MTD at 7. HP then recites chapter and verse from *Long v. Hewlett-*

5   *Packard Co.* and similar cases to demonstrate why any claims based on the Limited Warranty

6   should be dismissed. Plaintiffs allege no such claim.

7       Instead, the express warranty claim here alleged falls squarely within Judge Whyte's

8   analysis of express warranties made outside the HP Limited Warranty document in *Brothers v.*

9   *Hewlett Packard Co.*, 2007 U.S. Dist. LEXIS 13155 (N.D. Cal. 2007). In *Brothers*, the plaintiffs

10  alleged that HP made statements about the product specifications of certain notebook computers

11  in its technical specifications, maintenance and service guides. Essentially, HP stated that its

12  notebook computers were compatible with certain nVidia graphics products. Although the

13  computers worked for a while, they failed outside the Limited Warranty period as a result of an

14  alleged incompatibility with the nVidia graphics.

15      Judge Whyte held that the *Brothers* complaint did not state a claim for breach of the HP

16  Limited Warranty. Nonetheless, the court allowed the plaintiffs in *Brothers* to proceed on their

17  express warranty claims based on HP's statements outside the Limited Warranty. Under

18  California Commercial Code § 2313, a seller creates an express warranty as follows:

19          (a) Any affirmation of fact or promise made by the seller to the
            buyer which relates to the goods and becomes part of the basis of
20          the bargain creates an express warranty that the goods shall
            conform to the affirmation or promise.
21
            (b) Any description of the goods which is made part of the basis of
22          the bargain creates an express warranty that the goods shall
            conform to the description.
23

24

25

26  ――――――――――――――――――――
        [2] The Limited Warranty is not attached to the Complaint nor are representations from the
27  Limited Warranty specifically identified. The introductory sentence in ¶ 52 is modified and
    limited by the specific warranty statements identified and quoted in the Complaint. The only
28  reference to the Limited Warranty occurs where Plaintiffs explain why HP's extension of the
    Limited Warranty is an inadequate remedy for the claims alleged in the Complaint. FAC ¶ 24.)

1   Cal. U. Com. Code § 2313. In *Brothers,* Judge Whyte found that HP's statements regarding the

2   compatibility of its notebook computers with nVidia products "create express warranties to

3   consumers of the compatibility . . . As in *Fundin,* the statements here represent a particular

4   product's performance specification based on its design." *Brothers,* 2007 U.S. Dist. LEXIS

5   13155 at *23.

> Here, the design is a notebook computer that could provide a
> certain level of graphics functions because of its compatibility with
> a particular graphics card. Plaintiffs allege that the statements of
> compatibility were made in HP's technical specification document
> and maintenance and service brochures made available to the
> public.

10  *Id. See also Fundin v. Chicago Pneumatic Tool Co.,* 152 Cal. App. 3d 951, 957 (1984)

11  (statements in sales brochures about drill rig's products specifications are actionable as express

12  warranties).)

13      Here, the Complaint pleads exactly the kinds of express representations that were found

14  actionable in *Brothers.* HP's product specifications state that its notebooks have wireless

15  connectivity and compatibility with particular types of wireless systems, "802.11b/g." HP

16  represented that the notebooks have "a wireless LAN for complete mobility." HP stated further

17  that the notebooks have "Integrated wireless support for MINI Card IEEE 802.11b and 802.11b/g

18  WLAN device." FAC ¶ 26.

19      HP's argument that the Limited Warranty effectively disclaims these express warranties

20  was squarely rejected by Judge Whyte in *Brothers.* Quoting *Fundin* with approval, Judge Whyte

21  reiterated that a "'disclaimer of an express warranty is essentially contradictory.' In *Fundin,* the

22  court held that the manufacturer's express warranties in its sales brochure could not be

23  disclaimed or excluded. The court reasoned that 'when a product has been expressly described

24  by its manufacturer as having certain detailed capacities under certain conditions, it would be

25  unfair and unreasonable to construe the language [of the disclaimer] as negating the express

26  description.'" *Brothers,* 2007 U.S. Dist. LEXIS 13155 at *24-25, quoting *Fundin.*

27      That the notebook computers at issue here did not fail the minute Plaintiffs brought them

28  home is not dispositive. In *Brothers* the notebooks owned by the two named plaintiffs failed

1    after the one year period of the HP Limited Warranty. The Court held that the Plaintiffs did not

2    have a claim under the Limited Warranty but had an express warranty claim -- based on

3    statements in the HP maintenance and service brochures -- without regard to the procedures, time

4    limits, or disclaimers in the Limited Warranty. *Brothers*, 2007 U.S. Dist. LEXIS 13155 at *5.

5    There as here the HP notebooks worked for a while before failing. Indeed, one of the two named

6    plaintiffs' computers in *Brothers* first failed more than two years after he bought it.

7         In our case, HP did not expressly warrant to provide a notebook that might or might not

8    connect wirelessly or to provide a notebook with components that would sometimes allow for

9    wireless connectivity for up to a year. It represented that the products had a "wireless LAN for

10   complete mobility." If the wireless LAN fails after a year, or after two years, the notebook no

11   longer has a "wireless LAN" nor does it have "complete mobility." It is no longer compatible

12   with wireless networks. Plaintiffs have alleged that the reasonable period for such a warranty is

13   five years. Whether that or some shorter period is correct is a question of fact that cannot be

14   resolved on a motion to dismiss.

15        That in response to the complaints raised by plaintiff Nygren and others HP extended its

16   Limited Warranty an additional year cannot preclude plaintiffs from proceeding. If, as Plaintiffs

17   allege, the product is defective, just as HP cannot limit its exposure on an express warranty claim

18   to the one year period established by the Limited Warranty, it cannot limit its exposure to two

19   years.

20        What HP's limited warranty extension shows is that there is a defect, that the product is

21   not functioning as warranted, and the real issue is the appropriate remedy for that defect. The

22   pleading stage is not the appropriate time to litigate those remedies. Plaintiffs have stated a claim

23   for breach of an express warranty.

24        HP argues that Plaintiffs suffer from a Goldilocks dilemma: Plaintiff Schiflette's

25   notebook failed after his Limited Warranty expired so he is too late; Plaintiff Nygren's notebook

26   failed while within the Limited Warranty so he is too early. Were the Plaintiffs alleging breach

27   of the Limited Warranty then HP's arguments might be well taken. But these are claims based on

28   express warranties that cannot be disclaimed through the Limited Warranty. The remedies to

which Plaintiffs are entitled include restitution or replacement of their notebooks with a conforming product. Since as a result of the defect HP cannot provide a product conforming with the express warranties, the claims are not barred.

### D. If Necessary, the Court Should Grant Plaintiffs Leave To Amend To Plead Additional Facts In Support Of Their Claims

Plaintiffs believe they have properly stated claims for each cause of action. Should the Court disagree, Plaintiffs respectfully request leave to amend the Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny HP's Motion to Dismiss.

Dated: May 19, 2008                    LEVY, RAM & OLSON


By:    _____*/s/ Michael F. Ram*_____
Michael F. Ram
mfr@lrolaw.com
639 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

EDELSON & ASSOCIATES, LLC
Marc H. Edelson (*Pro Hac Vice*)
medelson@hofedlaw.com
45 W. Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

SPECTOR, ROSEMAN & KODROFF, P.C.
Jeffrey L. Kodroff (*Pro Hac Vice*)
jkodroff@srk-law.com
John A. Macoretta
JMacoretta@srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
*Counsel for Plaintiffs and the Class*

F:\Docs\1113-01\Pleadings\OppMotDismiss-FINAL-5'18.doc