HOWARD HOLDERNESS (SBN 169814)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415.442.1000
Facsimile: 415.442.1001
E-mail: hholderness@morganlewis.com

JOHN F. SCHULTZ (PAB 67331) (*Pro Hac Vice*)
ROBERT A. PARTICELLI (PAB 82651) (*Pro Hac Vice*)
BARRY L. McCOY (PAB 88117) (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Facsimile: 215.963.5001
E-mail: john.schultz@morganlewis.com
E-mail: rparticelli@morganlewis.com
E-mail: bmccoy@morganlewis.com

Attorneys for Defendant
HEWLETT-PACKARD COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATHAN NYGREN and STEPHEN SHIFFLETTE, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendant. | Case No. 07-05793 (JW)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT HEWLETT-PACKARD COMPANY TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:    June 9, 2008<br>Time:    9:00 a.m.<br>Place:   Courtroom 8, 4th Floor<br>Before:  Honorable James Ware |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................. 1

II. TO THE EXTENT PLAINTIFFS' UCL, FAA AND CLRA CLAIMS ARE PREMISED ON A "FAILURE TO DISCLOSE," THOSE CLAIMS CANNOT BE SUSTAINED UNDER THE FACTS PLED IN THE AMENDED COMPLAINT .................................................................................................. 4

    A.  Plaintiffs Have Not Identified Any Statement Made By HP That Would Obligate HP To Disclose That A Component Part May Fail At Some Point During Its Alleged "Useful Life" ................................................... 4

    B.  Plaintiffs' Reliance On *Falk* Is Misplaced ............................................................... 7

    C.  Even Assuming Such A Legal Duty To Disclose Could Exist, Plaintiffs Have Completely Failed To Satisfy Their Burden Under Rule 9(b) Of Alleging Specific Facts Establishing HP's Pre-Sale Knowledge Of A Defect ..................................................................................... 8

III. REGARDLESS OF HOW PLAINTIFFS CHARACTERIZE THEIR CLAIM FOR BREACH OF WARRANTY, THE ALLEGATIONS OF THE AMENDED COMPLAINT FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............................................................................. 11

IV. CONCLUSION ............................................................................................................... 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i                                                                Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF AUTHORITIES

## CASES

*Brothers v. Hewlett-Packard Co.*
   2006 U.S. Dist. LEXIS 82027 (N.D. Cal. Oct. 31, 2006) .............................. 11, 12, 13

*Brothers v. Hewlett-Packard Company*,
   2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) .................................. 12, 14

*Buller v. Sutter Health*, 160 Cal. App. 4th 981 (1st Dist. 2008) ........................................ 8

*Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824
   (2d Dist. 2006) ........................................................................................................ 1, 5

*Falk v. GMC*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................... 7

*Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal. App. 3d 951
   (4th Dist. 1984) .......................................................................................................... 14

*Goodman v. Kennedy*, 18 Cal. 3d 335 (1976) ............................................................ 9, 10

*Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007) ........................... 1, 4, 5

*Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205
   (2d Dist. 1991) ........................................................................................................... 14

*Long v. Hewlett-Packard Co.*, 2007 WL 2994812
   (N.D. Cal. July 27, 2007) .............................................................................. 1, 5, 7, 13

*Oestreicher v. Alienware Corp.*, No. C 07-00512, 2008 WL 906550
   (N.D. Cal. April 1, 2008) .................................................................................... 4, 5, 8

*Salyards ex rel. Salyards v. Metso Minerals Tampere Oy*,
   2005 U.S. Dist. LEXIS 29360 (E.D. Cal. Nov. 10, 2005) ......................................... 14

*Seely v. White Motor Co.*, 63 Cal. 2d 9 (1965) ................................................................. 5

*Sun Microsystems Computer Corp. v. Pride Technologies, Inc.*,
   No. C93-20998, 1995 WL 364277 (N.D. Cal. June 14, 1995) .................................. 10

*Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003) ................................................. 9

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

ii                                                                          Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

In opposing Hewlett-Packard Company's Motion to Dismiss, Plaintiffs Nathan Nygren ("Plaintiff Nygren") and Stephen Shifflette ("Plaintiff Shifflette") (collectively, the "Plaintiffs") find themselves boxed into an untenable position. Although both Plaintiffs purchased HP notebook computers with one-year warranties, neither permitted HP an adequate opportunity to perform an in-warranty repair when their computers allegedly manifested a wireless connectivity issue. In Plaintiff Shifflette's case, the wireless issue did not manifest until *after* the one-year HP Limited Warranty expired. Plaintiff Nygren, on the other hand, has refused to tender his computer to HP for a repair because he believes the repair will fail again at some point during the computer's alleged five-year "useful life." Consequently, neither Plaintiff can allege that HP has refused to comply with its warranty obligations.

