HOWARD HOLDERNESS (SBN 169814)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415.442.1000
Facsimile: 415.442.1001
E-mail: hholderness@morganlewis.com

KRISTOFOR T. HENNING (PAB 85047)
(*Pro Hac Vice*)
FRANCO A. CORRADO (PAB 91436)
(*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Facsimile: 215.963.5001
E-mail: khenning@morganlewis.com
E-mail: fcorrado@morganlewis.com

Attorneys for Defendant
HEWLETT-PACKARD COMPANY

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NATHAN NYGREN, STEPHEN SHIFFLETTE and AMY FROMKIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY, a Delaware corporation,<br><br>Defendant. | Case No. 07-CV-05793 (JW)<br><br>**HEWLETT-PACKARD COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing:<br><br>Date:        June 14, 2010<br>Time:        9:00 a.m.<br>Before:      Honorable James Ware<br>Courtroom: No. 8, 4th Floor<br>             San Jose<br><br>Action Filed:        November 14, 2007<br>Trial:               October 5, 2010 |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 14, 2010 at 9:00 a.m. in Courtroom No. 8 of the above-entitled Court, Defendant Hewlett-Packard Company ("HP") will, and hereby does, move this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting summary judgment in its favor and against Plaintiffs on all claims, including on the following grounds:

1)      Plaintiffs' only remaining claim alleges that HP violated the "unfair" prong of the California Unfair Competition Law ("UCL") by knowingly selling computers with an allegedly defective wireless internet capability design.  According to Plaintiffs, the component that caused their alleged wireless failures was not manufactured by HP, but rather by Nvidia Corporation.  The UCL does not apply, however, because Plaintiffs are non-California residents whose alleged injuries occurred outside of California.  Plaintiffs bought and used the computers that are the subject of their lawsuit outside of California and, therefore, experienced any wireless failure outside of California.  Similarly, Plaintiffs' computers were designed outside of California and generally developed by HP's notebook group in Texas.

2)      Even if the UCL could apply, however, Plaintiffs' claims still fail because the undisputed facts in the record demonstrate that they did not suffer any injury (let alone a required "substantial" injury) as a result of any "unfair" conduct by HP.

(i)      HP was obligated only to repair or replace defective component parts in Plaintiffs' computers during their one-year warranty period.  HP did more, however, and offered Plaintiffs a free repair for twenty-four months after their purchase for their alleged wireless failures, although Plaintiffs chose not to take advantage of HP's free repair.  HP could not have acted "unfairly" toward Plaintiffs by providing them with more than it was required and more than they bargained for.  Plaintiffs' decision to forego a free repair only illustrates that they

1    suffered no injury as a result of HP's conduct–but rather, if at all, from their own decision.

2            (ii)    Plaintiffs cannot show that HP knew of the alleged design defect that is the

3    subject of their claims before it shipped their computers.

4            (iii)    Plaintiff Shifflette does not claim to have suffered a wireless malfunction

5    until after the expiration of his HP warranty and, therefore, he received the benefit of his bargain

6    and suffered no injury that can support his UCL "unfair" claim.

7            (iv)    Plaintiff Nygren never submitted his computer to HP for a repair.   HP

8    cannot have acted "unfairly" by failing to repair Plaintiff Nygren's computer if he never took the

9    steps required to receive such a repair.

10           (v)    Plaintiff Fromkin was reimbursed for her HP computer purchase from third

11   parties.   Consequently, she did not lose money or suffer a "substantial" injury and, therefore,

12   cannot sustain a UCL "unfair" claim.

13           (vi)    Plaintiffs do not seek restitution available under the UCL because they do

14   not seek the return of funds currently in HP's possession in which Plaintiffs formerly held an

15   ownership interest.

16       HP's motion is based on this Notice of Motion and the attached Memorandum of Points &

17   Authorities, [Proposed] Order, Declaration of Richard Hunt Hodge, Declaration of Norma

18   Nussbaumer, Declaration of Gerald Larson, Declaration of Troy Williams, Declaration of

19   Kristofor T. Henning, the pleadings and papers on file in this matter, any fact or matter of which

20   the Court may take judicial notice, and any further arguments and evidence as may be presented

21   at the time of the hearing.

22   Dated:  April 19, 2010                         MORGAN, LEWIS & BOCKIUS LLP

23                                                  By: /s/ Kristofor T. Henning___
                                                        Kristofor T. Henning
24                                                      Attorneys for Defendant
                                                        Hewlett-Packard Company

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF UNDISPUTED FACTS ............................................................. 4

        A.      HP's Obligations To Plaintiffs Were Defined By Its
                Limited Warranty .................................................................................... 4

        B.      HP Went Above And Beyond Its Obligations To Plaintiffs
                And Implemented The Program That Offered A Free Repair
                For Wireless Failures .............................................................................. 4

        C.      Plaintiffs' Computers Were Designed Outside Of California................. 6

        D.      Plaintiffs And Their Experience With Their HP Computers ................. 6

                1.      Plaintiff Nygren......................................................................... 6

                2.      Plaintiff Shifflette....................................................................... 7

                3.      Plaintiff Fromkin ........................................................................ 8

III.    STATEMENT OF THE ISSUES TO BE DECIDED........................................... 8

IV.     LEGAL STANDARD............................................................................................ 9

V.      ARGUMENT ........................................................................................................ 9

        A.      The UCL Does Not Apply To Non-California Residents' Claims Based
                On Alleged Injuries And Conduct That Occurred Outside Of California ............. 9

        B.      Even If The UCL Could Apply, The Undisputed Facts Demonstrate That
                Plaintiffs' Claims Under Its "Unfair" Prong Fail As A Matter Of Law ............... 12

                1.      Plaintiffs Have Not Suffered An Injury Caused By HP – Let Alone
                        A Substantial One That They Could Not Have Avoided – Because
                        They Chose Not To Take Advantage Of The Free Repair HP
                        Provided Under The Program ..................................................... 13

                2.      Plaintiffs Cannot Show That HP Knew Of The Alleged
                        Heat-Cycling Design Defect That Is The Basis Of Their
                        Claims Before HP Shipped Their Computers ........................... 15

                3.      Plaintiff Shifflette's UCL "Unfair" Claim Fails Under
                        *Daugherty* Because He Never Experienced A Wireless
                        Failure Within His One-Year Original Warranty Period .................... 16

4.    Plaintiff Nygren Has Not Suffered An Injury Caused By HP's Conduct That He Could Not Avoid Because He Chose Never To Send His Computer To HP For A Repair During His One-Year Limited Warranty Period Or Otherwise........................... 17

5.    Plaintiff Fromkin Has Not "Lost Money" Under The UCL Or Suffered A Substantial Injury Because She Was Reimbursed For The Purchase Of Her HP Computer ................................... 18

C.    Plaintiffs Do Not Seek Restitution Available Under The UCL ........................... 19

VI.    CONCLUSION ........................................................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3 *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ................................................................. 12

4 *Brothers v. Hewlett-Packard Co.*, No. C 06-02254, 2006 U.S. Dist. LEXIS 82027
5     (N.D. Cal. Oct. 31, 2006) ................................................................................................... 15

6 *Churchill Village, LLC v. GE*, 169 F. Supp. 2d 1119 (N.D. Cal. 2000) ...................................... 10

7 *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824
    (2d Dist. 2006) ..................................................................................... 3, 12, 13, 16

8 *Diamond Multimedia Sys. v. Superior Court*, 19 Cal. 4th 1036 (Ca. 1999) ................................ 10

9 *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006) ................................................ 20

10 *Fulford v. Logitech, Inc.*, No. C-08-2041, 2008 U.S. Dist. LEXIS 95175
11     (N.D. Cal. Nov. 14, 2008) .................................................................................................. 20

