IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Nathan Nygren, et al., | NO. C 07-05793 JW |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DEFENDANT'S MOTIONS TO STRIKE** |
| v. | |
| Hewlett-Packard Company, | |
| Defendant. | |

## I. INTRODUCTION

Nathan Nygren, Stephen Shifflette, and Amy Fromkin (collectively, "Plaintiffs") bring this putative class action against Hewlett Packard Company ("Defendant") alleging, *inter alia*, breach of warranty, false advertising, and unfair business practices. Plaintiffs allege that notebook computers manufactured by Defendant contain defective wireless cards.

Presently before the Court are (1) Defendant's Motion for Summary Judgment,[1] (2) Plaintiffs' Motion for Class Certification,[2] (3) Defendant's Motion to Strike the Report of Eric A. Langberg,[3] and (4) Defendant's Motion to Strike the Report Dr. Russell Lamb.[4] The Court

---

[1] (hereafter, "MSJ," Docket Item No. 164, filed under seal.) Defendant has also filed a public, unredacted version of its MSJ in light of the Court's May 28, 2010 Order denying the sealability of numerous exhibits. (See Docket Item Nos. 228, 249.)

[2] (hereafter, "Motion for Class Cert.," Docket Item Nos. 107, 127, filed under seal.)

[3] (hereafter, "Motion to Strike Langberg Report," Docket Item Nos. 154, filed under seal.) Defendant has also filed a public, unredacted version of this Motion. (See Docket Item No. 247.)

[4] (hereafter, "Motion to Strike Lamb Report," Docket Item Nos. 151, filed under seal.) Defendant has also filed a public, unredacted version of this Motion. (See Docket Item No. 245.)

conducted a hearing on June 14, 2010. Based on the papers submitted to date and oral argument, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES as moot Plaintiffs' Motion for Class Certification and Defendant's Motions to Strike.

## II. BACKGROUND[5]

On November 14, 2007, Plaintiff Nygren filed his Class Action Complaint. (Docket Item No. 1.) On February 28, 2008, Plaintiffs Nygren and Shifflette filed a First Amended Class Action Complaint. (Docket Item No. 22.) On April 10, 2008, the Court bifurcated class and merits discovery. (Docket Item No. 39.) On October 24, 2008, the Court granted Defendant's Motion to Dismiss the First Amended Complaint. (Docket Item No. 61.) On November 24, 2008, Plaintiffs filed a Second Amended Class Action Complaint.[6] On May 28, 2009, the Court granted in part and denied in part Defendant's Motion to Dismiss the Second Amended Complaint. (Docket Item No. 81.) The Court dismissed all claims with prejudice, except for Plaintiffs' claim under the "unfair" prong of the UCL. (See id. at 11-12.)

Presently before the Court are various Motions by the parties. Since Defendant's Motion for Summary Judgment may be dispositive, the Court considers it first.

## III. STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims

---

[5] The factual allegations are laid out in the Court's May 28, 2009 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss. (hereafter, "May 28, 2009 Order," Docket Item No. 81.)

[6] (hereafter, "SAC," Docket Item No. 63.) The Second Amended Complaint alleges six causes of action: (1) Violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; (2) Violation of the California Unfair Competition Law ("UCL") based on unfair conduct, Cal. Bus. & Prof. Code § 17200; (3) Violation of the UCL based on unlawful conduct, Cal. Bus. & Prof. Code § 17200; (4) Violation of the UCL based on fraudulent conduct, Cal. Bus. & Prof. Code § 17200; (5) Breach of Express Warranty; and (6) Violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750.

or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion. . . ." Id. at 323. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party "may not reply merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the nonmoving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

Defendant moves for summary judgment of Plaintiffs' UCL "unfair" prong claim, the only claim remaining in this case, on the grounds that (1) Plaintiffs lack standing to pursue their UCL claim, (2) Plaintiffs' UCL claim fails on the merits, and (3) Plaintiffs cannot seek restitution—the only monetary relief available under the UCL—from Defendant. (MSJ at 2-3.) The Court addresses the standing issue first since it may be dispositive.

Defendant contends that Plaintiffs lack standing to pursue their UCL claim because Plaintiffs' injury and the alleged wrongful conduct occurred outside of California. (MSJ at 2.)

