# EXHIBIT A

MICHAEL F. RAM (SBN 104805)
mram@ramolson.com
KARL OLSON (SBN 104760)
kolson@ramolson.com
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, California  94111
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

EDELSON & ASSOCIATES, LLC
Marc H. Edelson (*Pro Hac Vice*)
medelson@edelson-law.com
45 W. Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

SPECTOR, ROSEMAN KODROFF & WILLIS, P.C.
Jeffrey L. Kodroff (*Pro Hac Vice*)
jkodroff@srkw-law.com
John A. Macoretta (*Pro Hac Vice*)
JMacoretta@srkw-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (SAN JOSE DIVISION)

| | |
|---|---|
| NATHAN NYGREN, STEPHEN SHIFFLETTE and AMY FROMKIN, on behalf of themselves and all others similarly situated, | CASE NO.  07-05793 JW |
| Plaintiffs, | **CLASS ACTION** |
| v. | **[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF** |
| HEWLETT-PACKARD COMPANY, a Delaware corporation, | |
| Defendant. | DEMAND FOR JURY TRIAL |

1

Plaintiffs Nathan Nygren, Stephen Shifflette and Amy Fromkin ("Plaintiffs"), individually and on behalf of the Class and Subclasses defined below, bring this action for damages, restitution and injunctive relief against defendant, Hewlett-Packard Company ("HP" or "Defendant"), demanding a trial by jury, and complain and allege as follows:

## I.  INTRODUCTION

1.      Defendant Hewlett-Packard Company, one of the world's leading manufacturers of computers, knowingly sold its Pavilion notebook computers, Series 6000 and 9000 and Presario Series 6000, also known as the DV 6000, V6000 and DV 9000 notebooks (these products collectively referred to as "HP Notebook Computers") with a heat recycling design defect that causes frequent wireless failures.

2.      Almost as soon as the HP Notebook Computers even reached the market, HP knew that the HP Notebook Computers (a) failed at unacceptably high rates; (b) contained inherent defects that are substantially certain to manifest by failing before the end of the HP Notebook Computers' useful life; and (c) were not of merchantable quality.

3.      Plaintiffs are informed and believe that the defect is so pervasive, that that between twenty-five (25) to eighty percent (80%) of all HP Notebook Computers sold[1] are likely to experience this defect with the first year of use, and well before the end of the HP Notebook Computers' expected useful life.

4.      Defendant HP made a material misrepresentation in its Limited Warranty (that its Notebook Computers were free from defects) and concealed material information (the wireless defect) in the marketing, advertising, promotion, distribution and sale of HP Notebook Computers.

5.      But for Defendant HP's material misrepresentations and/or concealment of material information, Plaintiffs would not have purchased their HP Notebook computers and experienced the failures more fully described herein.

---

[1]  The failure rate depends upon the HP Notebook Computers' version and when it was manufactured.

1

6.      Additionally, after Plaintiffs purchased their HP Notebook Computers, HP has

2

failed to offer warranty service that effectively remedies the wireless LAN defect they

3

experienced.

4

7.      All computers incorporate certain components that are essential for the computer

5

to perform its data, video, audio, and communications processing functions.  These components

6

include the motherboard, microprocessor (CPU), memory, video processor (GPU), memory, and

7

the network interface (LAN).  Many of these components are manufactured by third party

8

original equipment manufacturers (OEMs) and sold to companies, such as HP, for incorporation

9

into name-branded computers.

10

8.      The motherboard is the primary printed circuit board in a personal computer.  All

11

of the basic circuitry and components required for a personal computer to function are either

12

contained on or attached to the motherboard.  The CPU is typically mounted directly onto the

13

motherboard and and is the primary element carrying out the computer's functions.  The CPU

14

communicates among the computer's remaining components through the motherboard's core

15

logic chipset.  The chipset is usually composed of two chips—the northbridge and the

16

southbridge. The northbridge chip is physically and electrically located next to the CPU and

17

serves as a four-way intersection enabling communications among the CPU, memory, graphics,

18

and south bridge.

19

20

21

22

23

24

25

26

27

28



9.      The HP Notebook Computers at issue here incorporate a nVidia northbridge chip, known as a C 51.  As is indicated by the below graphic, the nVidia C 51 provides the power and data control functions for the wireless LAN installed into the HP Notebook Computers through the PCI Express controller.

10.     Plaintiffs are informed and believe that it is the nVidia C 51 that is defective and prone to frequent, premature failures, and causes the wireless LAN failures that Plaintiffs, and other Class Members, experience.

11.     The result of the nVidia C 51's defect is that the HP Notebook Computers at issue here are frequently unable to access the wireless network access features, rendering these computers unable to connect to the Internet through the internal wireless device.

12.     The defect results in Plaintiffs' inability to use their HP Notebook Computers for its intended purposes.

13.     This lawsuit is brought on behalf of consumers who relied on HP's representations that its purchased HP Notebook Computers would have wireless access, and seeks compensation for HP's deceptive practices.

## II. JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, and particularly, 28 U.S.C. § 1332(d)(2), as the matter in controversy exceeds $5,000,000.00 and this is a class action in which some members of the class of plaintiffs are citizens of a state that is different from the principal place of business of Defendant.

15.     Venue is proper in this District, and in particular the San Jose Division, under 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391(b) and (c), because HP maintains its headquarters, transacts business, maintains offices, or is otherwise found within this District; and the Defendant's unlawful acts giving rise to Plaintiffs' claims occurred, and a substantial portion of the affected trade and commerce described below has been carried out in this District.  See also Exhibit A to this Complaint.

## III.   THE PARTIES

### A.     Plaintiff Nathan Nygren

16.     Plaintiff Nathan Nygren, an adult individual, is a resident of Appleton, Wisconsin. He purchased his HP notebook computer, an HP Pavilion DV6110US Notebook, for personal, family or household use on January 14, 2007.  Prior to purchasing the DV6110US, he reviewed its specifications on the internet and on the in-store materials.  He selected the HP Pavilion DV6110US Notebook specifically so that he would be able to access the internet through the internal wireless LAN and relied on HP's representation that it had that capability.  He reasonably expected that the wireless features would last five years without material failure.

17.     During August 2007, he began having problems connecting his HP Notebook to the internet.  He noticed that the LED indicator would turn orange (indicating that the wireless LAN was not getting power) and that the wireless card did not appear in the computer's device manager.  During the period August 2007 through October 2007, he was able to connect to internet intermittently using the wireless technology.  The wireless connection failed approximately ninety percent (90%) of the time.  He visited HP's Forum and determined that his HP Notebook suffered from a common failure.  He downloaded the BIOS updates that HP suggested.  However, the BIOS update did not restore the wireless LAN's function.  After

1   contacting HP's Customer Service, he received a new wireless card as part of HP's warranty,

2   which he installed.

3        18.   Despite numerous follow-up telephone and on-line contacts with HP's Customer

4   Service, HP had no resolution for the wireless LAN's failure.  As a result he was required to

5   purchase an external wireless device costing approximately $40.00.  He replaced the HP

6   Notebook in December 2007 since he was unable to rely on its performance.  However, the new

7   wireless card did not resolve the problem.