Complicating Plaintiffs' putative class action lawsuit further is the fact that HP has voluntarily established a repair and warranty extension program for the specific computer models purchased by Plaintiffs that entitles each consumer who experiences certain wireless issues to a free hardware repair for a period of twenty-four months from the date of purchase. If the repair fails during that twenty-four month period, HP will repair the computer again. Thus, each class member with a wireless connectivity problem will receive a notebook computer with fully operable wireless capability for at least an additional twelve months beyond the expiration of HP's one-year Limited Warranty. Neither Plaintiff has taken advantage of this free repair program.

Under California law, this should be the end of the story. Pursuant to the express terms of HP's Limited Warranty and California decisional authority, HP's obligation regarding its products is as follows: when a consumer complains of a defective product during the term of the warranty period, HP must repair or replace the product so that it operates properly for the duration of the one-year warranty. *Long v. Hewlett-Packard Co.*, 2007 WL 2994812 (N.D. Cal. July 27, 2007); *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007). In *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2d Dist. 2006), the California Court of

Appeal applied this "general rule" of warranty law in the context of the California Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA"), and held that a plaintiff could not state a claim under these statutes when a defendant manufacturer fails to disclose that a component part may fail during a product's "useful life" unless the manufacturer specifically represented that the component part or the overall product would in fact operate in a defect-free manner for the product's "useful life." Where, however, a manufacturer does not represent that a product will operate in a defect-free manner beyond the term of the warranty, the consumer has no reason to expect that the risk of post-warranty product failure will be allocated in any manner other than that which is set forth in the warranty.

Therefore, even without the availability of the free repair program, neither Plaintiff could state a claim against HP under any of the five causes of action set forth in the First Amended Complaint ("FAC"). The existence of the free repair program, however, makes Plaintiffs' continued pursuit of this putative class action particularly dubious. Nevertheless, Plaintiffs have taken an unusual approach to these seemingly intractable problems — argue that the alleged defect at issue is not covered by the explicit terms of HP's Limited Warranty because HP separately stated that their notebook computers would "come with a wireless LAN for complete mobility" and set forth the specifications for this wireless capability. FAC at ¶ 26. These representations, Plaintiffs contend, constitute a lifetime warranty of wireless capability that is limited in neither scope nor duration by the terms of HP's Limited Warranty. Furthermore, state Plaintiffs, these statements constitute a specific promise, independent from HP's Limited Warranty, that the computers would be "mobile" and that wireless capability would operate without failure during their entire "useful lives," and HP's failure to disclose that they would not so operate constitutes a violation of the UCL and CLRA.

This same argument was put forth — and rejected by this Court — in *Long v. Hewlett-Packard Company,* wherein the plaintiffs contended that their breach of warranty and statutory consumer fraud claims were based not on the terms of HP's Limited Warranty, but upon various alleged HP representations that plaintiffs' "notebook computers" would be "mobile" and "portable." As do Plaintiffs here, the *Long* plaintiffs contended that HP's statements constituted a

2     Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  super-warranty against defects affecting "portability" (or, in this case, "wirelessness") that
2  somehow operated outside the "free from defects" language and one-year term of HP's Limited
3  Warranty, thus requiring HP to disclose any "portability" defects which manifest during the
4  computers' "useful lives."

5  As in *Long*, Plaintiffs' arguments are unsupportable. HP's representation that the
6  Plaintiffs' notebook computers would "come with a wireless LAN for complete mobility" makes
7  no reference to the "useful life" of the wireless feature, nor does it warrant the lifetime
8  performance of that functionality. In short, the representations cited by Plaintiffs have nothing to
9  do with the post-warranty performance of Plaintiffs' notebook computers, and no reasonable
10 consumer could conclude that these representations superseded HP's Limited Warranty by
11 creating a *separate* lifetime promise of defect-free wireless performance. This is precisely why
12 the *Long* Court rejected similar assertions that HP's extra-warranty statements created a duty to
13 disclose. Indeed, the *Long* Court reasoning applies *a fortiori* here: "HP is not alleged to have
14 made any representation as to the life of its inverter, or even as to the useful life of its Pavilions.
15 As such, a consumer's only reasonable expectation was that the Pavilions would function
16 properly for the duration of HP's limited one-year warranty." *Id*. at *8.