12 *Germain v. J.C. Penney Co.*, No. CV 09-2847, 2009 WL 1971336
    (C.D. Cal. July 6, 2009) ..................................................................................................... 20

13 *Hall v. Time, Inc.*, 158 Cal. App. 4th 847 (4th Dist. 2008) ............................................... 14, 16, 19

14 *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007) ............................................. 13

15 *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965 (1st Dist. 1997) ......................................... 15

16 *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ................................. 19, 20

17 *Long v. Hewlett-Packard Co.*, No C 06-02816, 2007 U.S. Dist. LEXIS 79262
18     (N.D. Cal. 2007), *aff'd*, 316 F. App'x 585 (9th Cir. 2009) ........................................... 4, 13, 15
19
*Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221 (S.D. Fla. 2002) ................................ 11

20 *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (4th Dist. 1999) ...................... 9

21 *Oestreicher v. Alienware Corp.*, 322 F. App'x 489 (9th Cir. 2009) ............................................. 13

22 *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (4th Dist. 2008) ..................................... 14, 16

23 *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................................... 11

24 *Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567, 2009 WL 5184422
    (C.D. Cal. Dec. 21, 2009) .................................................................................................. 20

25 *Priyanto v. M/S Amsterdam*, No. CV 07-3811, 2009 WL 175739
26     (C.D. Cal. Jan. 23, 2009) ................................................................................................... 10

27 *Speyer v. Avis Rent a Car Sys.*, 415 F. Supp. 2d 1090 (S.D. Cal. 2005),
    *aff'd*, 242 F. App'x 474 (9th Cir. 2007) ............................................................................. 10

28

1   *Standfacts Credit Servs. v. Experian Info. Solutions, Inc.*, 405 F. Supp. 2d 1141
       (C.D. Cal. 2005).............................................................................................................. 10

2   *Tidenberg v. BIDZ.com, Inc.,* No. CV 08-5553, 2009 WL 605249
3      (C.D. Cal. Mar. 4, 2009) ........................................................................................... 10, 11

4   *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288, 2009 WL 3320486
       (N.D. Cal. Oct. 13, 2009)........................................................................................... 15, 17
5
    *ZL Techs., Inc. v. Gartner, Inc.*, No. CV 09-0239, 2009 WL 3706821
6      (N.D. Cal. Nov. 4, 2009)................................................................................................. 12

7                                    **STATUTES AND RULES**

8   Fed. R. Civ. P. 56(c)(2) ................................................................................................... 9

9   Fed. R. Civ. P. 56(e)......................................................................................................... 9

10  Cal. Bus. & Prof. Code § 17203 ............................................................................. 12, 19

11  Cal. Bus. & Prof. Code § 17204 ................................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Plaintiffs Nathan Nygren, Stephen Shifflette and Amy Fromkin ("Plaintiffs") claim that Hewlett-Packard Co. ("HP") knowingly sold notebook computers (code-named Atlantis and Apollo within HP) with an alleged heat-cycling defect that, after a period of time, prevented them from wirelessly accessing the internet with their computers.  *See, e.g.,* Pls.' Second Amended Complaint ("SAC") ¶¶ 1, 20, 25, 27, 34, 54, 63; Pls.' Notice of Motion and Motion for Class Certification ("Pls.' CC Br.") at 1:24-26.  The component that Plaintiffs allege was the cause of their wireless failures was not manufactured by HP, but rather by Nvidia Corporation.  *See* Pls.' CC Br. at 2:1.[1]  Plaintiffs' SAC asserted six causes of action, ranging from breach of warranty to violations of the California Consumer Legal Remedies Act and all three prongs of the Unfair Competition Law ("UCL").  On May 28, 2009, this Court granted HP's motion to dismiss all of Plaintiffs' warranty and misrepresentation/omission based claims, leaving only a single remaining cause of action:  that HP violated the "unfair" prong of the UCL by knowingly selling computers with defective wireless functionality and failing to provide an adequate repair.  Ex. 2 at 11:23-12:2;[2] Pls.' CC Br. at 1:24-26.  In truth, HP provided Plaintiffs with more than the benefit of their bargain and, therefore, cannot have acted "unfairly" toward them.

With the purchase of their computers, Plaintiffs received a one-year "repair or replace" limited warranty from HP (the "Limited Warranty").  HP's Limited Warranty did not promise perfect or uninterrupted use of Plaintiffs' computers, but instead provided for necessary repairs or replacement within the one-year warranty period for any defective parts or, at HP's option, a replacement computer if multiple repairs proved unsuccessful.  HP was obligated only to comply with its warranty obligations to Plaintiffs and had no further obligation to repair their computers

---

[1]     Nvidia is the subject of a consolidated nationwide class action in this Court alleging that it sold defective chips "to its original equipment manufacturers . . . such as Hewlett-Packard, which were then included in [their] computers. . . ."  *See, e.g.,* Declaration of Kristofor T. Henning, Ex. 1 at 1.  Future references to "Ex. __" are to the exhibits attached to the Declaration of Kristofor T. Henning.  Although Plaintiffs appear to be putative class members in the Nvidia litigation – and they claim that Nvidia's chip is the alleged cause of their wireless failures – they filed this action against HP.
[2]     *See id.* at 5:8-11; 9:18-19; *see also id.* at 10:3-5; Ex. 3 at 2:9-15.

after the expiration of their one-year Limited Warranties.  Nevertheless, HP did more in this instance and actually provided Plaintiffs with more than the benefit of their bargain.  In November 2007, approximately three months after the last Plaintiff bought her HP computer, HP implemented a Limited Warranty Enhancement Program (the "Program") that, *inter alia*, provided a free repair to customers who experienced certain symptoms with their computers, including wireless failures, for twenty-four months after their date of purchase.

Notwithstanding HP's decision to implement the Program and offer to Plaintiffs a free repair for their alleged wireless failures beyond that for which they could have bargained when they purchased their computers, Plaintiffs have brought this putative nationwide class action alleging that HP violated the UCL's "unfair" prong.  The UCL cannot apply to Plaintiffs' claims, however, because their alleged injuries and the design of their computers occurred outside of California.  Plaintiffs are Wisconsin, Virginia and Florida residents who purchased their computers in their home states and experienced any wireless failure outside of California.  Likewise, Plaintiffs' computers were designed outside of California.  The UCL does not apply where the plaintiffs' alleged injuries and defendant's allegedly improper conduct occurred outside of California.

Even if the UCL could apply, Plaintiffs' claims still fail based on the undisputed facts in the record.  Plaintiffs all chose to forego HP's free repair made available under the Program.  Plaintiffs' decisions do not change the fact that HP provided them with more than it was required to and more than the benefit of their bargain and, therefore, could not have acted "unfairly" toward them.  To the contrary, Plaintiffs' decisions only confirm that they have suffered no injury–let alone a "substantial" injury–as a result of HP's conduct that could sustain a claim under the UCL's "unfair" prong.

There is also no evidence in the record that HP knew of the alleged heat-cycling defect that is the basis of Plaintiffs' wireless failure claims before HP shipped their computers.  This, too, is fatal to Plaintiffs' UCL claims.  Plaintiffs bought their computers in and before August 2007, but the only relevant evidence in the record confirms that HP did not learn that some computers could experience wireless failures resulting from heat-cycling until months later.

2

1   Recognizing the importance of the issue, Plaintiffs hired an expert to opine on HP's pre-sale

2   knowledge, but the alleged defect that he claims HP knew about (and corrected) before Plaintiffs'

3   purchases is not the subject of their lawsuit.

4       Plaintiff Shifflette's claim fails for the additional reason that he does not allege that he

5   experienced a wireless malfunction with his computer until more than thirteen months after his

6   purchase–outside of his Limited Warranty period.  Thus, he received exactly what HP warranted.