3

1 Plaintiffs do not dispute that any injury they suffered from the alleged defect occurred outside of
2 California, but contend that their UCL claim is viable because several of Defendant's emails refer to
3 apparent testing of the defective product in Defendant's laboratory in California.[7]

4 **A.     Legal Standard for Standing Under the UCL**

5       The "unfair" prong of the UCL creates a cause of action for practices that, although not
6 specifically prohibited by statute, are anti-competitive or cause injury to consumers. Cel-Tech
7 Commc'ns v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (Cal. 1999).  The California Court
8 of Appeal utilizes a three-part test to determine whether a particular practice is unfair. Camacho v.
9 Automobile Club of S. Cal., 142 Cal. App. 4th 1394, 1403 (Cal. Ct. App. 2006).  The test states that
10 to find that a particular practice is unfair: (1) the consumer injury must be substantial; (2) the injury
11 must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must
12 be an injury that consumers themselves could not reasonably have avoided. Id.

13       The UCL was not "designed or intended to regulate claims of nonresidents arising from
14 conduct occurring entirely outside of California." Nw. Mortgage, Inc. v. Super. Ct., 72 Cal. App.
15 4th 214, 222-23 (Cal. Ct. App. 1999).  However, "state statutory remedies may be invoked by
16 out-of-state parties when they are harmed by wrongful conduct occurring in California." Id. at 224-
17 25.  Where the plaintiffs were harmed outside of California and seek application of the UCL, they
18 must show—in order for application of the UCL to satisfy due process—that the defendant's
19 wrongful conduct has "significant contact[s]" with California. Id. at 227; Tidenberg v. Bidz.com,
20 Inc., No. CV 08-5553 PSG (FMOx), 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009); see also
21 Churchill Village, L.L.C. v. General Elec. Co., 169 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000) (citing
22 Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810-11 (1985)).

23       In determining whether there are "significant" contacts between California and the alleged
24 wrongful conduct, courts have looked to where the product at issue was manufactured, engineered,
25 assembled, packaged, marketed, and sold. See Kielholtz v. Lennox Hearth Prods., Inc., No. C

---

27 [7] (Plaintiffs' Opposition to Defendant's Motion for Summary Judgment at 11-14, hereafter, "Opp'n to MSJ," Docket Item No. 186, filed under seal.)

28       4

United States District Court
For the Northern District of California

08-00836 CW, 2010 U.S. Dist. LEXIS 14553, at *22-24 (N.D. Cal. Feb. 16, 2010); Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 598 (C.D. Cal. 2008). Courts have also looked to the location of the defendant's warranty and customer service departments and the location from which any alleged misrepresentations emanated. See Parkinson, 258 F.R.D. at 598; Church v. Consolidated Freightways, Inc., No. C-90-2290 DLJ, 1992 U.S. Dist. LEXIS 18234, at *16 (N.D. Cal. Sept. 14, 1992); Clothesrigger, Inc. v. GTE Corp., 191 Cal. App. 3d 605, 613 (Cal. Ct. App. 1987). The fact that a defendant's principal place of business or place of incorporation is in California, without more, is insufficient. Tidenberg, 2009 WL 605249, at *5; Nw. Mortgage, 72 Cal. App. 4th at 227. Courts also consider whether application of California law would comport with the plaintiffs' expectation as to which state's law would govern their transaction with the defendant. Nw. Mortgage, 72 Cal. App. 4th at 227 n.16 (citing Shutts).

One court in this district found insufficient contacts with California to apply the UCL where the only alleged wrongful conduct to have occurred in California was that it was the place of 10% of the defendant's sales of the defective product. See Churchill Village, 169 F. Supp. 2d at 1127. In contrast, another court in this district found sufficient contacts between the alleged wrongful conduct and California where 76% of the defective products were partly manufactured, assembled or packaged by the defendant in California. Kielholtz, 2010 U.S. Dist. LEXIS 14553, at *22-24.

**B.    Evidence as to Injury and Wrongful Conduct**

As a preliminary matter, since the parties have filed most of the evidence for these Motions under seal, this Order references only material that the Court finds to be not of a confidential nature.