8        19.   HP has refused Plaintiff's request to refund his purchase price or replace his

9   notebook computer with one without the heat cycling design defect that causes the wireless LAN

10  failures, and other related aspects of the computers.  Had he been made aware of the HP

11  Notebook's WLAN defects, he would not have purchased it.

12      **B.**    **Plaintiff Stephen Shifflette**

13       20.   Plaintiff Stephen Shifflette, an adult individual, is a resident of Goochland County,

14  Virginia.  He purchased an HP6140US, serial number CCNF640102T, for personal, family, or

15  household use in October 2006 at a CompUSA store.  The wireless capability was the most

16  important factor in making his purchase decision because he wanted to be able access wireless

17  networks when he was traveling.  Prior to purchasing his HP6140US, he reviewed its

18  specifications on the in-store materials at Costco and Comp-USA.  He selected the HP6140US

19  based on the fact that it offered an internal wireless LAN at a price he could afford.  When he

20  purchased his HP Notebook, he reasonably expected that the wireless features would last five

21  years without material failure.

22       21.   In October 2007, prior to his warranty's expiration, he noticed that his wireless

23  connection was not working properly.  Plaintiff Shifflette visited HP's website and contacted HP

24  support personnel, spending hours unsuccessfully attempting to remedy the problem.  He tried

25  several times to reinstall the internal wireless device.  He first tried to repair his wireless function

26  by reloading the drivers as HP instructed.  He then became aware that the problem he was

27  experiencing was hardware, rather than software, related.  He was aware from the HP Forum that

28  many consumers had both the internal wireless device and the motherboards replaced only to

1    have them fail again.  On or about December 17, 2007, Plaintiff Shifflette bought an external

2    wireless device to enable his computer to connect to wireless networks.

3         22.    HP has not refunded his purchase price or replaced his Notebook Computer with

4    one without the design defect that affects the wireless access and other related aspects of the

5    computer.  Had Plaintiff Shifflette been made aware, prior to purchase, that the defective C51

6    caused WLAN failures, or that he could not expect the HP Notebook to last more than 2 years, he

7    would not have purchased the HP Notebook.

8         **C.    Plaintiff Amy Fromkin**

9         23.    Plaintiff Amy Fromkin, an adult individual, is a resident of Pembroke Pines,

10   Florida.  She purchased an HP DV6449US Notebook Computer, serial number CNF72759W1,

11   for personal, family, or household use, on August 6, 2007 at Circuit City in Pembroke Pines,

12   Florida.  She selected her HP laptop because she liked its design and the integrated wireless

13   feature.  She purchased the DV6449US in order wirelessly access the internet from her home so

14   that she could participate in her on-line course, check email and surf the internet.  She reasonably

15   expected that the wireless feature would last five years without material failure.

16        24.    Within a year of purchase, the computer's battery was not accepting a charge.  The

17   computer said "plugged in not charging."  She contacted HP for warranty service and returned

18   the DV6449US to HP for service.  HP sent it back to her with a new battery.  Shortly thereafter,

19   still within a within a year of purchase, Plaintiff Fromkin noticed that her internal wireless LAN

20   would stop functioning.  The computer's network manager would indicate that there were no

21   wireless networks available.  Other times, there would be a pop-up on the computer's display

22   indicating the computer was experiencing a "network connectivity problem."  She could be in the

23   same room as the router with 2 computers and her mother's Dell computer would have no

24   problem, while Plaintiff Fromkin's computer would hang up "identifying" the wireless network

25   and could not connect to the Internet.  To attempt to fix the problem, she bought a new D-Link

26   router.  However, after the new router was installed, the DV6449US continued to connect to the

27   internet only on an intermittent basis, while the Dell performed flawlessly.

28

25.    Plaintiff Fromkin next contacted called HP's customer support and spent a long time troubleshooting the unit.  These procedures included resetting the router, reinstalling the device drivers and rebooting the computer.  She initially thought that these procedures resolved the problem but very soon after the initial call, she noticed that the internet was again connecting intermittently.  She again contacted HP.  HP suggested that the motherboard should be replaced and instructed Plaintiff Fromkin to return the DV6449US for service.  When HP returned the DV6449US, the service ticket indicated that the BIOS was upgraded.  However, the wireless connection continued to fail on an intermittent basis.  This service event took place in approximately March 2008.  Immediately after she noticed that the wireless connection was still not functioning, Plaintiff Fromkin again shipped the DV6449US to HP for service.  When the DV6449US was returned from this third service event, there was a service ticket in the box indicating that there was no problem found.  Ultimately, despite the fact that HP serviced her DV6449US, it was never able to diagnose the cause for her computer's wireless device not functioning.  As far as Plaintiff Fromkin is aware, the DV6449US' motherboard was never replaced.

26.    Further, despite the fact that Plaintiff Fromkin contacted HP's customer service on at least three occasions regarding her DV6449US' wireless failures, and at least twice after March 2008, she was never informed that HP was aware of the defect in the motherboard causing the wireless failures, nor did HP's customer service representative inform her that HP initiated an extended warranty program for exactly the type of failure she was reporting.  Additionally, she never received an email from HP informing me of the extended warranty program.

27.    Plaintiff Fromkin finally stopped using the DV6449US in approximately December 2008.  HP has not refunded her purchase price or replaced her Notebook Computer with one without the design defect that affects the wireless access and other related aspects of the computer.  Plaintiff Fromkin was required to expend considerable time diagnosing her Notebook's failures and was never able to use in for its intended purpose.  Had she been made aware that her DV6449US suffered from the defects, consisting of the "plugged in not charging" condition and the intermittent wireless failures, she would not have purchased the computer.

1

### D.    Defendant Hewlett-Packard Company

2

28.    Defendant Hewlett-Packard Company is a publicly traded corporation with

3

worldwide corporate headquarters in Palo Alto, California.

4

## IV.   CLASS ACTION ALLEGATIONS

5

29.    Plaintiffs bring this action on behalf of themselves, and, pursuant to Federal Rules

6

of Civil Procedure 23(a) and (b)(3), on behalf of the following Class and Consumer Subclass and

7

Warranty Subclass ("class or classes"):

8

**Class**
All persons and entities who since August 1, 2006 purchased in the United States
9
HP Pavilion Series 6000 and 9000 and Presario Series 6000 notebook computers,
also referred to as the DV6000, V6000 and DV 9000 series of computers.
10
Excluded from the Class are (1) employees of the defendant, including its officers
or directors; and (2) defendant's affiliates, subsidiaries, or co-conspirators.
11

12

**Consumer Subclass**
All Class members who purchased for personal, family or household purposes,
13
HP Pavilion Series 6000 and 9000 and Presario Series 6000 notebook computers,
also referred to as the DV6000, V6000 and DV 9000 series of computers.
14

15

**Warranty Subclass**
All Class members whose HP Pavilion Series 6000 and 9000 and Presario Series
16
6000 notebook computers, also referred to as the DV6000, V6000 and DV 9000
series of computers, experienced failure of wireless capability within a year of
17
purchase.

18

**Wisconsin Subclass**
19
All Class Members who reside in Wisconsin.

20

**Virginia Subclass**
21
All Class Members who reside in Virginia.

22

**Florida Subclass**
All Class Members who reside in Florida.
23

24

30.    Class members are sufficiently numerous and geographically dispersed throughout

25

the United States that joinder of all Class members is impracticable.  Information as to the

26

identity of the Class members can be determined from records maintained by the Defendant and

27

its agents. Fed.R.Civ.P.23(a)(3).

28

31.     Plaintiffs' claims are typical of, and not antagonistic to, the claims of the other Class members and, by asserting their claims, Plaintiffs will also advance the claims of all members of the Class who were damaged by the same wrongful conduct of HP.  The relief sought is common to the Class.  Fed.R.Civ.P. 23(a)(3).