17 To the extent that the wireless capability in Plaintiffs' notebook computers ceased
18 operating properly at some point, this defect, like any other defect that these computers might
19 manifest, unquestionably falls within the "free from defects" language and one-year term of HP's
20 Limited Warranty. Consequently, there is no support for the legal fiction proposed by Plaintiffs:
21 that HP's representation that their computers would "come with a wireless LAN for complete
22 mobility" required HP to disclose the existence of any defect that would affect the computers'
23 wireless capability at any time during their alleged five-year "useful lives." In the end, Plaintiffs
24 end up back where they started — under the terms of HP's Limited Warranty and without an
25 independent representation of product performance or expected lifespan that could create a duty
26 to disclose under *Daugherty*.

27 Moreover, even if such a legal duty to disclose could exist, Plaintiffs have not alleged a
28 single fact establishing that HP had pre-sale knowledge of a defect affecting the wireless

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

3                                    Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

functionality of Plaintiffs' computer models. HP cannot disclose what it did not know and Plaintiffs' rote, conclusory statements regarding HP's alleged knowledge do not come close to meeting the level of specificity required by Rule 9(b). Plaintiffs, therefore, cannot state a claim under any of the causes of action set forth in the FAC.

**II.    TO THE EXTENT PLAINTIFFS' UCL, FAA AND CLRA CLAIMS ARE PREMISED ON A "FAILURE TO DISCLOSE," THOSE CLAIMS CANNOT BE SUSTAINED UNDER THE FACTS PLED IN THE AMENDED COMPLAINT.**

Plaintiffs' Opposition to HP's Motion to Dismiss suffers from numerous flaws. The Opposition's most glaring defect, however, is Plaintiffs' belief that they have identified some HP statement regarding the wireless capability of their notebook computers that constitutes a lifetime warranty of component performance that is both independent from HP's Limited Warranty *and* that creates a duty to disclose that their computers' wireless feature may fail before the end of the computers' "useful lives." Plaintiffs' leap of logic is remarkable considering that none of the HP statements they rely upon make any representation regarding "useful life," performance, or any other qualitative characteristic. To the contrary, the statements that form the basis of Plaintiffs' claims simply identify that the notebook computers "come with" wireless capability – a fact that Plaintiffs do not dispute. There is nothing about this entirely accurate description of a product feature that creates a duty to disclose that the feature may not operate in defect-free fashion during the "useful lives" of Plaintiffs' computers. In any event, even assuming a duty to disclose could exist here, Plaintiffs have not identified any facts that would support their conclusory assertion that HP had pre-sale knowledge of a wireless defect in Plaintiffs' computers.

**A. Plaintiffs Have Not Identified Any Statement Made By HP That Would Obligate HP To Disclose That A Component Part May Fail At Some Point During Its Alleged "Useful Life."**

Under *Daugherty*, *Long, Hoey*, and, most recently, *Oestreicher v. Alienware Corp.*, No. C 07-00512, 2008 WL 906550 (N.D. Cal. April 1, 2008), California courts have repeatedly and consistently held that manufacturers have no automatic duty to disclose the existence of defects that may arise during a product's life. As this Court recently stated in *Hoey*, "There is no authority that provides that the mere sale of a consumer electronics product in California can

create a duty to disclose any defect that may occur during the useful life of the product." 515 F. Supp. 2d at 1104.

Rather, these cases hold that the scope of a manufacturer's disclosure obligations is defined by its representations. In other words, in order for the defendant to have a duty to disclose that a product may manifest a defect during its "useful life," the defendant's nondisclosure must be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty*, 144 Cal. App. 4th at 835; *see also Oestreicher*, 2008 WL 906550, at *6 (refusing to adopt abroad duty to disclose standard in a class action involving allegedly overheating notebook computers and stating that "[a] contrary holding would eliminate term limits on warranties, effectively making them perpetual or at least for the 'useful life' of the product"); *Long*, 2007 WL 2994812, at *8 (rejecting assertion that HP had duty to disclose that a potential inverter failure may arise during the "useful life" of certain notebook computers); *Hoey*, 515 F. Supp. 2d at 1104-05 (rejecting argument that "Sony had a duty to disclose the defect because plaintiffs would have had the expectation that a notebook computer would operate defect-free for more than one year"). This statement of California law is wholly consistent with the California Supreme Court's conclusion that a product manufacturer "cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands," and that the consumer can "be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965).