7   Under *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2d Dist. 2006) and

8   similar cases, a product manufacturer does not act "unfairly" under the UCL where its product

9   performs as warranted during the applicable warranty period.

10      Plaintiff Nygren's claim fails because he chose not to submit his computer for a repair at

11  all–whether under the Program or otherwise.  Needless to say, HP can repair a customer's

12  computer under its Limited Warranty or the Program only if the customer requests and takes the

13  steps necessary to receive such a repair.  Plaintiff Nygren, however, chose not to do so and

14  instead testified that he considered this lawsuit to be the "fix" he preferred.

15      Plaintiff Fromkin has not "lost money" as a result of her HP computer purchase and,

16  therefore, has no standing to sue under the UCL.  Plaintiff Fromkin bought her computer with one

17  of her credit cards, but she was reimbursed from a college savings account owned and funded

18  entirely by others.  She therefore expended none of her own funds for her computer and cannot be

19  said to have suffered any injury, let alone the "substantial" injury required to sustain a UCL

20  "unfair" claim.

21      Plaintiffs' UCL claims also fail because the monetary relief they seek is not authorized by

22  that statute.  Only restitution is available to UCL plaintiffs.  Plaintiffs, however, did not pay any

23  money to HP and, therefore, they do not seek the return from HP of funds in HP's possession in

24  which they previously held an ownership interest.  Consequently, Plaintiffs do not seek restitution

25  available under the UCL.

26      For all of these reasons and others set forth herein, HP is entitled to summary judgment on

27  Plaintiffs' sole remaining claim.

28

## II.     STATEMENT OF UNDISPUTED FACTS

### A.     HP's Obligations To Plaintiffs Were Defined By Its Limited Warranty.

Plaintiffs bought HP notebook computers (models DV6110US, DV6140US and DV6445US) that came with HP's one-year "repair or replace" Limited Warranty that provides, in part:

> HP warrants that the HP hardware product and all the internal components of the product that you have purchased or leased from HP are free from defects in materials and workmanship under normal use during the Limited Warranty Period. . . .  During the Limited Warranty Period, HP will repair or replace the defective component parts or the hardware product. . . .  In the unlikely event that your HP product has a recurring failure, HP, at its discretion, may elect to provide you with a replacement unit of HP's choosing that is at least equivalent to your HP branded product in hardware performance.  HP reserves the right to elect, at its sole discretion, to give you a refund of your purchase price or lease payments (less interest) instead of a replacement.  This is your exclusive remedy for defective products.

> \*        \*        \*        \*        \*        \*        \*        \*

> HP does not warrant that the operation of this product will be uninterrupted or error-free.

Ex. 4 at 2, 3.  As this Court previously explained, HP "does not warrant that its products will operate uninterruptedly or free of errors – simply that HP will repair or replace any product to the warranted condition within a reasonable time."  *See Long v. Hewlett-Packard Co.*, No C 06-02816, 2007 U.S. Dist. LEXIS 79262, at \*12 (N.D. Cal. 2007), *aff'd*, 316 F. App'x 585 (9th Cir. 2009).

### B.     HP Went Above And Beyond Its Obligations To Plaintiffs And Implemented The Program That Offered A Free Repair For Wireless Failures.

In November 2007, HP implemented (or, more precisely, expanded) the Program for certain Atlantis/Apollo notebooks, including Plaintiffs Nygren and Shifflette's computers, to provide for a free repair to customers who experienced certain symptoms, including wireless failures.  Ex. 5 ¶ 9; *see also* SAC ¶ 25.[3]  By March 2008, the Program included Plaintiff Fromkin's computer as well as all Atlantis/Apollo computers.  Ex. 5 ¶ 11.  HP provided extensive

---

[3]     The Program does not extend the term of HP's Limited Warranty.  As HP explained, it does not affect the terms of that Limited Warranty.  Ex. 5 ¶¶ 8, 11 (Exhibits A & B).  The Program is instead an additional level of repair beyond HP's Limited Warranty.

1   notice of the Program, including descriptions on its website (www.hp.com).[4] *Id.* ¶¶ 8, 11, 15. HP

2   also: (1) disclosed the program on a forum on its website where customers discussed wireless

3   connectivity and could seek technical assistance (which is at least one place where Plaintiff

4   Nygren learned of the Program); (2) sent over 1 million total e-mails to customers who had

5   registered their computers with HP (some of whom received more than one); and (3) used "HP

6   Update" and "HP Instant Support" to disclose the program. *Id.* ¶¶ 16-28; 33. Since November

7   2007, the Program description posted to www.hp.com registered over 4.8 million "hits." *Id.* ¶ 40.

8       The Program provides for a free wireless repair (usually a motherboard replacement) and

9   free shipping for twenty-four months after a customer's purchase. *Id.* ¶¶ 9, 13-14 (Exhibit A)

10  (describing wireless failure symptom covered by Program as "[t]he notebook does not detect

11  wireless networks and the wireless adapter is not detected in the Device Manager"). The free

12  Program repair comes with its own 90-day warranty. *Id.* ¶ 13 (Exhibit A) (explaining that "[a]fter

13  HP repairs your notebook, you will continue to be covered by the HP Limited Warranty Service

14  Enhancement program for 24 months after the start of your original standard limited warranty, or

15  90 days after receiving your free repair, whichever is later"). Under the Program, therefore,

16  eligible customers (including Plaintiffs) who have experienced a problem with the wireless

17  capability of their notebook computers "have up to 24 months after the start of [their] original

18  standard limited warranty entitlement to get [their] notebook repaired. . . ." *Id.* If a customer who

19  receives a Program repair experiences a covered wireless symptom again within the eligible

20  Program period, HP will provide another free repair. *Id.*

21      The data demonstrate that HP provided hundreds of thousands of repairs under the

22  Program or its Limited Warranty, although still only a small percentage of the total universe of

23  Atlantis/Apollo units. There are 1,776,951 Atlantis/Apollo notebooks in HP's customer installed

24  base ("CIB") (*i.e.*, total shipments less returns from unsold units). Ex. 6 ¶ 4. Through December

25  2009, whether under the Program or otherwise, HP provided a free motherboard replacement for

26  304,558 units (*i.e.*, 17.14%). *Id.* ¶¶ 11, 13.[5]

27  ───────────────

[4]   http://h10025.www1.hp.com/ewfrf/wc/document?docname=c01087277&lc=en&cc=us

28  [5]   While a motherboard replacement is the most used repair under the Program, HP's repair
naturally depends on the circumstances of the subject computer and its particular cause. Ex. 7 at

1

## C.   Plaintiffs' Computers Were Designed Outside Of California.

As explained above, Plaintiffs' SAC alleges a heat-cycling design defect in their HP computers "that interferes with wireless access and causes the wireless feature to fail."  SAC ¶ 1.[6] Plaintiffs' computers were not designed in California, however, and Plaintiffs have not even alleged otherwise–because they could not.  HP's notebook computer group is headquartered in Houston, Texas.  *See* Ex. 8 ¶ 3.  The design, pre-launch testing, and assembly of Plaintiffs' model computers occurred almost exclusively and primarily outside of the United States in either Taiwan or China, with some testing and support done in Texas.  *Id.* ¶¶ 6-26.  No part of that process occurred in California–at HP's corporate headquarters in Palo Alto or otherwise.  *Id.* ¶¶ 7, 10, 13, 15, 18, 19, 20, 23, 25, 26.  The motherboards used in HP's repair process were also manufactured outside of the United States.  *Id.* ¶ 60.  Similarly, HP's Palo Alto headquarters does not, at any given point, have involvement in or ultimate responsibility over the execution of the development, design, pre-launch testing, and evaluation of HP's notebook computers throughout their life cycle, including the Atlantis and Apollo series notebooks Plaintiffs bought.  *Id.* ¶¶ 7, 10, 13, 15, 18, 19, 20, 23, 25, 26, 59.  For the United States market, the development and planning stage for HP's notebook computers (including Plaintiffs' models) occurs in Texas and Taiwan. *Id.* ¶ 7.