Defendant relies on the following evidence in support of its position that the injury and alleged wrongful conduct occurred outside of California:

(1)    At all relevant times all named Plaintiffs resided outside of California, and purchased and used their computers outside of California.[8]

---

[8] (Declaration of Kristofor T. Henning in Support of Defendant's Motion for Summary Judgment, hereafter, "Henning Decl.," Docket Item No. 168, filed under seal, Ex. 9 at 61:18-24, 123:18-124:2, 123:14-17, Ex. 10 at 7:11-12, 62:14-17, 84:13-20, 136:21-137:7, 140:13-21, 166:21-167:13, 167:14-18, Ex. 13 at 10:9-12, 41:2-8, 90:4-8, 144:8-11.)

5

(2) Defendant's notebook computer group is headquartered in Houston, Texas, with a presence in Taiwan.[9]

(3) All named Plaintiffs purchased Atlantis model laptops.[10] Before the Atlantis and Apollo laptops were launched to the public, they went through multiple pre-design planning, design and testing phases. (Id. ¶ 6.) These phases all occurred in Texas, Taiwan, and China—no part occurred in California. (Id. ¶¶ 7, 10, 13, 15, 18-27.) No part of the assembly or production of Atlantis or Apollo notebooks occurred in California. (Id. ¶ 19.) Testing of the wireless card and quality assurance of completed notebooks were performed in Texas, Taiwan, and China. (Id. ¶¶ 20, 26.)

    (a) Post-launch evaluations were centered in Texas with the majority of post-launch testing occurring in either Texas or China. (Hodge Decl. ¶ 59.)

    (b) The examination of computers returned with a wireless failure in late 2007 and early 2008 were examined in China by Defendant and a third party. (Hodge Decl. ¶¶ 48, 53-55.)

    (c) The testing of the effectiveness of a BIOS update released by Defendant as a fix for the wireless failures occurred in Texas and Taiwan. (Hodge Decl. ¶ 57.)

(4) Defendant's notebook customer support solutions group is located in Houston, Texas.[11]

(5) The allegedly inadequate solutions to the wireless card defect at the heart of Plaintiffs' claim were planned and implemented in Texas, Oregon, and China:

    (a) In October and November of 2007, personnel in Texas, Oregon, and other non-California locations drafted and posted on Defendant's website the notice of a BIOS update released by Defendant as a fix for the alleged wireless defect in the model of laptop computer owned by Plaintiffs. (Nussbaumer Decl. ¶¶ 5-6.) The design of the BIOS update and decisions regarding its release occurred in Texas. (Hodge Decl. ¶¶ 46, 51.) The work to develop and code the BIOS update occurred in Taiwan. (Hodge Decl. ¶¶ 46, 51.)

    (b) Starting in October of 2007, personnel in the customer support solutions group in Texas developed and executed the Limited Warranty Enhancement

---

[9] (Declaration of Richard Hunt Hodge in Support of Defendant Hewlett-Packard Company's Opposition to Plaintiffs' Motion for Class Certification ¶ 3, "Hodge Decl.," Docket Item No. 147, filed under seal.)

[10] (See Declaration of Stephen Shifflette ¶ 2, hereafter, "Shifflette Decl.," Docket Item No. 112; Declaration of Amy Fromkin ¶¶ 5-6, hereafter, "Fromkin Decl.," Docket Item No. 113; Declaration of Nathan Nygren ¶ 2, hereafter, "Nygren Decl.," Docket Item No. 111; Hodge Decl. ¶ 4.) The laptop computer models allegedly affected by the defect at issue in this case are code-named as the "Apollo" and "Atlantis" models within Defendant's business. (Hodge Decl. ¶ 4.)

[11] (Declaration of Norma Nussbaumer in Support of Defendant Hewlett-Packard Company's Opposition to Plaintiffs' Motion for Class Certification ¶¶ 1-2, hereafter, "Nussbaumer Decl.," Docket Item No. 146, filed under seal.)

        Program (the "Program") that provided free repairs to customers experiencing wireless Internet problems with the laptop computer models at issue in this case. (Nussbaumer Decl. ¶¶ 3, 7-10.) All decision-making regarding the Program occurred exclusively in Texas. (Id. ¶ 10.)