32.     The common legal and factual questions which do not vary from Class member to Class member and which may be determined without reference to individual circumstances of any Class member include, but are not limited to, the following:

a.   Whether the HP Notebook Computers suffer from a common defect that causes the wireless capability to fail during its reasonable expected life, including, often, in the first year after purchase;

b.   Whether Defendant has undertaken a common business practice of knowingly selling to the public HP Notebook Computers with a design defect that causes the internal WLAN to fail and harm other aspects of the computer as well;

c.   Whether HP's representations that its notebook computers have wireless capability are material to a reasonable consumer;

d.   Whether Defendant's material misrepresentations constitute unfair competition and unfair, deceptive, untrue or misleading advertising;

e.   Whether Defendant actively concealed the defect;

f.   Whether Defendant failed to disclose material facts about the HP Notebook Computers;

g.   Whether Defendant's statements about the wireless capabilities of its Notebook Computer created express warranties with Plaintiffs and the Warranty Subclass that Defendant breached;

h.   Whether HP represented in its Limited Warranty that HP Notebook Computers are free from defects;

i.   Whether Defendant failed to provide an adequate and timely fix of the defect;

j.   Whether Defendant breached its express Limited Warranty;

k.   Whether Defendant violated the California Consumers Legal Remedies Act;

l. Whether Defendant violated the unfairness prong of the California Unfair Competition Law ("UCL");

m. Whether Defendant violated the unlawful prong of the UCL;

n. Whether Defendant violated the fraudulent prong of the UCL;

o. Whether Defendant violated the Wisconsin Deceptive Trade Practices Act, Wisconsin Annotated Statutes, §423.110 *et seq.*,100.18, (DTPA);

p. Whether Defendant violated the Virginia Consumer Protection Act, Va. Code § 59.1-200 (VCPA);

q. Whether Defendant violated the Florida Deceptive and Unfair Trade Practices Act, F.S. § 501.201, *et seq.* ("FDUTPA"); and

r. Whether Class members are entitled to recovery including the proper measure, nature and extent of such relief.

33. These common questions and others predominate over questions, if any, that affect only individual members of the Class. Fed.R.Civ.P.23(a)(3).

34. Plaintiffs and their counsel will fairly and adequately represent the interests of the Classes in that Plaintiffs are typical purchasers of HP Notebook Computers. There is no material conflict with any other member of the Classes that would make class certification inappropriate. Plaintiffs have retained attorneys experienced in the prosecution of consumer class actions and Plaintiffs intend to prosecute this action vigorously. Fed.R.Civ.P.23(a)(3).

35. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts if individual litigation of numerous cases would proceed. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member. Fed.R.Civ.P.23(a)(3).

36.    Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  Fed.R.Civ.P.23(a)(3).

37.    Injunctive relief is appropriate as to the Class as a whole because Defendant has acted or refused to act on grounds generally applicable to the Class.  Fed.R.Civ.P.23(a)(3).

38.    Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including, but not limited to, providing Class members with a method for the redress of claims that may not otherwise warrant individual litigation.

## V.    FACTUAL ALLEGATIONS

39.    At all times relevant and material hereto, Defendant HP designed, manufactured, tested, labeled, packaged, distributed, supplied, marketed, advertised, sold, and otherwise distributed to interstate commerce, the HP Pavilion notebook computers, Series 6000 and 9000 and Presario Series 6000 that are the subject of this lawsuit.

40.    Notebook computers, as opposed to desktop computers, are designed for mobility and convenience.  One of the primary uses of a notebook computer is for remote access to the Internet using a wireless connection.

41.    HP "guaranteed" Plaintiff and members of the class that its computers were reliable; free from defects, and of merchantable quality and workmanship:

> HP guarantees that the HP Hardware Products that you have purchased or leased from HP are free from defects in materials or workmanship under normal use during the Limited Warranty Period.
> See *http://welcome.hp.com/country/us/en/privacy/limited_warranty.htm.l*

42.    Plaintiffs saw or heard the HP statements alleged in the preceding paragraphs or substantially equivalent statements in HP's advertising.  HP's representation regarding the HP Notebook Computers' being free of defects was a material factor and Plaintiffs relied on that statement in deciding to purchase their HP Notebook Computers.

43.   Contrary to HP's aforementioned representation and guarantee, HP has failed to deliver to Plaintiffs and Class members HP Notebook Computers that were free from defects in materials and workmanship.  Rather, HP has delivered to Plaintiffs and the Class HP Notebook Computers that incorporate defective components causing the wireless LAN devices installed in those computers to fail and become inoperative.

44.   Further, a reasonable consumer expects that HP Notebook Computers will have reliable wireless access for five years, and does not expect that HP Notebook Computers will come with a serious and common design defect that will frequently cause wireless capability to fail before that expected lifetime, often within the first year, as well as harming other related aspects of the computer's performance and reliability, such as the battery.

45.   The HP Notebook Computers suffer from a common defect that causes a substantial number of the computers' wireless LANs to fail within the first five years, including during the first year of use, rendering the computers unable to connect to the internet.

46.   In August 2006, HP became aware that HP Notebook Computers had a defective wireless Lan.  HP failed to disclose the defect but instead attempted to conceal it with a BIOS update that did not solve the problem but in fact harmed the computers by shortening batter life.

47.   HP failed to disclose its knowledge of the defects, and concealed such knowledge by making partial and misleading representations of material facts that were not known to Plaintiffs and all others similarly situated.

48.   In spite of its knowledge, HP continued to sell its HP Notebook Computers Further, HP continued shipping the computers, failed to recall units already in the field, failed to notify customers who already may have purchased one of the HP Notebook Computers, failed to notify retailers or consumers, and failed to offer any effective repair for the defect.

49.   Had Plaintiffs been made aware of the defect prior to purchase, they would not have purchased their HP Notebook Computers.

50.   Additionally, the defect prevents Plaintiffs, and other Class member from using their HP Notebook Computers for their intended purposes.

51. In order to wirelessly access the internet, Plaintiffs and other class members have been required to purchase external wireless LAN devices that plug into the HP Notebook Computers. Additionally, Plaintiffs have been required to expend considerable time diagnosing the HP Notebook Computers wireless failures at HP's customer service department's direction, been required to reinstall device drivers and BIOS updates, all when HP was aware that the true cause for the internal wireless LAN's failure was the C51 chip.

52. Plaintiffs are informed and believes that HP was aware of the design defect before Plaintiffs purchased their HP Notebook Computer.

53. On or about October 22, 2007, posted an entry on HP Total Care website:

> Hi, it's Anna from HP Total Care,
> I'm sorry some of you are having trouble with your wireless WLAN not detecting your wireless network and not displaying in your device manager. The issue appears to affecting AMD based DV 6000, V6000, and DV 9000 notebooks running Microsoft Windows Vista. We've got a BIOS update and some instructions on getting this resolved. If the BIOS update does not resolve the issue, please contact HP support and we will facilitate a repair.

54. The BIOS update was not effective and class members were without recourse as the eighty-four (84) pages of customer complaints attest to on an HP forum website (as of November 12, 2007). See

http://forums1.itrc.hp.com/service/forums/bizsupport/questionanswer.do?threadID=11364.

55. Nor is the issue limited to HP Notebook Computers running Microsoft Windows Vista. The customer complaints identify manifestations of the defect that occur on HP Notebook Computers running Microsoft Windows XP and XP Professional. The customer complaints describe situations where the defect manifested itself before the release of Microsoft Windows Vista.