Plaintiffs are well aware that under California law a manufacturer has no duty to disclose defects that may arise during a product's "useful life" unless the manufacturer makes some representation regarding the "useful life" of the product or component part. As a result, Plaintiffs have attempted to distinguish this authority by alleging that HP in fact made representations that required it to disclose that the wireless capability of their notebook computers may malfunction during the products' "useful lives." In support of this argument, Plaintiffs cite the following representations allegedly made by HP:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5    Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

- "HP Pavilion notebooks come with a wireless LAN for complete mobility";
- "**Wireless Connectivity:** 802.11 b/g WLAN";
- **"Security and Support:....**Wireless Home Network";
- "Integrated wireless support for Mini Card IEEE 802.11b and 802.11 b/g WLAN device."

FAC at ¶ 26.

Even under the most generous, liberal reading, there is not even a plausible argument that these statements constitute either a representation regarding the "useful life" of the computer's wireless feature or a lifetime promise of defect-free wireless operation. On their face, it is clear that these statements neither identify the expected "useful life" of the computer or the wireless feature nor create a warranty obligation for "wireless components" that is separate from HP's Limited Warranty agreement to repair or replace defective parts for which it receives notice during the one-year term of the warranty.

Indeed, the representations identified by Plaintiffs merely state that Plaintiffs' computers will "come with a wireless LAN for complete mobility" and set forth the specifications of that wireless feature. At most, these representations would create a duty on HP's part to disclose that these computers did not "come with a wireless LAN" or did not meet the stated specifications. Plaintiffs, however, do not contend that their notebook computers *did not* "come with a wireless LAN" or that the computer was not designed to meet the listed specifications; to the contrary, Plaintiffs concede that their notebook computers did in fact operate wirelessly for a substantial period of time after purchase. Consequently, there is no "fact" that must be disclosed in order to render these statements not misleading; they are accurate and wholly truthful as is. Plaintiffs' attempt to twist these statements into a representation that the wireless functionality of their notebook computers would operate in a defect-free manner for the products' "useful lives" (which, by definition, would override the terms of the HP Limited Warranty) is supported by neither the law nor a common sense interpretation of the cited statements.

Despite Plaintiffs' attempt to distinguish their allegations from those presented to this Court in *Long*, the two cases are virtually indistinguishable. The *Long* plaintiffs argued that HP

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6   Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

had a duty to disclose "that the inverters in their notebook computers were defective such that 'the notebooks would function as a portable computer for one year only'" (2007 WL 2994812, at *8) based upon "technical specifications, maintenance and service guides, advertising, and other materials provided on or with Plaintiffs' and class members' computers [that] described the Pavilions as being 'notebook' computers [and]… elaborated on this description by emphasizing the computers' mobility, weight, size, battery life, wireless capabilities, and other similar attributes which all convey the distinguishing characteristic of portability, particularly vis a vis desktop computers. . . ." *Id*. at *5. This Court rejected the *Long* plaintiffs' assertion that these statements created a duty to disclose that the inverter component may fail during the computer's "useful life," stating that "HP is not alleged to have made any representation as to the life of its inverter, or even as to the useful life of its Pavilions. As such, a consumer's only reasonable expectation was that the Pavilions would function properly for the duration of HP's limited one-year warranty." *Id*. at *8. Much like the *Long* plaintiffs, the Plaintiffs here are searching for a representation to fit a legal theory. And much like the *Long* plaintiffs, the representations they have identified have nothing to do with the "useful life" of either their computers or the component parts at issue. In sum, Plaintiffs have not identified any statement that: (1) addresses the defect-free performance of their notebook computers that is independent from and not subsumed by the express terms of HP's Limited Warranty regarding defects; and (2) would obligate HP to disclose that the wireless feature may manifest a defect during the "useful lives" of their notebook computers. Consequently, Plaintiffs have not identified any HP statements that give rise to a duty to disclose under *Daugherty*.