## D.   Plaintiffs And Their Experience With Their HP Computers.

### 1.   Plaintiff Nygren

Plaintiff Nygren is a Wisconsin resident who bought an HP notebook computer at Office Depot in Wisconsin on January 14, 2007.  *See* Ex. 9 at 6:21-24; 9:22-10:3; 59:19-60:23; 61:18-24; 107:7-13.  Plaintiff Nygren only used his computer in Wisconsin and, therefore, claims to have experienced a wireless malfunction only in Wisconsin.  *See id.* at 123:14-17.  Plaintiff Nygren responded to a posting on HP's website announcing the Program within minutes, clearly

---

214:7-12.  Therefore, if a different repair is required, HP provides that repair.  *Id.*

[6]   *See also id.* ¶ 20 (alleging that Program "does not adequately remedy the heat cycling design defect"); ¶ 25 (alleging that HP has not repaired "heat cycling design problems"); ¶ 27 (alleging "defective heat cycling design"); ¶ 34 (alleging "design defects that impair the wireless functions and other related aspects of the computers"); ¶ 54 (alleging "heat cycling design defect"); ¶ 63 (alleging "design defect").

demonstrating his knowledge of the Program by at least November 16, 2007. *See id.* at 193:11-194:22. Still, when HP offered to repair his computer pursuant to the Program, Plaintiff Nygren flatly refused–and never sent his computer for repair to HP at all (under the Program or otherwise). *See id.* at 163:14-16; 196:4-198:7. Plaintiff Nygren instead decided that this lawsuit was the "fix" he preferred.[7]

### 2.       Plaintiff Shifflette

Plaintiff Shifflette is a Virginia resident who bought an HP notebook computer on October 15, 2006 from CompUSA in Virginia. *See* Ex. 10 at 7:11-13; 62:5-17; Ex. 11; Ex. 10 at 84:8-20. Plaintiff Shifflette used his computer exclusively outside of California. *See* Ex. 10 at 121:16-122:6; 127:3-129:22. Therefore, any wireless failure he claims to have experienced also necessarily occurred outside of California. *See id.* at 7:11-12; 62:14-17; 84:13-20; 136:21-137:7; 140:13-21; 166:21-167:13; 167:14-18.

Plaintiff Shifflette claims he first experienced a wireless malfunction in December 2007–more than thirteen months after his purchase. *See id.* at 123:14-21. Plaintiff Shifflette then bought an external wireless device for his HP computer in Virginia on December 17, 2007 that allowed him to use the internet wirelessly-apparently the same day he first experienced a wireless problem. *See id.* at 136:5-137:7; Ex. 12 at Response 11; Ex. 10 at 138:13-139:2; 139:10-12.

Plaintiff Shifflette testified that he reviewed Plaintiffs' First Amended Complaint and authorized its filing on his behalf. Ex. 10 at 58:11-16; 208:2-11. That pleading contained allegations about the Program. *See* First Amended Complaint ¶ 24. Therefore, by at least February 28, 2008 (when Plaintiffs filed their First Amended Complaint), Plaintiff Shifflette was on actual notice of the Program (for which he was still eligible for several more months). Nevertheless, Plaintiff Shifflette chose not to take advantage of the free repair HP offered under the Program. *See* Ex. 12 at Response 14.

---

[7]       *See* Ex. 9 at 36:11-37:19; 50:13-51:1 ("Q: So you understood the fix to be the litigation? A: Correct."); 182:20-183:3. Plaintiff Nygren received a communication from a person named Cary Holzman, who offered to put Plaintiff Nygren in touch with one of his current counsel. *See id.* at 27:1-30:20. Mr. Holzman mentioned that he believed he had a "fix" for the wireless difficulty Plaintiff Nygren claimed he was experiencing. *See id.* at 36:11-23. That "fix" was class action litigation, not a technical repair. *See id.* at 50:18-51:1; 189:24-190:6.

### 3.     Plaintiff Fromkin

Plaintiff Fromkin is a Florida resident who bought an HP Pavilion notebook computer from a Circuit City store in Florida in the summer of 2007.  *See* Ex. 13 at 10:9-12; 40:18-41:22; Ex. 14.   Plaintiff Fromkin bought the computer with one of her credit cards and then was reimbursed from a college savings fund owned by her father and funded entirely by others.  *See* Ex. 13 at 52:9-53:18; 72:4-73:11; Ex. 15 at 109:19-120:7; 110:10-111:20; 111:21-112:13; 114:2-15.   Plaintiff Fromkin never used her HP computer outside of Florida and, in fact, she never expected to use it outside of Florida when she bought it.  *See* Ex. 13 at 144:8-11; 145:19-21. Logically, therefore, she did not experience a wireless failure outside of Florida.

Plaintiff Fromkin's mother (whose idea it was to initiate her daughter's lawsuit) learned of the Program from HP's website in approximately January 2009.  Ex. 15 at 284:22-285:9; 290:13-16.  Likewise, Plaintiff Fromkin testified that she authorized the filing of Plaintiffs' SAC, which contained allegations about the Program.  Ex. 13 at 102:19-21.  Thus, she was on notice of HP's Program by, at the latest, November 24, 2008, when her counsel filed the SAC.   Plaintiff Fromkin's mother did not have her daughter take advantage of HP's free repair, however, because she had already spoken to putative class counsel, was already engaged in litigation and concluded that it was in the "best interest of the class" that she not seek to have her daughter's computer repaired under the Program.  Ex. 15 at 284:22-285:9; 290:13-16.

### III.     STATEMENT OF THE ISSUES TO BE DECIDED

Whether Plaintiffs can sustain their claims under the UCL when the undisputed facts in the record show that they: (i) suffered any alleged injuries outside of California based on conduct taken outside of California; (ii) chose to forego opportunities to have their computers repaired; (iii) cannot point to any evidence in the record that HP knew of an alleged heat-cycling wireless internet defect in their computers before HP shipped them; (iv) received a computer whose wireless capability functioned without incident for the time of HP's Limited Warranty; (v) did not expend any of their own money for their HP computers; and (vi) do not seek restitution of funds they paid to HP.

1

## IV.    LEGAL STANDARD

Summary judgment is required when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(c)(2).  While the Court views the evidence in the light most favorable to the non-moving party, the party opposing summary judgment may not rely on the allegations in its pleadings to avoid summary judgment.  It must instead point to specific facts in the record, if any, that preclude summary judgment.  *See* Fed. R. Civ. P. 56(e).

## V.    ARGUMENT

### A.    The UCL Does Not Apply To Non-California Residents' Claims Based On Alleged Injuries And Conduct That Occurred Outside Of California.

No Plaintiff is a California resident and none claims to have either bought his/her HP computer in California or experienced a wireless malfunction in California.  Plaintiff Nygren is a Wisconsin resident who bought his computer in Wisconsin, only used it in Wisconsin and, therefore, claims to have experienced a wireless malfunction only in Wisconsin.  Ex. 9 at 61:18-24; 123:18-124:2; 123:14-17.  Plaintiff Shifflette is a Virginia resident who bought his computer in Virginia, used it exclusively outside of California and, therefore, claims to have experienced a wireless malfunction only outside of California.  Ex. 10 at 7:11-12; 62:14-17; 84:13-20; 136:21-137:7; 140:13-21; 166:21-167:13; 167:14-18.  Plaintiff Fromkin is a Florida resident who bought her computer in Florida, never used it outside of Florida and, therefore, also could not have experienced a wireless malfunction in California.  Ex. 13 at 10:9-12; 41:2-8; 90:4-8; 144:8-11.  Because (1) Plaintiffs are not California residents; (2) their alleged injuries occurred (if at all) outside of California and (3) they cannot show that HP's allegedly "unfair" conduct occurred in California, the UCL cannot apply.