(c) Defendant notified its customers of the Program through several channels. The language of the Program that was posted on Defendant's website to notify the public of the Program in November of 2007 was drafted exclusively in Texas. (Nussbaumer Decl. ¶ 10.) Defendant also notified its customers by posting a separate notice on its website in a discussion forum where customers discussed the model of laptop owned by Plaintiffs, and by sending email notifications to nearly one million of its notebook computer customers. The content of the notice in the discussion forum and the emails was drafted exclusively in Texas. (Id. ¶¶ 16, 22, 27.) Defendant also used tools called "HP Update" and "HP Instant Support" to provide notice, and content of the language conveyed by those tools was drafted exclusively in Texas. (Id. ¶ 32.)

(d) The replacement motherboards used in the Program were manufactured in China. (Hodge Decl. ¶ 60.)

(e) All decision-making, development, and planning as to the expansion of the Program in March of 2008 to include additional laptop models occurred exclusively in Texas. (Nussbaumer Decl. ¶ 12.) The language of the Program extension that was posted on Defendant's website to notify the public of the expansion of the Program was drafted exclusively in Texas. (Nussbaumer Decl. ¶ 10.)

(f) All customer service call centers for the Program were located outside of California. (Nussbaumer ¶ 36.)

(6) Based on their deposition testimony, Plaintiffs did not have an expectation that California law would govern any dispute between themselves and Defendant relating to their laptop computers.[12]

Plaintiffs do not dispute Defendant's evidence. However, in an attempt to overcome Defendant's evidence, Plaintiffs rely on a few emails and presentations to show that their alleged injury was substantially connected to California:

(1) Three emails and two presentations from July, October, and November of 2007 indicate that some testing of computer chips from the Atlantis laptops was performed at Defendant's laboratory in California.[13] A July 24, 2007, email from David Pipho

---

[12] (Henning Decl., Ex. 9 at 125:3-10, 10 at 169:2-8, Ex. 13 at 145:22-146:5.)

[13] (Declaration of Karl Olson in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, hereafter, "Olson Decl.," Ex. 50, Docket Item No. 187, filed under seal; Declaration of Michael F. Ram in Support of Plaintiffs' Motion for Class Certification, hereafter, "Ram Decl.," Exs. 31-34, Docket Item No. 108, filed under seal.)

7

    that Defendant reports "Some significant findings from the lab in California" as to "bump cracks" the motherboard. (Ram Decl., Ex. 33.)

(2) One of the emails, dated November 13, 2007, sent by the Director of Engineering and Quality for the Notebook Division in Houston, Texas, discussed the need to work with third party Quanta, who had provided the motherboards in the Atlantis computers, so that Defendant and Quanta could "work up a tactical plan for engagement . . . Most likely in California where we have both NVIDIA and our labs in Palo Alto." (Ram Decl., Ex. 34.)

In examining the evidence presented, the Court finds that this case is highly analogous to cases that looked to the location of the manufacturing, design, marketing, and customer service of the defective product. See Kielholtz, 2010 U.S. Dist. LEXIS 14553, at *22-24; Parkinson, 258 F.R.D. at 598. The above evidence shows that Plaintiffs' injury and essentially all of the allegedly wrongful conduct occurred outside of California. The planning, design, testing, and manufacturing of the product all occurred outside of California. One of the bases of Plaintiffs' claims is that Defendant's quality control prior to releasing the laptop products was inadequate. The evidence shows that such actions occurred outside of California. Additionally, the allegedly inadequate "fixes" for the product defect offered by Defendant, which are at the heart of Plaintiffs' claim for unfair business practices, were planned and executed from Texas. Statements disseminated to the public regarding the fixes were created in Texas. The majority of post-launch evaluation of the products occurred in Texas. The minimal evidence that some post-release testing occurred in California in mid to late 2007 cannot be characterized as a "significant" contact between the alleged wrongdoing and California in light of case law finding that even 10% of sales of the defective product in California is insufficient to support applying the UCL. See Churchill Village, 169 F. Supp. 2d at 1127. Further, the email regarding a "tactical plan for engagement . . . in California" appears to refer to the need to engage NVIDIA, not Defendant's customers, as evidenced by the eventual settlement agreement between Defendant and NVIDIA, executed several months after the email. (See Ram Decl., Ex. 1.)