56. On or about November 3, 2007, HP posted another entry on HP's Total Care Website:

> The reason for the BIOS fix is that the internal WLAN card may not work because the signal amplitude on the internal bus to the chipset is too low. As a result, the wireless card and the motherboard cannot communicate. By downloading Softpaq 36551, it is possible to boost the amplitude of the signals on this bus and thereby solve some WLAN issues. Here is the link:
> ftp://ftp.compaq.com/pub/softpaq/sp36501-37000/sp36551.exe

If the issue does not stem from low amplitude, it could also be an issue between the system board and the wireless card as some have pointed out on this board. That said, it is unlikely that replacing the wireless card will solve the issue, so please do not do this.  Historically it is more likely that a system board issue would cause this type of problem, than an issue with the wireless card.  So, if Softpaq 36551 doesn't help, the next step is to call 800-HP-Invent for additional help.

As mentioned earlier HP is working around the clock on this issue.  Engineers are reading the posts and have actually printed them out to bring them into meetings to discuss them.  So, please keep posting your feedback with as much detail as possible.

(emphasis added).

57.    Examples of class members' problems as reflected in the customer complaints are as follows:

a.    Rai Lynn Nov 5, 2007:
well I just got the new wireless card delivered and as expected it din't [sic] solve the problem.  The link for the BIOS is corrupted (well at least that how it appears to me after I have finished downloading it).  I guess whats left now is back up my data (AGAIN!) And send it back. Just in case:
Pavilion dv9205us
AMD turion 64x2
Nvidia Geforce Go 6150

b.    Gary Swain Nov 6, 2007:
I have a V3015NR with the AMD. My wireless is gone as well.  I just got off the phone with tech Support and was told that since my warranty expired 3 weeks ago, I am on my own.  They wanted to sign me up for phone support for $99 a year, but that would not cover fixing the WLAN problem that so many are experiencing.  Has anyone else encountered this problem?  If so, what has been said or done?  This is an obvious problem that HP recognizes and should address regardless to length of warranty coverage. Could this be a recall issue?  I have tried everything from flashing the BIOS to reloading the drivers for the broadcom. I did manage to get the WIFI back up after removing the chipset and re-booting. I then put the chipset back in and re-booted in SAFE Mode. At the time, the chipset was found and installed. I then rebooted in normal mode and it worked until it went to sleep at which point, the WLAN disappeared from the system. Like all others, nothing in the device manager even though under system info, it's listed. This is my travel laptop and is used everyday for work. It needs to be fixed regardless of warranty.

c.    Clair Jordan Nov 8, 2007:
Hi everyone,
Add me in to you [sic]  list. I have a Pavillion dv6000 [sic]. Got it in Feb. My wireless went down in September. First HP said they would send me a new card. Then they said that I would have to send it in. Did that and got it back within a week and it worked great for about a month. Then I started having a problem with what I thought was my graphics/video card. After a week of trying to install new

drivers and trying to unsuccessfully back up my laptop it will now not boot up at all. Tried draining out all the power, removing battery etc. no luck. So now it is on its way back to HP.

Get this, I asked them if I could buy an extended warranty and they said they would not well me one cause my laptop had broken twice!!! I am so mad.

Hope we can escalate this further

d.      Thomas C. Perconti Nov 9, 2007:

Dv9000ct owner (purchased in Jan 07) here experiencing the same problem since June/July 07 timeframe [sic]. The wifi adapter occasionally wakes up when coming out of suspend but that is pretty infrequent. I ended up purchasing a LinkSys USB wifi adapter (my expressCard slot is taken up by the HP TV Tuner card).

I heavily rely on my notebook and cannot afford to be without it for weeks while the system is sent out for repair, or HP were to send an identical replacement system and allow us to swap the drives, that would go a long way in minimizing the inconvenience.

I am not pleased with the manner in which HP had been dragging their feet on this issue when it is painfully obvious that it is a pretty widespread problem.

I DIDN'T expect it from HP. I guess that I'm just an old IT warhorse that still remembers the world-class products, service and support that the HP name implied. ...hangining [sic] in there keeping hope alive...

e.      TL Fin Nov 9, 2007:

HP dv6105us. Purchased mid October 2006. Wireless stopped working on the beginning of August 2007.

Since the 2nd of August, I've spent hours on the phone with support, with about 6 people. Ran all the 'fixes' with the first support person, no fix. Have gotten contradictory information from each person since.

I purchased a 2wire box in order to use this HP laptop. My old computer does not work with this system, so I have no back up....anyway.

Gave up & decided to send the compter [sic] back to HP. As of the 1st of this month, November, I have been expecting a shipping box, but it has not arrived.

Now it is having difficulty starting, takes up to 20 minutes to get it going & my warranty is up. Is HP stalling on purpose?

Really, at this point, I'd like my money back! Or send me a new computer and I'll send this lemon back, ok, Jim? Please!

58.      HP has failed to offer Plaintiffs and class members an adequate fix of the wireless capability problem.  After Plaintiff Nygren repeatedly complained to HP and filed this class action, HP extended its one-year limited warranty for an additional year to address "certain issues with the HP dv6000, dv9000 and Compaq v6000."  On or about November 15, 2007, HP posted on its website, HP.com, a program with an extension of its limited warranty for some but not all HP Notebook Computers.  The announcement included wireless failures among a list of other

failure symptoms for which HP agreed to extend its limited warranty from a period of one year to two years from purchase.  HP's warranty extension program does not address manifestations of the defect that occur more than two years after purchase of the notebook computer, with the exception of parts replaced as part of any warranty repair, for which HP provided a 90-day limited warranty from the time of replacement.  The limited warranty extension is neither an appropriate nor adequate remedy for HP's defective notebook computers.  Accordingly, Plaintiffs are informed and believe that HP still has not provided an adequate and sufficient fix of the wireless and heat cycling design failures for those customers who return their Notebook Computers under the warranty extension.  Among other things, the wireless capability still does not work reliably and the battery's life is dramatically shortened by a still defective heat cycling design.

59.     Here are some additional illustrative Internet postings by class members who continue to experience wireless problems:

a.     JohnFrench
Nov 2, 2008 05:04:41 GMT   Unassigned
Check this: http://tinyurl.com/2jxruy <HP Limited Warranty Service Enhancement> for a list of many symptoms caused by motherboard failure, and laptops affected -- my fury is that although [sic] my model number (dv9000) is covered, only certain pruduct numbers under dv9000 are included, and mine is not one of them! The problem is the motherboard, and the symptoms include loss of bootup, VERY slow bootup, WiFi stops working, etc. Send me an email at john (at) johnfrench.org if you have the symptoms but are not covered by their extension plan. If we join together we can stop their refusal to fix their machines. I spent hours with their call center and all they kept saying (politely, of course) is that my product number is not covered. The repair with shipping is well over $500 and it is because of their crappy motherboards!

b.     **Wayne Sallee**
Jun 13, 2008 13:21:15 GMT   Unassigned
I sent my laptop in on 2008-04-23

It is now 2008-06-13 already having wireless problems. It's not disappearing from the device manager yet, but it sometimes will be turned off when I turn the computer on, and I have to click on the icon and turn it back on.

The bios version is 3.E. I've got all of the other bios versions on my computer but don't have that one. I can't find the download for it on HP. Anybody remember where that version can be downloaded?