**B. Plaintiffs' Reliance On *Falk* Is Misplaced.**

To the extent Plaintiffs rely on *Falk v. GMC*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) for the assertion that HP has an obligation to disclose that the wireless feature of their notebook computers may fail during the products' "useful lives" simply because such information would be "material," their reliance is misplaced. *Falk*'s materiality standard is wholly incompatible with *Daugherty* and its progeny to the extent its reasoning is applied outside the context of product

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7                                    Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

defects that present safety concerns (*i.e.*, defective speedometers). In *Daugherty*, *Long*, *Hoey*, and *Oestreicher*, there can be no question that the alleged omitted facts – that the products may fail during their useful life – would have been material to purchasers; indeed, this is precisely the argument Plaintiffs make here for the application of a duty of disclosure. Nevertheless, the courts rejected the assertion that the "materiality" of these facts created a duty of disclosure absent some specific representation regarding the "useful life" of the relevant product or component.

Not surprisingly, *Falk*'s conclusion recently has been rejected by both California state and federal courts. *See Buller v. Sutter Health*, 160 Cal. App. 4th 981, 988 n.3 (1st Dist. 2008) (adopting *Daugherty* standard for duty to disclose for UCL claims and rejecting plaintiffs' reliance on *Falk* for the proposition that a failure to disclose is actionable under the UCL if it satisfies one of the four tests set forth here by Plaintiffs, stating "to the extent *Falk* compels the conclusion that respondents have a duty to disclose their discount policy, we respectfully disagree"); *Oestreicher*, 2008 WL 906550, at *7 (refusing to apply *Falk* standard for duty to disclose in a factually indistinguishable litigation and stating that "the cases weigh heavily toward *Daugherty*" and "policy reasons militate against following *Falk* in this situation – where a duty to disclose is being imposed on a manufacturer for a latent non-safety related defect in its product."). For these reasons, Plaintiffs have failed to establish that HP had a duty to disclose that the wireless feature of Plaintiffs' notebook computers may malfunction during the computers' "useful lives."

**C. Even Assuming Such A Legal Duty To Disclose Could Exist, Plaintiffs Have Completely Failed To Satisfy Their Burden Under Rule 9(b) Of Alleging Specific Facts Establishing HP's Pre-Sale Knowledge Of A Defect.**

Even assuming the standards for disclosure espoused in *Falk* are applicable to the present case, Plaintiffs have failed to plead with the specificity required by Rule 9(b) any facts supporting their assertion that HP had pre-sale knowledge of the fact that the wireless capability of the notebook computers purchased by Plaintiffs would malfunction during their "useful lives."

A complaint alleging unfair business practices under the CLRA or UCL that are "grounded in fraud" must be plead with the particularity required by Federal Rule of Civil

Procedure Rule 9(b), regardless of whether fraud is an essential element of the underlying cause of action. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-1105, 1108 (9th Cir. 2003). The relevant inquiry in determining whether a claim is "grounded in fraud" is not whether the Complaint uses a "magic word" such as "fraud", "fraudulent" or "misleading"; rather, the dispositive question is whether the allegations describe fraudulent conduct.[1] *Vess*, 317 F.3d at 1108 ("Although [plaintiff] nowhere uses the word 'fraud' in these allegations, the pleading requirements of Rule 9(b) cannot be evaded simply by avoiding use of that magic word. Where…the averments in the complaint necessarily describe fraudulent conduct, Rule 9(b) applies to those averments."). As the *Vess* Court explicitly stated in applying Rule 9(b) to the plaintiff's UCL claims, "[f]raud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." 317 F.3d at 1105. Even where a plaintiff chooses to allege *some* fraudulent and some non-fraudulent conduct as a basis for the claim, the allegations regarding fraudulent conduct still must meet the heightened pleading requirements of Rule 9(b). *See id.* at 1104. Under these circumstances, if particular averments of fraudulent conduct do not satisfy the pleading standards of Rule 9(b), "a district court should 'disregard' those averments, or 'strip' them from the claim. The court should then examine the allegations that remain to determine whether they state a claim."[2] *Id.* at 1105.

Where, as here, the alleged fraudulent conduct is contingent upon the existence of a duty to disclose that arises from a defendant's alleged "exclusive knowledge" of an undisclosed defect, the "circumstances constituting fraud" cannot adequately be pled absent allegations sufficiently establishing the defendant's knew of the alleged defect at the time of sale. *See, e.g., Goodman v. Kennedy*, 18 Cal. 3d 335, 347 (1976) (affirming demurrer of fraud claim where "[i]nsufficient

---

[1] In Vess, the Court held that where fraud is not an essential element of a cause of action (as the Ninth Circuit has held in regards to UCL claims), but the plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule (9)(b)." *Id.* at 1103-04.