"A plaintiff may not bring a UCL claim to address an alleged injury that occurred outside of California."  Ex. 16 (March 16, 2010 Order Granting HP's Motion to Dismiss in *Young v. Hewlett-Packard Co.*, No. CV09-0315 (C.D. Cal.)); *see also Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (4th Dist. 1999) (explaining that UCL was neither designed nor intended to "regulate the claims of nonresidents arising from conduct occurring entirely outside of

California"); *Standfacts Credit Servs. v. Experian Info. Solutions, Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005) (noting that "the UCL does not apply to actions occurring outside of California that injure non-residents"). In fact, the California Supreme Court has announced a presumption against applying California law extraterritorially where the allegedly wrongful act and alleged injury occurred outside of California. *See Diamond Multimedia Sys. v. Superior Court*, 19 Cal. 4th 1036, 1060 (Ca. 1999) ("The presumption against extraterritoriality is one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute.") (emphasis added). As a result, numerous courts have rejected UCL claims where a non-California resident was allegedly injured by conduct taken outside of California. *See, e.g.*, *Tidenberg v. BIDZ.com, Inc.*, No. CV 08-5553, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) (holding that if "neither of these questions [whether injury or conduct occurred in California] can be answered in the affirmative, then [non-resident] Plaintiff will be unable to avail herself of" UCL–even against defendant whose principal place of business was in California); *Priyanto v. M/S Amsterdam*, No. CV 07-3811, 2009 WL 175739, at *5 (C.D. Cal. Jan. 23, 2009) (granting partial summary judgment and holding that UCL does not apply because plaintiffs could not demonstrate they worked in California); *Standfacts*, 405 F. Supp. 2d at 1148 (holding that non-resident plaintiffs could not state claim because they did not allege any wrongful acts in California); *Speyer v. Avis Rent a Car Sys.*, 415 F. Supp. 2d 1090, 1099 (S.D. Cal. 2005) (granting motion to dismiss and holding that, even though plaintiffs were California residents, conduct and injury occurred outside of California), *aff'd*, 242 F. App'x 474 (9th Cir. 2007); *Churchill Village, LLC v. GE*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) (holding that no alleged misconduct or injuries occurred in California and defendant's in-state sales alone could not be "considered sufficient to establish a nexus with California"); Ex. 16 (March 16, 2010 Order Granting HP's Motion to Dismiss in *Young v. Hewlett-Packard Co.*, No. CV09-0315 (C.D. Cal.)). The same result follows here.

Plaintiffs' SAC is based on an alleged design defect in their HP computers. Specifically, Plaintiffs allege that their HP computers include a defective "heat cycling design that interferes with wireless access and causes the wireless feature to fail." SAC ¶ 1. But, as HP explained

above, Plaintiffs' computers were not designed in California.  HP's notebook computer group is

headquartered in Houston, Texas.  *See* Ex. 8 ¶ 3.  The design, pre-launch testing, and assembly of

Plaintiffs' model computers occurred almost exclusively and primarily outside of the United

States in either Taiwan or China, with some testing and support done in Texas.  *Id.* ¶¶ 6-26.  No

part of that process occurred in California–at HP's corporate headquarters in Palo Alto or

otherwise.  *Id.* ¶¶ 7, 10, 13, 15, 18, 19, 20, 23, 25, 26.  Similarly, HP's Palo Alto headquarters

does not, at any given point, have involvement in or ultimate responsibility over the execution of

the development, design, pre-launch testing, and evaluation of HP's notebook computers

throughout their life cycle, including the Atlantis and Apollo series notebooks Plaintiffs bought.

*Id.* ¶¶ 7, 10, 13, 15, 18, 19, 20, 23, 25, 26, 59.  To the contrary, for the United States market, the

development and planning stage for HP's notebook computers (including Plaintiffs' models)

occurs in Texas and Taiwan.  *Id.* ¶ 7.  Accordingly, because neither Plaintiffs' alleged injuries nor

HP's allegedly improper design of its computers occurred in California, the UCL cannot apply to

Plaintiffs' claims.[8]  *See, e.g.*, Ex. 16 (dismissing UCL claim against HP at pleading stage because

plaintiff "bought his printer and replacement cartridges in Pennsylvania" and printers were

designed in "Japan and manufactured in China").[9]

---

[8]     As explained above, the law precludes Plaintiffs' attempt to extend the UCL beyond its
intended geographic reach.  Refusal to extend the UCL to Plaintiffs' claims would also not
contradict their own expectations.  Plaintiffs all testified that they did not have any expectation
regarding what law would apply to their claims and, therefore, they could not have expected the
UCL to apply.  Ex. 9 at 125:3-10; Ex. 10 at 169:2-8; Ex. 13 at 145:22-146:5.  Moreover,
Plaintiffs' counsel's decision to file a new lawsuit (*Perron, et al. v. Hewlett-Packard Co.*, Case
No. C 10-00695 (JW)) asserting California law claims over what they claim is the same alleged
design defect that they allege in this case on behalf of, *inter alia*, a *California* resident is an
apparent recognition that the UCL cannot apply to the claims asserted by the non-California
resident Plaintiffs in this case.  *See* Ex. 17; Ex. 18 at 2.

[9]     Because Plaintiffs' alleged injuries occurred outside of California and HP's allegedly
unlawful conduct likewise did not occur in California, it would be unconstitutional to apply
California law to Plaintiffs' claims.  Under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985),
California law could constitutionally apply to Plaintiffs' claims only if California had "a
significant contact or significant aggregation of contacts [with Plaintiffs' claims], creating state
interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  *See id.* at 818
(citation omitted).  There are no such contacts with Plaintiffs' claims and, therefore, it would be
unconstitutional to apply California law to them.  The presence of HP's headquarters in California
does not change that result.  *See, e.g.*, *Tidenberg*, 2009 WL 605249, at *5 (explaining that only
allegation linking defendants' contacts with California was assertion that defendant's principal
place of business was in California and that the "SAC insufficiently establish[ed] the
constitutionally-mandated 'significant contact' with California"); *Montgomery v. New Piper
Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002).

**B.** **Even If The UCL Could Apply, The Undisputed Facts Demonstrate That Plaintiffs' Claims Under Its "Unfair" Prong Fail As A Matter Of Law.**

HP demonstrated above that the UCL cannot apply to Plaintiffs' claims. The Court can enter summary judgment for HP on that basis alone without the need for further analysis. That is not the only flaw in Plaintiffs' claims, however. As explained below, even if the UCL could apply, Plaintiffs' claims fail on their merits for several reasons.[10]

Following the Proposition 64 amendments to the UCL, plaintiffs must show that they "suffered [an] injury in fact" and "lost money or property as a result of" a defendant's allegedly improper conduct. Cal. Bus. & Prof. Code §§ 17203, 17204; *see generally Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009); *ZL Techs., Inc. v. Gartner, Inc.*, No. CV 09-0239, 2009 WL 3706821, at *10 (N.D. Cal. Nov. 4, 2009). In addition to those standing requirements, plaintiffs asserting claims under the "unfair" prong of the UCL bear the burden of proving that they suffered a "substantial" consumer injury that they could not reasonably have avoided and that is "not outweighed by any countervailing benefits to consumers or to competition." *Daugherty*, 144 Cal. App. 4th at 834. The undisputed facts in the record in this case demonstrate that no Plaintiff can establish both the standing requirements and elements of their claims because: (1) none chose to take advantage of the free repair HP provided under the Program; (2) Plaintiffs cannot show that HP knew of the alleged heat-cycling caused wireless failures that are the basis of their claims before HP shipped their computers; (3) Plaintiff Shifflette does not claim that he experienced a wireless malfunction during his one-year Limited Warranty period; (4) Plaintiff Nygren never requested and sent his computer to HP for a wireless repair during his one-year Limited Warranty period or otherwise; and (5) Plaintiff Fromkin was reimbursed for the purchase of her HP notebook computer and, therefore, has not "lost money" as required under the UCL or suffered any injury (let alone a "substantial" injury).