Other evidence offered by Plaintiffs is simply irrelevant to the Court's determination of the location of the alleged wrongful conduct. For example, Plaintiffs rely on the fact that Defendant entered into a settlement agreement with one of its suppliers arising out of the defect at issue in this

8

case, which contained a choice of law clause stating that California law governs the agreement. (See Opp'n to MSJ at 14; Ram Decl., Ex. 1.) However, the choice of law clause pertains solely to *the agreement*, to which Plaintiffs are not parties. Plaintiffs also rely on the fact that 24% of computers sent to Defendant for repair went to California, but have provided no evidence that *their* computers were repaired in California or would have been repaired in California under the Program offered by Defendant. (See Opp'n to MSJ at 14.) In fact, Plaintiffs' laptops would have been repaired in Tennessee.[14] Finally, the Court rejects Plaintiffs' contention the requisite "substantial" contact is established because Defendant's headquarters in California was "ultimately responsible" for any wrongful conduct. This position is flatly contrary to case law establishing that a defendant's principal place of business alone is insufficient to establish "substantial" contacts. See Tidenberg, 2009 WL 605249, at *5. Thus, the Court finds that under the undisputed evidence, no rational trier of fact could find that the injury or wrongful conduct was substantially connected to California, and the UCL therefore cannot apply to Plaintiffs' claims.[15]

Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on this ground.[16]

---

[14] (Reply in Support of Defendant's Motion for Summary Judgment at 4, hereafter, "Reply MSJ," Docket Item No. 201; Declaration of Troy Williams in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification ¶ 4, hereafter, "Williams Decl.," Docket Item No. 150, filed under seal.)

[15] Although Plaintiffs make a passing reference to the fact that discovery has been bifurcated and that "more California contacts will inevitably emerge" as merits discovery proceeds, Plaintiffs also contend that they presently have sufficient evidence to defeat summary judgment. (See Opp'n to MSJ at 14.) Moreover, Plaintiffs have not moved for additional discovery to oppose Defendant's Motion under Fed. R. Civ. P. 56(f). In light of the overwhelming undisputed evidence that Defendant's relevant conduct occurred outside of California, the Court rejects Plaintiffs' contention that summary judgment is premature.

[16] In light of the Court's granting summary judgment on this ground, the Court does not reach Defendant's remaining grounds. For the same reason, the Court DENIES as moot Plaintiffs' Motion for Class Certification, Defendant's Motions to Strike, and Plaintiffs' Motion to Unseal certain exhibits to its Motion for Class Certification. (See Docket Item No. 131.)

The Court GRANTS Plaintiffs' Motion for Leave to File a Statement of Recent Decision. (Docket Item No. 258.) However, the Court finds that the case cited in Plaintiffs' Statement does not support application of the UCL in this case. See Chavez v. Blue Sky Natural Beverage Co., No. C 06-6609 VRW, 2010 U.S. Dist. LEXIS 60554 (N.D. Cal. June 18, 2010). In Chavez, the court

9

### V.  CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment. The Court DENIES as moot Plaintiffs' Motion for Class Certification and Defendant's Motions to Strike. Judgment will be entered in favor of Defendant against Plaintiffs pursuant to the terms of this Order.

Dated:  June 24, 2010

JAMES WARE
United States District Judge

---

found significant contacts with California where the defendants were "headquartered in California *and their misconduct allegedly originated in California*." Id. at *40 (emphasis added). The critical difference between Chavez and this case is that the misconduct at issue in this case did *not* originate in California.

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Daniel Emmett McGuire dmcguire@morganlewis.com
David Felderman dfelderman@srkw-law.com
Franco A Corrado fcorrado@morganlewis.com
Howard Holderness hholderness@morganlewis.com
Jeffrey L. Kodroff jkodroff@srkw-law.com
John A. Macoretta jmacoretta@srk-law.com
Justin Myer Lichterman jlichterman@orrick.com
Karl Olson kolson@ramolson.com
Kristofor Tod Henning khenning@morganlewis.com
Marc H. Edelson medelson@edelson-law.com
Meredith Ann Galto mgalto@morganlewis.com
Michael Francis Ram mram@ramolson.com
Monique Olivier molivier@sturdevantlaw.com
Robert A. Particelli rparticelli@morganlewis.com
Thomas R. Green tgreen@morganlewis.com

**Dated: June 24, 2010**            **Richard W. Wieking, Clerk**

**By:    /s/ JW Chambers**
    **Elizabeth Garcia**
    **Courtroom Deputy**