Wayne Sallee

c.      **Joe Redding**

Jun 30, 2008 22:42:57 GMT    Unassigned

I'm on my third major repair for this garbage laptop.

This time the service center lied about the repair they did.

The listed repairs were replaced:

system board

battery

heatsink fan

hard drive

When I turned the laptop on I got literally the same thing I sent it out with.

All of my settings are still there.

If they really replaced the motherboard why am I looking at the exact same desktop wallpaper I sent the laptop out with?

So basically they deliberately lied.

This is strike four already. At what point does this company hold themselves accountable for their horrible product? The hard drive they replaced was the secondary hard drive that didn't even have any issues.

The put a BLATANTLY used battery in this thing that isn't lasting anywhere near as long as a replaced battery should. Its literally faded to the point of being grey instead of black like it's supposed to be.

Not to mention the other problem it went in for, ac adapter failure, hasn't even been fixed.

$1500 + paperweight.

d.      **Ruslan Galiev**

Aug 14, 2008 19:01:50 GMT    Unassigned

This is my second post sense feb 26 08, i sent my hp dv6646us to hp with the wifi problem. It came back in 3 days, they changed the mother boadr and thermal pad, ok. Wifi worked 3 days then stoped working again, same exact way and the hard drive failed. Sent it to hp 8 days later i just got it, replaced the mother board, hdd, lan card and thermal pad. It works for now but i left it on connected to the internet it went to sleep or the hibernate, came back 20 min later wifi is gone, the windows is popping up every 5-10 seconds and switches wireless on and off. Restart it so it works at the moment, ill give 3-5 days before it will break again. Will post the updates later.

e.      **Sheikh Hamid**

Aug 17, 2008 00:26:39 GMT    Unassigned

My V6133 is going in for repairs next week. Having a quick look at the earlier post it seems the new motherboard sometimes does not fix the problem. Is it possible to get a refund if it reoccurs?

f.      **Wayne Sallee**

Aug 18, 2008 01:03:45 GMT    Unassigned

@ sheikh hamid

You say that some of the replacement motherboards have not worked, but actually, nobody has had a replacement board last any length of time.

As for your 3rd situation, HP has a policy that after 3 strickes of the same

problem you get a new computer. So tell that this is the third time of the same problem and that you want a new laptop with Intell instead of AMD.
Wayne Sallee

g.     **Hpmcs**
Aug 26, 2008 06:52:51 GMT    Unassigned
Add me to the list. Started out with no wifi. Sent it in to HP for repairs and within two weeks it was having problems again. Now it wont charge the battery and wont run on ac power without the batter in and charged. I can get the battery to slooooowly charge by leaving it pluged in and turned off, it will then run for short periods of time but quickly drains what little battery power there is.

h.     **Gary Swain**
Sep 30, 2008 01:13:28 GMT    Unassigned
My machine is sitting in Houston with a return date of Oct 25th. I sent the machine back for it's SECOND motherboard on September 18th. I was on hold for 1 HOUR and 37 MINUTES without anyone answering tonight to inquire as to why HP has to have my computer for 6 WEEKS! I use my machine for work and I am now forced to buy a new machine so I can work!

i.     **Julie Gwynn**
Oct 14, 2008 14:08:19 GMT    Unassigned
I too have a HP laptop bought in January 2007 on which the wireless has failed. I have been in correspondence with HP and find it totally unacceptable that they are unable to help the many people who are experiencing these problems (my serial number is not listed as being eligible for free repair).
I think that there is a lot of evidence to show that this is a widespread problem and HP should be making more effort to repir [sic] the problem on ALL affected computers.

j.     *Jim C.* Says:
January 12th, 2010 at 4:12 pm
Like so many of you, have a DV 6000 series with problems.
Purchased new in Dec 2008 for a Christmas present for my daughter to take to college.
Motherboard fried 01/12/2009 3 hrs of troubleshooting with tech over the phone. Box sent for repair.
Memory card bad when received back. 02/11/2009 shipped back to HP again.
Daughter went to start computer this am 01/12/2010, exactly 1 yr to the day when the last trouble ticket was generated (so less than 1 yr after repaired) and had the same "no LED, no boot" bad motherboard problem.
HP "Your warantee expired 12/25/2009. Send it in with $259 if you want it repaired."
Tried the verbiage suggested above. She had a canned answer prepared. "The extended warantee for the bad motherboards expired in Aug 2009. We no longer cover it."
So, contacted the yahoo address above. Haven't decided if small claims court is the way to go or the class action lawsuit, which probably will return pennies on the dollar if any.

k.     *Marlene* Says:
January 11th, 2010 at 5:46 pm
Just hung up with HP. I have the wireless issue with the motherboard. HP will not help since the extension they provided was up to 10/09. I have had no communication from them about this problem. Now, I suggest that anyone having this problem post on facebook, Linkden, the Better Business Bureau and join the class action suit. This is a known issue, acknowledged by HP and they choose to scam the consumer. I rather take the $259 to replace the motherboard as they suggest and put it towards a new notebook.

l.     *Rob Bailey* Says:
January 9th, 2010 at 1:10 pm
I have a dv6000 (dv6119us), purchased 12/7/06, and always thought that my wireless connection would turn off, and then on because my internet connection was glitchy. Well, as of last night, I only get an amber light (not blue), and found this website after doing some research.
I called HP, and insisted (per Chart_boy), that HP should fix this for free because HP has known about this problem all along, and should have recalled the computers to begin with. The best offer give was $259 to repair instead of the usual $398. I said I was a loyal HP customer with 3 HP computers and 2 HP printers, and he said he would escalate the issue. After waiting on hold for 5 minutes, I finall got a case number, and I'm supposed to get a call back tomorrow. I will let you all know how it goes.
In case I cannot get a free fix, is it worth worth getting a wireless adaptor, or a wireless netword card, or can I expect the motherboard to go shortly?
Also, what will come out of the class action lawsuit, and who is eligible to join (purchased 37 months ago)?

60.     Shortly after it began selling the HP Notebook Computers at issue here, HP became aware that the computer's wireless capability was failing at an abnormally high rate.  HP conducted a root cause analysis into the failure's cause and determined that the NVIDIA C 51 chips incorporated into the units were responsible for the wireless failures.  HP's investigation identified 24 models that are prone to experience the defect.

61.     Defendant actively concealed a material fact from Plaintiffs -- the wireless product defect.  Plaintiffs would not have purchased the defective products had they known about the defect.  The defect caused wireless LAN failures throughout the HP Notebook Computer's life expectancy, including within the warranty period.  Instead of recalling the defective Notebook Computers, HP provided consumers inadequate remedies and other purported "fixes" which hide, delay, and in some instances exacerbate the problems caused by the defect.  One purported

1  "solution" consisted of a BIOS update, which would force the computer's fan to run more

2  frequently (or continuously) in an effort to control the excessive heat caused by the defect.  The

3  BIOS updates cause the computer's fan to run continuously.  Consumers therefore experience a

4  decrease in notebook battery life, increase in system noise, and decrease in computer life.  HP

5  offered the BIOS "fix" in an attempt to postpone complete system failure of the Notebook

6  Computers until after the applicable warranty expired.  Despite knowing about the defect,

7  Defendant failed to disclose it to consumers and in fact actively concealed it from consumers.

8  **VI.   FIRST CAUSE OF ACTION**
   **(VIOLATIONS OF BUSINESS & PROFESSIONS CODE § 17500 *ET SEQ.*)**

9

10       62.     Plaintiffs incorporate and reallege all of the foregoing paragraphs.