[2] It is well-settled that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged . . . . A plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (citations omitted).

1    facts are alleged to establish that defendant knew the materiality of the omitted matters or that
2    they were inaccessible to plaintiffs"); *Sun Microsystems Computer Corp. v. Pride Technologies,*
3    *Inc.*, No. C93-20998, 1995 WL 364277, at *3 (N.D. Cal. June 14, 1995) (dismissing fraud claim
4    where defendant's duty to disclose arose from defendant's "exclusive knowledge" of material
5    facts, and stating that plaintiff "must amend the complaint to plead with particularity that Sun
6    knew of material facts").

7          In support of their assertion that HP had exclusive pre-sale knowledge that the wireless
8    capability of the notebook computers purchased by Plaintiffs would malfunction during their
9    "useful lives," Plaintiffs offer nothing but the following conclusory assertions:

- "HP knew or was reckless in knowing that its representations regarding the HP Notebooks wireless capabilities were false." FAC at ¶ 48.

- "At all times, HP had knowledge of the deceptive and misleading nature of the wireless capabilities of the HP Notebook Computers because HP developed this technology." FAC at ¶ 55.

These two non-factual allegations fall well short of the specificity required by Rule 9(b). Indeed, if all that was required to properly allege a manufacturer's pre-sale knowledge of a defect was to assert that "the manufacturer must know because it manufactured the product," the specificity requirement of Rule 9(b) would be rendered meaningless.

      In their Opposition Brief, Plaintiffs attempt to buttress these conclusory statements by asserting that HP's voluntary repair and warranty extension program establishes HP's pre-sale knowledge that Plaintiffs' notebook computer would experience a wireless malfunction during their "useful lives." Plaintiffs' contention is a non-sequitiur for obvious reasons. The fact that HP affirmatively and voluntarily provided its customers with a free repair and warranty extension program for wireless issues with certain computers in October 2007 does not even arguably lead to an inference that HP "knew" in October 2006 or January 2007 (when Plaintiffs purchased their computers) that these notebook computers would manifest a wireless defect after months or years of operation. Indeed, far from being evidence of non-disclosure, HP's offering of a free out-of-warranty hardware repair for an additional twelve months beyond the expiration of the HP Limited Warranty evidences an attempt by HP to provide consumers with a remedy that goes well

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

10                                       Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

beyond HP's contractual obligations.[3]

In sum, HP cannot be required to disclose facts that it did not know, and Plaintiffs have failed to set forth any factual allegations supporting the assertion that HP "knew" that Plaintiffs' notebook computers would manifest a wireless defect during their "useful lives." Thus, even assuming that a duty to disclose *could* exist under the case law cited by Plaintiffs, such a duty does not exist under the facts they have alleged.

### III. REGARDLESS OF HOW PLAINTIFFS CHARACTERIZE THEIR CLAIM FOR BREACH OF WARRANTY, THE ALLEGATIONS OF THE AMENDED COMPLAINT FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Recognizing that they cannot allege a claim based on HP's Limited Warranty, Plaintiffs abandon that claim and instead focus on their breach of warranty "by description" claim. In essence, Plaintiffs attempt to turn a garden variety written warranty claim – which they cannot sustain in this case – into a claim for breach of warranty "by description" pursuant to California Commercial Code § 2313. In furtherance of this effort, Plaintiffs rely almost exclusively on Judge Whyte's decision in *Brothers v. Hewlett-Packard Company*. Opp. Brief at pp. 14-17. For the reasons set forth below, however, that decision does not save Plaintiffs' warranty "by description" claim because this case falls outside the rule of law announced in *Brothers* and squarely within the four corners of *Long v. Hewlett-Packard Company*. And, like the warranty "by description" claim in *Long*, Plaintiffs' warranty claim in this case should be dismissed with prejudice.