---

[10] HP demonstrated in its opposition to Plaintiffs' motion for class certification that the law of each putative class member's home state governs his/her claims under California's choice-of-law rules and, therefore, the UCL does not apply to Plaintiffs' claims for this reason as well. There is no need to repeat that argument here. Nevertheless, because Plaintiffs have asserted only UCL claims, HP has demonstrated above why their claims fail under that law.

1

> **1.** **Plaintiffs Have Not Suffered An Injury Caused By HP - Let Alone A Substantial One That They Could Not Have Avoided - Because They Chose Not To Take Advantage Of The Free Repair HP Provided Under The Program.**

Under California law, HP's only obligation to Plaintiffs was to repair or replace defective components in their computers under its one-year Limited Warranty.  HP went above and beyond that requirement by offering a free repair for wireless malfunctions under the Program within twenty-four months after a customer's purchase.   Plaintiffs, however, chose not to avail themselves of the free repair under the Program.  Consequently, they cannot show that their alleged injuries were caused by HP's conduct; they were caused by their own decision to avoid a free repair.  Neither can Plaintiffs show that their alleged injuries could not have been avoided and, therefore, the Court should enter summary judgment for HP.

The Court previously dismissed Plaintiffs' claims based on allegations that HP made actionable misrepresentations or omissions regarding their computers.[11]  Therefore, it is HP's Limited Warranty that governs its obligations to Plaintiffs.  *See, e.g.*, *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009) ("A manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.").  Under settled California law, HP was obligated under its warranty to make any necessary repairs only during its one-year original Limited Warranty period–but not beyond.  *See, e.g., Long*, 2007 U.S. Dist. LEXIS 79262, at *12; *see also Daugherty*, 144 Cal. App. 4th at 834; *Hoey v. Sony Elecs.*, Inc., 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007); Ex. 4 at 2 (HP's warranty providing for repair or replacement of any defective components within one-year).

In this instance, HP did more than the law required, however.  Instead of limiting Plaintiffs to their Limited Warranty rights as it could have, HP created and provided extensive notice of the Program.  As a result, Plaintiffs received *more* than they bargained for with the purchase of their HP notebook computers.  Whereas they bargained only for a computer supported by a one-year limited "repair or replace" warranty, they received computers with that

---

[11]     *See, e.g.,* Ex. 2 at 5, 9 ("Thus, these allegations are insufficient to state a claim under the FAL because they do not allege that any of the above representations are untrue."); 10 ("The Court, however, has already determined that Plaintiffs have not adequately pleaded fraud because they have not alleged that any statements made by Defendant were false.").

Case No. 07-05793 (JW)                    13          HEWLETT-PACKARD COMPANY'S NOTICE OF
                                                      MOTION AND MOTION FOR SUMMARY JUDGMENT

support plus the free repair under the Program.  Plaintiffs who receive the benefit of their bargain cannot assert UCL claims.  *See, e.g.*, *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 854-55 (4th Dist. 2008); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (4th Dist. 2008).  Plaintiffs who receive *more* logically cannot fare any better.

For their own reasons, Plaintiffs all chose not to take advantage of the free repair available under the Program.[12]  Plaintiff Nygren responded to a posting on HP's website announcing the Program within minutes; he clearly knew of the Program by at least November 16, 2007.  Ex 9 at 193:11-194:22.  Still, when HP offered to repair his computer pursuant to the Program, Plaintiff Nygren flatly refused and instead chose this lawsuit as the "fix" he desired.  *Id.* at 163:14-21; 196:4-198:7.[13]  Plaintiff Shifflette likewise chose not to take advantage of the Program–even after learning about it, at the latest, when his counsel filed his First Amended Complaint.  Ex. 10 at 149:10-18; 178:11-179:12.  Similarly, Plaintiff Fromkin's mother indicated that she chose not to have her daughter send her computer to HP for a repair under the Program because she was already engaged in litigation and, in her view, it was best for "the class" if she did not seek to have her daughter's computer repaired under the Program.  Ex. 15 at 284:22-285:9; 290:13-16.

Plaintiffs' collective decision to avoid HP's free repair under the Program is fatal to their "unfair" UCL claims on multiple fronts.[14]  Even assuming Plaintiffs have alleged that they suffered an injury in the form of a notebook computer without functioning wireless internet capability (which HP does not concede), any such injury was caused by their own decision to

---

[12]    Plaintiffs' actual knowledge of the Program is not necessary to show that HP nevertheless provided them with more than the benefit of their bargain.  Still, the Court need not resolve that issue because Plaintiffs knew of the Program.

[13]    *See* Ex. 9 at 36:11-37:19; 50:13-51:1 ("Q: So you understood the fix to be the litigation? A: Correct."); 182:20-183:3.

[14]    As explained above, no Plaintiff took advantage of the Program.  If they had, however, the absence of a connection between their claims and California would have become even clearer.  The development, planning and decision-making regarding the Program occurred exclusively in Texas.  Ex. 5 ¶¶ 10, 12.  The language and content of the Program description that was posted on HP's website was drafted in Texas.  *Id.*  Also, the content of the forum postings and e-mails that were sent, and the language in the HP Updates and HP Instant Support was drafted in Texas.  *Id.* ¶¶ 16, 22, 27, 32.  Moreover, under the Program, the call centers for customers within the United States were mainly located outside the United States.  *Id.* ¶ 36.  All Plaintiffs' calls regarding their notebook computers were routed to call centers outside of California and mainly outside of the United States.  *Id.* ¶¶ 37-39.  Finally, if Plaintiffs had submitted their computers (which are Atlantis models) to HP for repair under the Program, they would have been repaired in Tennessee, not California.  Ex. 19 ¶ 4.

1  forego HP's free repair–not any unlawful conduct from HP.  Likewise, Plaintiffs cannot satisfy

2  the *Daugherty* test for "unfair" UCL claims because their alleged injury was avoidable through a

3  repair under the Program.  In fact, another Court within this District has correctly decided that a

4  product defect injury is "avoidable" through the purchase of an extended warranty.  *See*

5  *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288, 2009 WL 3320486, at *7 (N.D. Cal.

6  Oct. 13, 2009) (dismissing UCL unfair claim because plaintiffs failed to allege that "they could

7  not reasonably have avoided their claimed injuries, for example by purchasing an extended

8  warranty").  The facts of this case are even more compelling for HP because Plaintiffs received

9  the option of a repair beyond their warranty rights *free of charge*.[15]  *See also Klein v. Earth*

10  *Elements, Inc.*, 59 Cal. App. 4th 965, 969-70 (1st Dist. 1997) (rejecting UCL "unfair" claim based

11  on defendant's post-sale remedial efforts provided above prior existing obligations).  Simply put,

12  Plaintiffs received *more* than the benefit of their bargain – they simply chose not to take

13  advantage of it.  Therefore, they cannot sustain their UCL "unfair" claims.