11       63.     Defendant's misleading advertising of the wireless capability of their Notebook

12  Computers constitutes misleading advertising under Business & Professions Code § 17500 (the

13  "False Advertisement Law").  The HP Pavilion notebook PC checklist available on the Internet

14  states: "HP Pavilion notebooks come with a wireless LAN for complete mobility."  The HP

15  Presario notebook PC checklist available on the internet similarly states:  "Compaq Presario

16  notebooks come with wireless LAN for complete mobility."  The product specifications for the

17  HP Pavilion dv6110us state:

18       "Wireless Connectivity     802.11b/g WLAN"

19       "Security and Support:

20       …

21       Wireless Home Network"

22  Plaintiffs are informed and believe that these statements appear in most if not all product

23  specifications for the HP Notebook Computers.  For example, the Maintenance and Service

24  Guide Presario V6000 Notebook PC, Document Part Number: 416630-003 provides at page 10:

25  "Integrated wireless support for Mini Card IEEE 802.11b and 802.11b/g WLAN device."  In fact,

26  as a result of a defective heat cycling design, many HP Notebook Computers lose any ability to

27  make wireless connections.  Therefore, the advertisements are materially misleading and misled

28

1   Plaintiffs and the class members who relied on them and/or similar statements by HP that their

2   Notebook Computers had a wireless function.

3         64.    Plaintiffs saw, read and relied upon the HP statements alleged in paragraph 63

4   and/or on substantially equivalent statements in HP's advertising to the effect that HP Notebook

5   Computers would provide wireless access.  These statements were material to Plaintiffs and

6   caused them to purchase their HP Notebook Computers.  Had Plaintiffs known that these

7   statements were untrue, they would not have purchased the computer.  At all relevant times HP

8   failed to disclose that its HP Notebook Computers suffered from a design defect that caused these

9   computers to prematurely lose their wireless capabilities, to meet these product specifications,

10   and to function as described.  These advertisements and practices have deceived Plaintiffs, and

11   are likely to deceive the consuming public, in violation of § 17500.

12         65.    Defendant's misleading advertisements have injured Plaintiffs, the Class, and the

13   public.

14         66.    Plaintiffs and the Class are entitled to relief, including full restitution of all

15   revenues obtained by Defendant from Plaintiffs and the Class as a result of such misleading

16   advertisements, and enjoining Defendant to cease and desist from its misleading advertising.

17         WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

18   **VII.  SECOND CAUSE OF ACTION**
**(VIOLATIONS OF BUSINESS & PROFESSIONS CODE § 17200 *ET SEQ.*)**
19   **(Unfair Business Practices)**

20         67.    Plaintiffs incorporate and reallege all of the foregoing paragraphs.

21         68.    Defendant has engaged in unfair competition within the meaning of California

22   Business & Professions Code § 17200 *et seq.* because Defendant's conduct alleged above is

23   unfair.

24         69.    Defendant's conduct constitutes an unfair business practice because Defendant is

25   marketing and selling its Notebook Computers in a manner likely to deceive the public, and

26   Plaintiffs relied on Defendant's representations and omissions and were deceived and have

27   suffered actual harm as a result.

28

70.     Defendant's business practices are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers in that consumers are led to believe that HP notebook computers can be reliably used for wireless service when they cannot.  In addition, when Plaintiffs and class members report problems with their wireless service HP fails to provide an adequate fix.  That is, HP fails to provide consumers with a reliable computer without the design defects that impair the wireless functions and other related aspects of the computers.

71.     Plaintiffs have suffered a loss of money and property as a result of the wrongful conduct here alleged.  Defendant's unfair business practices have caused injury to Plaintiffs, the Class, and the public.

72.     Plaintiffs and the Class are entitled to relief, including full restitution of all revenues obtained by Defendant from Plaintiffs and the Class as a result of such business acts or practices, and an injunction that Defendant cease and desist from engaging in the unfair practices alleged above.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

### VIII.   THIRD CAUSE OF ACTION
### (VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200)
### (Unlawful Business Practice)

73.     Plaintiffs incorporate and reallege all of the foregoing paragraphs.

74.     Defendant has engaged in an unlawful business practice within the meaning of California Business & Professions Code § 17200 *et seq.* because Defendant's conduct violates the California False Advertising Law, the California Consumers Legal Remedies Act and the warranties created by HP's representation concerning the wireless function of its Notebook Computers.

75.     Defendant's unlawful business acts constituted, and constitute, a continuing course of conduct of illegal business practices because Defendant is selling its products and marketing them in a manner that is likely to deceive the public, and Plaintiffs, who relied on HP's representations as alleged above and have suffered actual harm as a result.

76.     Plaintiffs have suffered a loss of money and property as a result of the wrongful conduct here alleged.  Defendant's unlawful business practices have caused injury to Plaintiffs, the Class, and the public.

77.     Plaintiffs and the Class are entitled to relief, including full restitution of all revenues obtained by Defendant from Plaintiffs and the Class as a result of such business acts or practices, and an injunction that Defendant cease and desist from engaging in the unlawful practices alleged above.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

### IX.   FOURTH CAUSE OF ACTION
#### (Violation of Business & Professions Code § 17200)
#### (Fraudulent Conduct)

78.     Plaintiffs incorporate and reallege all of the foregoing paragraphs.

79.     Defendant has engaged in fraudulent conduct within the meaning of California Business & Professions Code § 17200 *et seq.*

80.     Defendant's wrongful business acts constituted, and constitute, a continuing course of fraudulent conduct because Defendant is selling its products and marketing them in a manner that is likely to deceive the public, and Plaintiffs relied on Defendant's misrepresentation and have suffered actual harm as a result.

81.     Plaintiffs are informed and believe that Defendant knew that its representations regarding the HP Notebook Computers wireless capabilities were false.

82.     Plaintiffs relied on Defendant's misrepresentation and suffered a loss of money and property as a result of Defendant's fraudulent conduct.  Defendant's fraudulent practices have caused injury to Plaintiffs, the Class, and the public.

83.     Plaintiffs and the Class are entitled to relief, including full restitution of all revenues obtained by Defendant from Plaintiffs and the Class as a result of such fraudulent practices, and an injunction that Defendant cease and desist from engaging in the practices here described.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## X.  FIFTH CAUSE OF ACTION
### (BREACH OF EXPRESS WARRANTY PURSUANT TO CAL. U. COM. CODE §2313)
### (For Warranty subclass)

84.     Plaintiffs incorporate and reallege all of the foregoing paragraphs.

85.     In paragraph 63 above, HP warranted that "HP Pavilion notebooks come with a wireless LAN for complete mobility" and that "Compaq Presario notebooks come with wireless LAN for complete mobility."  The product specifications and manuals state that the HP Notebook Computers have wireless connectivity.  These statements alleged in paragraph 63 created an express warranty.  Plaintiffs' warranty claim is not based on the Limited Warranty document that accompanied the Notebook Computers but on the statements alleged in paragraph 63 above.

86.     Plaintiffs and the Warranty Subclass have performed all conditions, covenants and promises required to be performed on their part in accordance with these warranties.  Plaintiffs relied on the representations in paragraph 63 that created the express warranty and were damaged when they proved untrue.

87.     As consumers, Plaintiffs and the Class are relieved of any notice requirement, and HP, who has superior knowledge of its technology, should be estopped from asserting lack of notice as a defense.  Plaintiffs also provided sufficient notice to HP pursuant to the California Consumer Legal Remedies Act as alleged in paragraph 65 below and that notice should suffice under the law of warranty as well.