By way of background, in *Brothers v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 82027 (N.D. Cal. Oct. 31, 2006) ("*Brothers* I"), the plaintiff alleged that statements made by HP about its computers supported a violation of the UCL. *Id.* at *17. In dismissing that claim pursuant to HP's motion to dismiss, the Court stated that "defendant's alleged statements are

---

[3] In their Opposition Brief, Plaintiffs state that "[i]n the face of *HP's explicit and implicit admission that it knowingly sold notebook computers with defective wireless capabilities*, HP now seeks to preclude Plaintiffs from proceeding on their statutory consumer protection claims by invoking HP's Limited Warranty." HP is not certain what Plaintiffs base this blatant misrepresentation upon, but it is clear from the FAC and the remainder of the Opposition Brief that Plaintiffs have not alleged a single fact that can support this conclusion. *See* Plaintiffs' Opposition Brief at p. 1 (emphasis added).

either (1) non-actionable puffery; or (2) asserted factual statements for which there are no allegations supporting an inference of falsity at the time made." *Id.* at *18. The Court also dismissed the plaintiff's breach of warranty claim because it was time-barred. *Id.* at *25-*26. The plaintiff in *Brothers* then filed his Second Amended Complaint and asserted, *inter alia*, a claim for breach of express warranty "by description." Thereafter, in *Brothers v. Hewlett-Packard Company*, 2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) ("*Brothers* II"), the Court dismissed the plaintiff's written warranty claim for a second time (and with prejudice), but allowed the plaintiff's newly-asserted warranty "by description" claim to survive. Plaintiffs here allege that their FAC "pleads exactly the kinds of express representations that were found actionable in *Brothers*." Opp. Brief. at 16. This assertion is incorrect.

In *Brothers* II, the Court found that HP made a specific qualitative statement about the computer's design that went to the heart of the alleged defect at issue in that case: that the computers were compatible with a specific type of graphics card.[4] *Brothers* II, 2007 U.S. Dist. LEXIS 13155, at *19 (noting that the "Order [in *Brothers* I] did not address an alleged statement of the Pavilion's compatibility with the nVidia 5700 GPU."); *id.* at *23-*24 ("the court finds that plaintiffs have adequately alleged a . . . breach of express warranty claim based on HP's statements that the Pavilions at issue are compatible with the nVidia 5700 GPU."). The Court further found that "the statements here represent a particular product's performance specification based on its design." *Id.* at * 23.

Despite their best efforts to characterize it otherwise, Plaintiffs' warranty "by description" claim does not fit the same mold as the warranty "by description" claim in *Brothers*. Plaintiffs here do not point to any specific technical statements made by HP regarding the design of the computers or the "compatibility" of the wireless card with the computer.[5] *See* FAC ¶¶ 19, 26, 52.

---

[4] The Court noted in *Brothers* II that "HP stated in technical specifications . . . other materials provided on or with plaintiffs' computers that the Pavilions at issue 'contain[] and [are] compatible with the NVIDIA GeForce FX Go5700 with 64-MB video memory . . . .'" *Id.* at *21.

[5] While Plaintiffs will contend that the "technical" statements described in Paragraph 26 fit the bill and are "specific" enough, those alleged statements cannot serve as the basis of Plaintiffs' warranty "by description" claim; this is because Plaintiffs do not allege any facts to show that their computers did not have a "802.11b/g WLAN." Thus, as noted by the Court in *Brothers* I, the alleged statements in Paragraph 26 are simply "factual statements for which there are no

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

12    Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

In fact, Plaintiffs do not allege that the wireless card is any way "incompatible" with the computers at issue in this case; indeed, such an allegation would be refuted by the fact that Plaintiffs utilized the wireless feature of computers for a substantial period of time.

Thus, unlike the plaintiffs in *Brothers*, Plaintiffs' claim is not rooted in any specific qualitative statements about the construction of the product that can be assessed at the time of sale (*i.e.*, either the computer is compatible with a certain graphics card or it is not), but upon the existence of an alleged defect that may arise in the fullness of time and, as a result, that falls squarely within the terms of HP Limited Warranty. Consequently, Plaintiffs' claim also falls squarely within this Court's ruling in *Long* and should be dismissed for the same reasons. *Compare Long*, 2007 WL 2994812, at *5 (describing the statements that formed the basis of the plaintiffs' warranty by description claim, namely that the computers were not "portable" or "mobile") *with* FAC at ¶18 ("Notebook computers . . . are designed for mobility . . . ."); *id* ¶ 19 ("The HP computers suffer from a common defect that causes . . . [the] wireless capability to fail within the first five years . . . rendering these computers unable to connect remotely to the internet."); *id.* ¶ 26 (discussing "complete mobility"); *id.* ¶ 52 (same).