14          **2.**      **Plaintiffs Cannot Show That HP Knew Of The Alleged Heat-Cycling**
15                    **Design Defect That Is The Basis Of Their Claims Before HP Shipped**
                  **Their Computers.**

16        To sustain UCL claims based on alleged product defects, a plaintiff must prove that the

17  defendant had pre-sale knowledge of the alleged defect.  *See Klein*, 59 Cal. App. 4th at 969

18  (holding that "the unintentional distribution of a defective product" is "beyond the scope" of the

19  UCL); *see also Long*, 2007 U.S. Dist. LEXIS 79262, at *24-25; *Brothers v. Hewlett-Packard Co.*,

20  No. C 06-02254, 2006 U.S. Dist. LEXIS 82027, at *22 (N.D. Cal. Oct. 31, 2006).  As explained

21  above, Plaintiffs' claims are based on an alleged heat-cycling defect in their computers that they

22  claim caused their alleged wireless failures.  But, Plaintiffs cannot show that HP knew of any

23  such alleged heat-cycling issue causing wireless failures prior to the last of their purchases in

24  August 2007–let alone when HP shipped their computers.  The undisputed evidence in the record

25  on that subject demonstrates that HP did not become aware that some computers under certain

26

----

27  [15]    As HP previously explained, the Program is not an extension of Plaintiffs' original one-
year Limited Warranties.  Still, like an extended warranty that has been held to make product

28  defect injuries avoidable, it provided additional avenues for repair beyond a regular warranty.

circumstances could experience a wireless malfunction caused by heat-cycling until, at the earliest, early November 2007–after every Plaintiff bought his/her computer.  Ex. 8 ¶¶ 49-58. Therefore, Plaintiffs' claims fail for this reason as well.

Plaintiffs plainly recognize the need to prove HP's pre-sale knowledge of the alleged heat-cycling caused wireless malfunction they claim to have experienced.  In their motion for class certification, they limited the putative class they seek to represent to customers who purchased HP computers after August 1, 2006 because, according to Plaintiff's purported technical expert, that is when HP "first knew there was a problem with [sic] wireless function in the laptops. . . ." *See* Pls.' CC Br. at 3:13-18; 10:21-22.  Plaintiffs' expert admitted at his deposition, however, that the alleged "problem" he referred to was not the alleged heat-cycling defect that is the subject of Plaintiffs' claims, but rather an earlier alleged cause of wireless failures that HP quickly addressed.  Ex. 20 at 159:9-160:1; 150:24-151:17.  Plaintiffs' expert does not know when HP learned that some computers were subject to wireless malfunctions from heat-cycling.  *Id.* at 150:24-151:17.  Accordingly, because the only relevant evidence in the record demonstrates that HP could not have been aware of the alleged heat-cycling defect that is the subject of Plaintiffs' SAC before Plaintiffs bought their computers, Plaintiffs' UCL claims fail as a matter of law for this reason as well.

### 3. Plaintiff Shifflette's UCL "Unfair" Claim Fails Under *Daugherty* Because He Never Experienced A Wireless Failure Within His One-Year Original Warranty Period.

Under *Daugherty* and its progeny, a product purchaser whose product functions as warranted during the applicable warranty period cannot sustain a claim under the "unfair" prong of the UCL.  *Daugherty*, 144 Cal. App. 4th at 839.  That is not surprising inasmuch as it cannot be "unfair" for a product manufacturer to provide what it promises.  Plaintiff Shifflette does not claim to have experienced a wireless malfunction until more than thirteen months after his purchase–outside of his one-year Limited Warranty period.  Ex. 10 at 123:14-21.  Therefore, under *Daugherty*, he received exactly what he bargained for and cannot sustain a UCL claim.  *See also Hall*, 158 Cal. App. 4th at 854-55 (holding plaintiff did not suffer injury where he received benefit of bargain); *Peterson*, 164 Cal. App. 4th at 1591 (same).

1

2

3

**4.      Plaintiff Nygren Has Not Suffered An Injury Caused By HP's Conduct That He Could Not Avoid Because He Chose Never To Send His Computer To HP For A Repair During His One-Year Limited Warranty Period Or Otherwise.**

4

5

6

7

8

9

10

11

12

13

14

As explained above, with the Court having already rejected Plaintiffs' representation/omission based claims, HP's obligations to Plaintiffs are defined by its Limited Warranty.  HP's Limited Warranty provides, in part, that "[d]uring the Limited Warranty Period, HP will repair or replace the defective component parts or the hardware product."  Ex. 4 at 2. Logically, HP cannot provide a repair within the applicable Limited Warranty period unless the relevant customer notifies it of his/her claimed need for such a repair, requests such a repair within that same period and provides HP with his/her computer to be repaired.  Plaintiff Nygren, however, chose not to send his computer to HP for a repair during his original one-year Limited Warranty period or otherwise.[16]  Ex. 9 at 163:14-16, 196:4-198:7.  Where Plaintiff Nygren chose not to ask HP to satisfy its repair obligations under its warranty and take the steps necessary for HP to do so, he cannot now claim that HP acted "unfairly" by not repairing his computer.

15

16

17

18

19

20

21

22

23

24

25

Furthermore, any alleged injury Plaintiff Nygren claims to have suffered could not be characterized as "substantial" under *Daugherty*.   Plaintiff Nygren testified that when he experienced a wireless failure with his computer, he purchased an external wireless device that allowed him to use his computer to his satisfaction.  *Id.* at 123:18-124:1; 129:25-130:3; *cf., e.g.*, *Tietsworth*, 2009 WL 3320486, at *7 (dismissing UCL unfair claim because plaintiffs failed to allege that "they could not reasonably have avoided their claimed injuries, for example by purchasing an extended warranty").  He also used another computer he already had and used his HP computer with a so-called "hard line" internet connection at his home.  Ex. 9 at 129:21-24; 147:2-7; 123:18-123:1; 129:25-130:3; 147:8-10.  Again, under these circumstances, a plaintiff who chooses not to seek a repair for alleged malfunctions he claims to have experienced cannot be said to have suffered a "substantial "injury.

26

27

28

---

[16]      Plaintiff Nygren chose not to send his computer in for a repair even though he testified that he was aware, from HP's website, that some purchasers' wireless issues were resolved after they submitted their notebook computers to HP for repairs.  Ex. 9 at 122:1-3; 133:20-24; 160:21-161:7.

1

2

**5.      Plaintiff Fromkin Has Not "Lost Money" Under The UCL Or Suffered A Substantial Injury Because She Was Reimbursed For The Purchase Of Her HP Computer.**

3      Plaintiff Fromkin neither "lost money" under the UCL nor suffered a "substantial" injury

4  under *Daugherty* because she was reimbursed for her computer purchase.  As a result, Plaintiff

5  received the free use of an HP computer that was eligible for repairs under the Program beyond

6  that for which she could have bargained when she bought her computer.  Again, no "unfair" claim

7  can lie where Plaintiff Fromkin received *more* than the benefit of her bargain.

8      Plaintiff Fromkin bought her HP computer at Circuit City in Florida on August 6, 2007

9  with one of her credit cards.  Ex. 13 at 41:2-8; 53:16-19.  According to Plaintiff Fromkin, she

10  purchased her computer, at least in part, for use in college courses she expected to take.  *Id.* at

11  48:2-6.  She was then reimbursed from a so-called Pennsylvania TAP § 529 account (a type of

12  education savings account) owned by her father and funded entirely from payments made by

13  others, including her parents.  Ex. 15 at 109:19-120:7 (explaining that child support payments

14  from Plaintiff Fromkin's natural mother are put into account); 114:2-15 (explaining that Plaintiff

15  Fromkin's father also partially funded account); Ex. 13 at 53:10-15.

16      "Section 529 of the Internal Revenue Code permits states, state agencies, and eligible

17  educational institutions to sponsor qualified tuition programs, known as 529 plans." Ex. 21

18  (*Pennsylvania 529 Investment Plan:  Plan Disclosure Statement, Privacy Policy, and

19  Participation Agreement* (Jan. 1, 2008)) at p. 4.  Plaintiff Fromkin is a beneficiary to a 529

20  account owned by her father.  Ex. 15 at 111:8-20; 115:22-24.  Plaintiff Fromkin is not permitted

21  to withdraw funds out of the account or receive direct payment from the account; only her father

22  can do that.  *Id.* at 121:13-18; 126:5-15; Ex. 21 at 5 ("Although contributions to an Account can

23  be made by anyone, only the Account Owner can control how those assets are invested and

24  used.").  Plaintiff's father can also remove Plaintiff Fromkin as a beneficiary at any time without

25  her consent.  Ex. 21 at 23.