88.     At all relevant times, HP knew of the problems with the wireless capabilities of the HP Notebook Computers.  Therefore, notification to HP would serve no purpose, and for this reason, HP should be estopped from asserting lack of notice as a defense alleged in paragraph 65 below.

89.     HP was a remote seller and Plaintiffs did not deal directly with HP but HP's representations created express warranties that ran to Plaintiffs and the Warranty Subclass.

90.     Defendant has breached the warranty obligations by failing to provide an adequate fix when the wireless capabilities of Plaintiffs' and class members' HP Notebook Computers prematurely failed.  Instead, the remedy that HP provides still leaves consumers with a computer

that suffers from a heat cycling design defect that affects the wireless capability, the battery and other aspects of the computer.

91.     Defendant has breached the warranties by undertaking the wrongful acts alleged above.

92.     Plaintiffs relied on Defendant's representations alleged in paragraph 27 that created the express warranty.  Defendant's breach of the warranty was a substantial factor in causing Plaintiffs and the Class to suffer damage.

WHEREFORE, Plaintiffs and the Warranty Subclass pray for relief as set forth below.

## XI.   SIXTH CAUSE OF ACTION
### (VIOLATION OF CIVIL CODE § 1750 *ET SEQ.*)
### (for Consumer Subclass)

93.     Plaintiffs incorporate and reallege all of the foregoing paragraphs.

94.     The California Consumers Legal Remedies Act, California Civil Code Section 1750 *et seq.* ("CLRA") was designed and enacted to protect consumers from unfair and deceptive business practices.  To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code § 1770.

95.     The CLRA applies to Defendant's conduct as it was intended to result and did result in the sale or lease of goods or services for personal, family or household use.

96.     At all relevant times, Plaintiffs and members of the Consumer Subclass were "consumers" as that term is defined in Civil Code Section 1761(d).

97.     The transactions from which this action arises include transactions involving the sale or lease of goods or services for personal, family or household purposes within the meaning of Civil Code Section 1761.

98.     Defendant's practices in connection with the marketing and sale of its HP Notebook Computers violate the CLRA in at least the following respects:

    a.   In violation of Section 1770(a)(5), Defendant has represented that the HP Notebook Computers have characteristics that they do not have;

    b.   In violation of Section 1770(a)(9), Defendant has advertised the HP Notebook Computers with intent not to sell them as advertised.

99.     Defendant made the material misrepresentations alleged in Paragraph 27 above and Plaintiffs relied on them.  These affirmative statements about the wireless capabilities of HP Notebook Computers created a duty to disclose that the computer has a design defect that affects the wireless capability; and that HP has no reliable fix for this important design defect.  The clear message of HP's representations was that its Notebook Computers had a reasonably reliable wireless capability, not just a defective one.  Defendant's failure to disclose and knowing concealment that the HP Notebook Computers had defective wireless capabilities are omissions and concealments of material fact that constitute unfair and/or deceptive business practices in violation of Civil Code Section 1770(a).

100.     Defendant's violations of Civil Code Section 1770 present a continuing threat to members of the public in that Defendant is continuing to engage in the practices alleged above, and will not cease until this Court issues an injunction.

101.     Plaintiffs have provided defendant with notice of its alleged violations of the CLRA pursuant to Civil Code section 1782(a).  HP failed to provide appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter.  Accordingly, Plaintiffs seek actual, statutory and punitive damages, in addition to equitable and injunctive relief.

WHEREFORE, Plaintiffs and the Consumer Subclass pray for relief as set forth below.

## XII.  SEVENTH CAUSE OF ACTION
### Breach of Express Limited Warranty)
### (for Warranty Subclass)

102.     Plaintiffs incorporate and realleges all of the foregoing paragraphs.

103.     HP provided a Limited Warranty with its Notebook Computers.  The Limited Warranty provides: "HP warrants that the HP hardware product and all the internal components of the product that you have purchased or leased from HP are free from defects in materials and workmanship under normal use during the Limited Warranty Period."

104.     Plaintiff has performed all conditions, covenants and promises required to be performed on his part in accordance with the warranty.

105.     As consumers, Plaintiff and the Class are relieved of any notice requirement, and HP, who has superior knowledge of its technology, should be estopped from asserting lack of notice as a defense.  Plaintiff also provided sufficient notice to HP pursuant to the California Consumers Legal Remedies Act as alleged in paragraph 65 below and that notice should suffice under the law of warranty as well.  In addition, Plaintiff Nathan Nygren gave HP sufficient notice pursuant to the CLRA.

106.     At all relevant times, HP knew of the problems with the wireless capabilities of the HP Notebook Computers.  Therefore, notification to HP would serve no purpose, and for this reason, HP should be estopped from asserting lack of notice as a defense.

107.     Defendant has breached the Limited Warranty by failing to provide an adequate fix when the wireless capabilities of Plaintiffs' and class members' HP Notebook Computers prematurely failed.

108.     Defendant has breached the warranty by undertaking the wrongful acts alleged above.

109.     Plaintiffs have relied on Defendant's express warranty.  Defendant's breach of the warranty was a substantial factor in causing Plaintiff and the Class to suffer damage.

WHEREFORE, Plaintiffs and the Warranty Subclass pray for relief as set forth below.

### XIII.   EIGHTH CAUSE OF ACTION
**(Violation of the Wisconsin Deceptive Trade Practices Act)**
**(Plaintiff Nygren for the Wisconsin Subclass)**

110.     Plaintiff Nygren incorporates and realleges all of the foregoing paragraphs.

111.     Plaintiff Nygren is a resident of Wisconsin and purchased his HP Notebook Computer in Wisconsin.  He is, accordingly, entitled to assert claims under the Wisconsin Deceptive Trade Practices Act, Wisconsin Annotated Statutes, §423.110 *et seq.*,100.18, (DTPA).

112.     The DTPA is intended to intended to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product.  In order to state a claim under the DTPA a plaintiff is required to demonstrate: 1) the defendant made a representation to the public with the intent to induce an obligation; 2) the representation

1   was untrue, deceptive, or misleading; and 3) the representation caused the claimant to incur a

2   pecuniary loss.

3        113.    HP's conduct, as set forth above, constitutes a violation of the DTPA in that: 1)

4   in order to cause consumers, such as Plaintiff Nygren, to purchase, HP represented that the HP

5   Notebook computer that Plaintiff Nygren purchased would connect wirelessly to the internet and

6   was reliable; free from defects, and of merchantable quality and workmanship; 2) HP's

7   representation was untrue, since HP was aware since August 2006 that the C51 chip was

8   defective and likely to fail within the first year after purchase and would cause the internal

9   wireless LAN failures that Plaintiff Nygren experienced and concealed this information from

10  Plaintiff Nygren and the general public; and 3) those representations caused Plaintiff Nygren to

11  experience pecuniary loss.

12       114.    Despite HP's knowledge, it continued to it failed to reveal this information to

13  Plaintiff Nygren, or to members of the general public.

14       115.    Further, despite HP's knowledge, it continued to manufacture, distribute, supply,

15  market, advertise, sell, and otherwise distributed to interstate commerce the HP Notebook

16  Computers with the intent that Plaintiff Nygren, and the general public act upon this information.

17       116.    At all relevant times, neither Plaintiff Nygren, nor the general public, could have

18  reasonably known that the HP Notebook Computer contained a serious defect.  Had Plaintiff

19  Nygren been aware that his HP Notebook Computer contained a serious defect as alleged herein,

20  he would not have purchased the computer.