While this Court in *Long* correctly found that *all* extra contractual statements made by HP – regardless of their nature – were disclaimed by the clear terms of HP's written warranty (*Long*, 2007 WL 2994812, at *6), *Brothers* II at best stands for the proposition that it may in limited circumstances be proper to allow warranty by description claims to proceed when they are: (1) based on *specific* representations regarding a product's design; and (2) do not address a generic claim of defect that would otherwise fall within the four corners of the product's warranty. *Brothers* II does not in any way, however, create a rule of law that would allow non-descript general assertions regarding a "common defect" – such as the assertions by made by Plaintiffs in this case – to fall within the ambit of a breach of warranty "by description" claim. *Brothers* II, 2007 U.S. Dist. LEXIS 13155, at *20 (stating that only "misdescriptions of specific or absolute allegations supporting an inference of falsity at the time made." *Brothers* I, 2006 U.S. Dist. LEXIS 82027, at *18; *see also* HP's Memorandum of Law in Support, at pp. 14-15. Moreover, these exact types of statements – i.e., generalized technical statements that do not in any way address the plaintiff's core complaint or the alleged defect – were analyzed by the Court in *Long* and found to be disclaimed by HP's written warranty contract. *Long*, 2007 WL 2994812, at *5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                                    Case No. 07-05793 (JW)

**DEFENDANT HEWLETT-PACKARD COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

characteristics of a product are actionable") (citation omitted).  Thus, even when the *Brothers* II and *Long* decisions are read together and reconciled, the resulting rule of law does not save Plaintiffs' breach of warranty by description claim; indeed, if Plaintiffs are right and HP's warranty contract does not encompass and extinguish a warranty claim premised on generalized statements regarding a "common defect," then any breach of express warranty claim premised on a written contract could easily be transformed into a breach of express warranty by description claim by alleging that the product was "defective" and therefore failed to meet its description.[6]  This is not what the law intended.

For the reasons discussed above and in HP's Memorandum of Law, Plaintiffs' warranty by description claim is nothing more than an inartful attempt to repackage the written warranty claims that they are unable to assert in this case; thus, for the reasons set forth in Sections IV(A)(1)-(4) of HP's Memorandum of Law, Plaintiffs' warranty "by description" claim should be dismissed with prejudice because it is: (a) time-barred; and (b) disclaimed by the clear terms of HP's written warranty contract.[7]

---

[6] It bears note that a breach of express warranty by description claim *must* be rooted in some specific statement or description in order to be actionable.  *See Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal. App. 3d 951 (4th Dist. 1984) (finding that a specific statement regarding the product's specifications was actionable under a warranty by description theory).  This is because the trier of fact must be able to use the description as a benchmark against which it can determine the veracity of the manufacturer's actions; under circumstances such as those presented here, where only general statements about a "defect" have been alleged, this would not be possible.  In order to deal with the general problems that may arise with respect to a product's functionality and which are not foreseeable because no specific representations have been made about the product, manufacturers have placed time limitations and disclaimers in their written warranty contracts, as they are allowed to do pursuant to California law.  *Salyards ex rel. Salyards v. Metso Minerals Tampere Oy*, 2005 U.S. Dist. LEXIS 29360, at *27 (E.D. Cal. Nov. 10, 2005) ("A defendant can exclude express and implied warranties if the disclaimer is conspicuous."); *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 212-13 (2d Dist. 1991) ("A seller is permitted to limit its liability for defective goods by disclaiming or modifying a warranty.").

[7] Because HP's written warranty contract clearly covers the generalized "common defect" alleged to exist by Plaintiffs, the disclaimer in that contract is also operative.  This is not a situation, as was the case in *Brothers* II and *Fundin*, where the disclaimer was found to be invalid because of the manufacturer's *specific* statements regarding the product's design.  *Fundin*, 152 Cal. App. 3d at 958 ("[W]hen a product has been *expressly described by its manufacturer as having certain detailed capacities under certain conditions*, it would be both unfair and unreasonable to construe the language [of disclaimer] as negating the express description.") (emphasis added).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: May 27, 2008                    Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**


By: _____/s/John F. Schultz_____
         John F. Schultz


Attorneys for HEWLETT-PACKARD COMPANY