26      To receive payment from the 529 account for Plaintiff Fromkin's HP computer, her father

27  submitted a request for reimbursement to the account manager, who then sent a check to Plaintiff

28  Fromkin's father made payable to him.  *See* Ex. 15 at 121:19-123:19.  Plaintiff Fromkin's father

then sent that payment to Plaintiff Fromkin so she could pay the credit card bill for the computer she bought. *See id.* at 123:16-24; *see also id.* at 124:1-8.[17]  These undisputed facts from Plaintiff Fromkin and her mother demonstrate that she was reimbursed for her HP computer purchase and ultimately, therefore, never expended any money of her own for her computer.  As a result, she neither "lost money" nor suffered any injury (let alone a "substantial" one).  Quite the opposite–Plaintiff Fromkin received the free use of an HP computer.

Even if Plaintiff Fromkin could allege that she suffered any injury from her free use of an HP computer, her own description of her experience demonstrates she could not show a "substantial" consumer injury.  Plaintiff Fromkin testified that when she was not using her HP notebook computer because of alleged wireless problems she claims to have experienced, she used her mother's computer, which she agreed was sufficient for all of her computer needs.  Ex. 13 at 111:14-21.  A plaintiff who receives the free use of two computers that, either alone or in combination, are sufficient for all of her computing needs cannot be said to have suffered a "substantial" injury.[18]

## C.    Plaintiffs Do Not Seek Restitution Available Under The UCL.

Plaintiffs' claims also fail because they do not seek the only monetary relief available under the UCL.  Only restitution–but not compensatory or consequential damages–is available under the UCL.  Cal. Bus. & Prof. Code § 17203; *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003).  Plaintiffs do not seek restitution, however, because they did not pay money to HP; they paid third parties for their computers.  Therefore, Plaintiffs cannot show

---

[17]     According to Plaintiff Fromkin's mother, the 529 account for which Plaintiff Fromkin is a beneficiary currently consists of approximately $14,000, which she does not expect Plaintiff Fromkin to use for educational expenses and, therefore, is "just sort of sitting there right now." *See* Ex. 15 at 115:1-17.

[18]     Permitting a plaintiff who has been reimbursed for her purchase of the product at issue in a UCL lawsuit to nevertheless sue for monetary relief is also contrary to Proposition 64's intention of prohibiting lawsuits by "unaffected" plaintiffs and would create a perverse incentive for certain plaintiffs' lawyers to urge a prospective plaintiff to purchase a particular product subject to reimbursement for the sole purpose of creating litigation. *Cf., e.g., Hall*, 158 Cal. App. 4th at 857 (explaining that Proposition 64 was intended to preclude "an 'unaffected plaintiff,' which was often the sham creation of attorneys" from suing and cautioning against situation where "[a]ttorney who became aware of false advertising but who had no client who was harmed by it could easily 'create' a client with standing to sue by directing a willing party who was not deceived by the advertising to make a purchase") (citation omitted).

that HP now has in its possession any funds in which they had an ownership interest.[19]

In *Korea Supply*, the California Supreme Court defined an order for restitution as one "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property. . . ."  29 Cal 4th at 1144-45; *see also In re First Alliance Mortgage Co.*, 471 F.3d 977, 996 (9th Cir. 2006) (affirming summary judgment for defendant on UCL claim and reasoning that "[i]n the context of the UCL, restitution is meant to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest, and is so limited").  The Court further explained that "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took *directly* from plaintiff."  *Korea Supply*, 29 Cal. 4th at 1149 (emphasis added).  In this case, because Plaintiffs did not pay money to HP for their computers, HP did not take funds "directly" from Plaintiffs that it could possibly "return" to them.  As a result, Plaintiffs do not seek restitution from HP.  *See, e.g., Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567, 2009 WL 5184422, at *3 (C.D. Cal. Dec. 21, 2009) (reasoning that plaintiff did not allege a loss that would entitle it to restitution because plaintiff did not allege that defendant is "in possession of money or property which plaintiff possessed"); *Fulford v. Logitech, Inc.*, No. C-08-2041, 2008 U.S. Dist. LEXIS 95175, at *3 (N.D. Cal. Nov. 14, 2008) (dismissing UCL cause of action because plaintiff "has failed to allege that the money he paid for his H1000 Remote is now, or ever was, in the possession of Logitech") (citations omitted)); *see also, e.g., Germain v. J.C. Penney Co.*, No. CV 09-2847, 2009 WL 1971336, at *7 (C.D. Cal. July 6, 2009) ("[P]laintiffs are not entitled to restitution of monies paid in processing and mailing forms because those monies were not paid to defendants.").  The Court should enter summary judgment for HP for this reason

---

[19]  Plaintiffs Fromkin and Shifflette do not seek monetary relief.  Plaintiff Fromkin testified that she seeks only a "working computer" (notwithstanding her decision not to submit her computer for a repair under the Program) and Plaintiff Shifflette testified that his lawsuit is "not about the money."  *See* Ex. 13 at 142:20-143:4; Ex. 10 at 182:20-184:6.  Therefore, the Court should enter summary judgment for HP on any claim for monetary relief by those Plaintiffs.  Still, even if Plaintiffs Fromkin and Shifflette did seek monetary relief from HP, they do not seek restitution for all of the reasons set forth above.

1   as well.

2   **VI.      <u>CONCLUSION</u>**

3           The Court should enter summary judgment for HP and against Plaintiffs on all of

4   Plaintiffs' remaining claims.

5   Dated:  April 19, 2010                                MORGAN, LEWIS & BOCKIUS LLP

6

7                                                   By: _/s/ Kristofor T. Henning____
                                                        Kristofor T. Henning
8                                                       Attorneys for Defendant
                                                        Hewlett-Packard Company

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>PROOF OF SERVICE</u>**

2

3

4

I, Kristofor T. Henning, hereby certify that on June 3, 2010, I caused the foregoing document titled **HEWLETT-PACKARD COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**, previously filed under seal on April 19, 2010, to be electronically filed and served upon the persons named below via the ECF system.  This document is available for review and downloading from the ECF system.

5

6

MICHAEL F. RAM

7

mram@ramolson.com

RAM & OLSON LLP

8

555 Montgomery Street, Suite 820

San Francisco, CA 94111

9

Telephone: 415-433-4949

Facsimile:  415-433-7311

10

11

MARC H. EDELSON

medelson@edelson-law.com

12

EDELSON & ASSOCIATES, LLC

45 W. Court Street

13

Doylestown, PA 18901

Telephone:  215-230-8043

14

Facsimile:  215-230-8735

15

JEFFREY L. KODROFF

16

jkodroff@srkw-law.com

JOHN A. MACORETTA

17

jmacoretta@srkw-law.com

SPECTOR, ROSEMAN KODROFF & WILLIS, P.C.

18

1818 Market Street, Suite 2500

Philadelphia, PA 19103

19

Telephone: 215-496-0300

Facsimile:  215-496-6611

20

21

Attorneys for Plaintiffs

22

23

Dated:  June 3, 2010              By:    /s/ Kristofor T. Henning
                                          Kristofor T. Henning

24

25

26

27

28

PROOF OF SERVICE  - REFILED SUMMARY
JUDGMENT MOTION