21       117.    HP's conduct constitutes a violation of the Wisconsin Deceptive Trade Practices

22  Act, Wisconsin Annotated Statutes, §423.110 *et seq.*,100.18, (DTPA).

23       118.    As a result of HP's conduct, Plaintiff Nygren is entitled to retain the HP

24  Notebook Computer he purchased and is further entitled to recover his purchase price from

25  Defendant and attorney fees.

26       WHEREFORE, Plaintiff Nygren and the Wisconsin Subclass pray for relief as set forth

27  below.

28

## XIV.   NINTH CAUSE OF ACTION
### (Violation of the Virginia Consumer Protection Act)
### (Plaintiff Shifflette for the Virginia Subclass)

119.      Plaintiff Shifflette incorporates and realleges all of the foregoing paragraphs.

120.      Plaintiff Shifflette is a resident of Virginia and purchased his HP Notebook

Computer in Virginia.  He is, accordingly, is entitled to assert claims under the Virginia

Consumer Protection Act, Va. Code § 59.1-200 (VCPA).

121.      The VCPA prohibits:

> 5.  Misrepresenting that goods or services have certain quantities, characteristics,
> ingredients, uses, or benefits;
> 6. Misrepresenting that goods or services are of a particular standard, quality,
> grade, style, or model; and
> 8. Advertising goods or services with intent not to sell them as advertised;
> 14. Using any other deception, fraud, false pretense, false promise, or
> misrepresentation in connection with a consumer transaction.
>  Va. Code § 59.1-200 A.

122.      Defendant's conduct, as set forth above constitutes a violation of the VCPA in

that HP represented that the HP Notebook Computer that Plaintiff Shifflette purchased would

connect wirelessly to the internet and was reliable; free from defects, and of merchantable quality

and workmanship.

123.      At the time HP made those representations, HP was aware that the C51 chip was

defective and likely to fail within the first year after purchase and would cause the internal

wireless LAN failures that Plaintiff Shifflette experienced.

124.      Despite HP's knowledge, it continued to it failed to reveal this information to

Plaintiff Shifflette, or to members of the general public.

125.      Further, despite HP's knowledge, it continued to manufacture, distribute, supply,

market, advertise, sell, and otherwise distributed to interstate commerce the HP Notebook

Computers with the intent that Plaintiff Shifflette, and the general public act upon this

information.

126.      At all relevant times, neither Plaintiff Shifflette, nor the general public, could

have reasonably known that the HP Notebook Computer contained a serious defect.  Had

1   Plaintiff Shifflette been aware that his HP Notebook Computer contained a serious defect as

2   alleged herein, he would not have purchased the computer.

3       127.    The VCPA provides that Plaintiff Shifflette is entitled to recover actual

4   damages, reasonable attorney's fees and court costs.  Va. Code § 59.1-204.

5       HEREFORE, Plaintiff Shifflette and the Virginia Subclass pray for relief as set forth

6   below.

7                           **XV.  TENTH CAUSE OF ACTION**
                **(Violation of the Florida Deceptive and Unfair Trade Practices Act)**
8                        **(Plaintiff Fromkin for the Florida Subclass)**

9       128.    Plaintiff Fromkin incorporates and realleges all of the foregoing paragraphs.

10      129.    Plaintiff Fromkin is a resident of Florida and purchased her HP Notebook

11  Computer in Florida.  She is, accordingly, is entitled to assert claims under the Florida's

12  Deceptive and Unfair Trade Practices Act, F.S. § 501.201, *et seq.* ("FDUTPA").

13      130.    The FDUTPA prohibits unfair and deceptive business practices in the conduct of

14  any trade or commerce. F.S. § 501.201, *et. seq.* Trade or commerce includes "advertising,

15  soliciting, providing, offering, or distributing any good or service... or any other article,

16  commodity, or thing of value..." F.S. § 501.203(8).

17      131.    Under FDUTPA, a plaintiff is required to demonstrate thee elements: (1) a

18  deceptive act or unfair practice; (2) causation; and (3) actual damages.

19      132.    Defendant's conduct, as set forth above constitutes a violation of the FDUTPA

20  in that HP represented that the HP Notebook Computer that Plaintiff Fromkin purchased would

21  connect wirelessly to the internet and was reliable; free from defects, and of merchantable quality

22  and workmanship.  Plaintiff Fromkin relied on HP's representations.  Plaintiff Fromkin sustained

23  actual damages as a result.

24      133.    At the time HP made those representations, HP was aware that the C51 chip was

25  defective and likely to fail within the first year after purchase and would cause the internal

26  wireless LAN failures that Plaintiff Fromkin experienced.

27      134.    Despite HP's knowledge, it continued to it failed to reveal this information to

28  Plaintiff Fromkin, or to members of the general public.

135.     Further, despite HP's knowledge, it continued to manufacture, distribute, supply, market, advertise, sell, and otherwise distributed to interstate commerce the HP Notebook Computers with the intent that Plaintiff Fromkin, and the general public act upon this information.

136.     At all relevant times, neither Plaintiff Fromkin, nor the general public, could have reasonably known that the HP Notebook Computer contained a serious defect.  Had Plaintiff Fromkin been aware that his HP Notebook Computer contained a serious defect as alleged herein, she would not have purchased the computer.

HEREFORE, Plaintiff Fromkin and the Florida Subclass pray for relief as set forth below.

## XVI.   PRAYER FOR RELIEF

1.     Certification of the proposed Class and notice thereto to be paid by Defendant;

2.     Restitution;

3.     Injunction ordering Defendant cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

4.     Compensatory damages;

5.     Statutory damages;

6.     Prejudgment interest;

7.     Costs;

8.     Reasonable attorneys fees; and

9.     All such other and further relief as the Court deems just and proper.

Dated: July 22, 2010

MICHAEL F. RAM (SBN 104805)
mram@ramolson.com
KARL OLSON (SBN 104760)
kolson@ramolson.com
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, California  94111
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

/ / /

/ / /

EDELSON & ASSOCIATES, LLC
Marc H. Edelson (*Pro Hac Vice*)
medelson@edelson-law.com
45 W. Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

SPECTOR, ROSEMAN KODROFF
   & WILLIS, P.C.
Jeffrey L. Kodroff (*Pro Hac Vice*)
jkodroff@srkw-law.com
John A. Macoretta (*Pro Hac Vice*)
JMacoretta@srkw-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Attorneys for Plaintiff and the Class

## XVII.  JURY DEMAND

Plaintiffs on behalf of themselves and all others similarly situated hereby request a jury trial on the claims so triable.

Dated: July 22, 2010

_____
MICHAEL F. RAM (SBN 104805)
mram@ramolson.com
KARL OLSON (SBN 104760)
kolson@ramolson.com
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, California  94111
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

EDELSON & ASSOCIATES, LLC
Marc H. Edelson (*Pro Hac Vice*)
medelson@edelson-law.com
45 W. Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

SPECTOR, ROSEMAN KODROFF
   & WILLIS, P.C.
Jeffrey L. Kodroff (*Pro Hac Vice*)
jkodroff@srkw-law.com
John A. Macoretta (*Pro Hac Vice*)
JMacoretta@srkw-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

*Attorneys for Plaintiff and the Class*

1

2   N:\docs\1113-01\pleadings\Complaint 3rd Amended-Proposed.doc

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28