1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION


4

    NYGREN,                        )  CV-07-5793-JW
5                                  )
                    PLAINTIFF,     )  SAN JOSE, CALIFORNIA
6                                  )
           VS.                     )
7                                  )  JUNE 14, 2010
    HEWLETT-PACKARD COMPANY,       )
8                                  )
                    DEFENDANT.     )  PAGES 1-33
9    _____   )

10

11                TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JAMES WARE
12             UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15

16   FOR THE PLAINTIFF:  RAM & OLSON
                         BY:  MICHAEL RAM
17                       555 MONTGOMERY STREET, STE 820
                         SAN FRANCISCO, CA 94111
18

19   FOR THE DEFENDANT:  MORGAN LEWIS & BOCKIUS
                         BY:  GORDON COONEY
20                            KRISTOFOR HENNING
                         1701 MARKET STREET
21                       PHILADELPHIA, PA 19103

22

23        (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25   OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                         CERTIFICATE NUMBER 13185

                                                          1

1    FOR THE PLAINTIFF:   SPECTOR ROSEMAN KODROFF WILLIS
                          BY:   JOHN MACORETTA
2                         1818 MARKET STREET, STE 2500
                          PHILADELPHIA, PA 19103
3

4    FOR THE PLAINTIFF:   EDELSON & ASSOCIATES
                          BY:  MARK EDELSON
5                         45 W. COURT STREET
                          DOYLSTOWN, PA 18901
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    SAN JOSE, CALIFORNIA           JUNE 14, 2010

2                 P R O C E E D I N G S

3           (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5           THE CLERK:  CALLING CASE NUMBER 07-5793.

6    NATHAN NYGREN V. HEWLETT-PACKARD COMPANY.

7           ON FOR PLAINTIFF'S MOTION FOR CLASS

8    CERTIFICATION AND DEFENDANT'S MOTION TO STRIKE

9    EXPERT REPORT OF DR. LANG -- ERIC LANGBERG.

10          DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT.

11   20 MINUTES EACH SIDE ALL MOTIONS.

12          COUNSEL, PLEASE COME FORWARD AND STATE

13   YOUR APPEARANCES.

14          THE COURT:  LET'S WAIT FOR THE TECHNICIAN

15   TO GET HIS EASELS ALL THE WAY UNDONE.

16          VERY WELL.  STATE YOUR APPEARANCES.

17          MR. RAM:  GOOD MORNING, YOUR HONOR.

18          MICHAEL RAM OF RAM AND OLSON FOR THE

19   PLAINTIFFS.

20          MR. MACORETTA:  GOOD MORNING, YOUR HONOR.

21          JOHN MACORETTA FROM SPECTOR ROSEMAN

22   KODROFF & WILLIS HERE FOR THE PLAINTIFFS AS WELL.

23          MR. EDELSON:  MARK EDELSON, EDELSON &

24   ASSOCIATES, ALSO FOR THE PLAINTIFFS.

25          MR. COONEY:  GOOD MORNING, YOUR HONOR.
```

1    GORDON COONEY FROM MORGAN LEWIS & BOCKIUS FOR

2    HEWLETT-PACKARD.

3              MR. HENNING:  GOOD MORNING, YOUR HONOR.

4    KRIS HENNING FROM MORGAN LEWIS, ALSO FOR HP.

5              THE COURT:  WELL, SOME OF THE MATTERS

6    HERE ARE UNDER SEAL, SO I DIDN'T CLOSE THE

7    COURTROOM.  AND SO WE OUGHT TO BE CAREFUL, IF YOU

8    NEED TO GET INTO ANY OF THAT MATTER, TO LET ME

9    KNOW.

10             WHAT I WOULD HAVE YOU SPEND YOUR TIME

11   HERE, IF THERE ARE OTHER MATTERS THAT'S FINE, BUT

12   THE COURT IS INTERESTED TO HEAR THE STANDING ISSUE

13   ADDRESSED MORE.  AND SO THIS IS A DEFENDANT'S

14   CONTENTION THAT THE PLAINTIFF LACKED STANDING TO

15   PURSUE THEIR UCL CLAIM.

16             I UNDERSTAND THAT THE PLAINTIFFS DON'T

17   DISPUTE THAT THERE ARE LOTS OF CONNECTIONS OUTSIDE

18   OF CALIFORNIA, BUT FEEL THAT THERE'S A SUFFICIENT

19   CONNECTION.

20             SO LET'S CALL ON THE DEFENDANT'S FIRST.

21             MR. COONEY:  YOUR HONOR, MR. HENNING IS

22   GOING TO ADDRESS THE SUMMARY JUDGEMENT MOTION AND

23   THE UCL STANDING ISSUES.  AND IF NECESSARY,

24   YOUR HONOR, I WILL ADDRESS THE CLASS CERTIFICATION

25   ISSUES.

4

1           THE COURT:  VERY WELL.

2           MR. HENNING:  TO THAT POINT, SUBJECT TO

3   THE COURT'S SCHEDULE FOR 20 MINUTES A SIDE ON ALL

4   THE MOTIONS, UNLESS YOUR HONOR PREFER A DIFFERENT

5   SCHEDULE.

6           YOUR HONOR, WE ARE IN A DIFFERENT

7   PROCEDURAL POSTURE THAN THE NVIDIA FOLKS YOU SPOKE

8   TO.

9           A LITTLE MORE THAN A YEAR AGO, MAY 2009,

10  YOUR HONOR DISMISSED MOST OF THE PLAINTIFF'S CASE

11  IN THIS CASE.  THAT LEAVES JUST ONE CLAIM, YOUR

12  HONOR, THAT IS UNDER THE UNFAIR PRONG OF THE

13  CALIFORNIA UNFAIR COMPETITION LAW.

14          THE PLAINTIFFS ALLEGE THAT HP KNOWINGLY

15  SOLD THE COMPUTERS WITH DEFECTIVE WIRELESS INTERNET

16  CAPABILITY DESIGN AND FAILED TO FIX THEM.

17          PLAINTIFFS NEED TO PROVE A FEW THINGS:

18  THE PROP 64 STANDARD REQUIREMENTS, OF COURSE;

19  INJURY AND FACT OR LOSS OF PROPERTY OR MONEY AS A

20  RESULT OF HP'S ALLEGED CONDUCT; AND THE SUBSTANTIAL

21  CONSUMER INJURY THAT COULD NOT BE AVOIDED AND

22  BENEFITS TO CONSUMERS UNDER THE DOWNEY TEST.

23          YOUR HONOR HAS HIT ON THE FIRST REASON

24  SUMMARY JUDGEMENT IS APPROPRIATE FOR HP IN THE

25  CASE, AND THAT IS THE SOLE STATUTE UPON WHICH

1    PLAINTIFFS RELY, THE UCL DOESN'T APPLY TO THEIR

2    CLAIMS FOR THIS REASON.

3              THE UCL WAS NOT INTENDED TO AND DOES NOT

4    REACH AN ALLEGED INJURY TO A NON CALIFORNIA

5    RESIDENT RESIDING OUTSIDE OF CALIFORNIA,

6    PARTICULARLY FROM CONDUCT THAT DIDN'T ARISE OUT OF

7    CALIFORNIA.

8              WE CITED YOUR HONOR TO THE YOUNG V. HP

9    MOTION TO DISMISS DECISION FROM A FEW MONTHS AGO IN

10   THE CENTRAL DISTRICT.

11             THERE, THE COURT REJECTED A UCL CLAIM

12   AGAINST HP BY A NON CALIFORNIA RESIDENT BASED ON

13   THE PURCHASE OF AN HP PRODUCT OUTSIDE OF CALIFORNIA

14   THAT WAS DESIGNED AND MANUFACTURED OUTSIDE OF

15   CALIFORNIA.

16             WE ARE IN A DIFFERENT PROCEDURAL POSTURE,

17   SUMMARY JUDGEMENT VERSUS MOTION TO DISMISS, BUT

18   THAT THE SAME ANALYSIS APPLIES TO OUR CASE IN THIS

19   WAY.

20             NO PLAINTIFF IS A CALIFORNIA RESIDENT.

21   THEY ARE WISCONSIN, FLORIDA, AND VIRGINIA RESIDENTS

22   WHO RESPECTIVELY WHO BOUGHT THEIR COMPUTERS IN

23   THEIR HOME STATES, TESTIFIED THEY USED THEM

24   EXCLUSIVELY OUTSIDE OF CALIFORNIA, IN MOST

25   INSTANCES IN THEIR HOME STATES, BUT NONETHELESS

1    OUTSIDE OF CALIFORNIA, AND THEREFORE EXPERIENCED

2    ANY ALLEGED PROBLEMS, WHETHER WIRELESS CONNECTIVITY

3    OR OTHERWISE, OUTSIDE OF CALIFORNIA.

4            TAKE A STEP BACK AND LOOK AT HP'S

5    CONDUCT.  THE PLAINTIFFS OUTSIDE OF CALIFORNIA, NO

6    INJURY OCCURRING WITHIN CALIFORNIA.

7            FROM HP'S PERSPECTIVE, YOUR HONOR, HP'S

8    NOTEBOOK COMPUTER GROUP WHO MANAGES THE DEVELOPMENT

9    OF NOTEBOOK COMPUTERS IN THIS CASE IS LOCATED IN

10   HOUSTON, TEXAS.  IT'S NOT SURPRISING, THEREFORE,

11   THE CONNECTION TO EACH PHASE OF THE CASE, AS THESE

12   COMPUTERS PROGRESS, DOESN'T EXIST BETWEEN THE

13   PLAINTIFFS IN CALIFORNIA.

14           THE COMPUTERS WERE NOT DESIGNED IN

15   CALIFORNIA, THEY WERE DESIGNED FOR THE MOST PART

16   OUTSIDE THE COUNTRY FROM THE HP FOLKS IN HOUSTON,

17   TEXAS IN THE COMPUTER GROUP.  THEY WEREN'T

18   MANUFACTURED CALIFORNIA, THEY WERE ASSEMBLED

19   OUTSIDE OF CALIFORNIA.

20           LIKEWISE, PLAINTIFF'S CALLS TO HP TO

21   COMPLAIN ABOUT THEIR COMPUTERS WERE ROUTED OUTSIDE

22   OF CALIFORNIA, IN MOST CASES OUTSIDE THE COUNTRY,

23   BUT AT THE VERY LEAST OUTSIDE OF CALIFORNIA.

24           YOUR HONOR, FACED WITH ALL OF THAT AND

25   THERE'S A SERIES OF TEXAS CONNECTIONS, IN SOME

1   CASES CHINA CONNECTIONS AND TAIWANESE CONNECTIONS

2   THAT ARE SET FORTH IN THE DECLARATIONS WE PUT IN

3   WITH THE PAPERS.  FOR INSTANCE, AS ONE EXAMPLE

4   YOUR HONOR, THE MOTHERBOARDS USED IN THESE

5   COMPUTERS WERE SORT OF, WITHOUT GETTING TOO

6   TECHNICAL, HOUSED IN THE CHIP THAT PLAINTIFFS CLAIM

7   WAS THEIR PROBLEM, MANUFACTURED IN CHINA AND THE

8   REPAIRS DON'T OCCUR, FOR THE PLAINTIFFS COMPUTERS,

9   WOULDN'T HAVE OCCURRED IN CALIFORNIA.

10          THE PLAINTIFF'S COMPUTERS ARE ATLANTIS

11   MODELS.  YOU SEE IN THE PLAINTIFFS PAPERS REFERENCE

12   TO ATLANTIS MODELS TO INTERNAL CODE NAMES WITHIN

13   HP.

14          FOR ATLANTIS MODELS SUBMITTED TO HP FOR

15   REPAIR, THEY WOULD HAVE BEEN REPAIRED AND SENT TO

16   TENNESSEE FOR REPAIR.

17          YOUR HONOR, FACED WITH THESE FACTS, ALL

18   OF WHICH ARE UNDISPUTED IN THE SUMMARY JUDGEMENT

19   RECORD, THE PLAINTIFFS HAVEN'T RELIED ON THEIR OWN

20   CONNECTION TO CALIFORNIA OR THEIR OWN COMPUTER'S

21   CONNECTION TO CALIFORNIA, HAVING ATTEMPTED TO ARGUE

22   THAT THEY DID USE THEM IN CALIFORNIA OR BOUGHT THEM

23   IN CALIFORNIA.  INSTEAD, PLAINTIFFS HAVE RELIED ON

24   AN AGREEMENT BETWEEN HP AND NVIDIA.

25          YOU HEARD REFERENCE TO THE AGREEMENTS IN

8

1  THE PRIOR ARGUMENT, ONE OF WHICH WAS BETWEEN HP AND

2  NVIDIA.

3          YOUR HONOR, IN THE FIRST PLACE, THE

4  AGREEMENT IS ENTIRELY IRRELEVANT AND HAS NOTHING TO

5  DO WITH HP'S SUMMARY JUDGEMENT ARGUMENTS IN THIS

6  WAY.  THAT AGREEMENT GOVERNS A RELATIONSHIP BETWEEN

7  HP AND NVIDIA AND NOT A RELATIONSHIP BETWEEN

8  PLAINTIFFS AND HP.

9          IT'S PLAINTIFF'S LIMITED WARRANTY WITH HP

10  THAT GOVERNS THAT RELATIONSHIP IN CONNECTION WITH

11  OTHER SUMMARY JUDGEMENT ARGUMENTS WITH CLASS

12  CERTIFICATION ISSUES.  NEVERTHELESS, SINCE THE

13  PLAINTIFFS RAISED IT, IT'S WORTH ADDRESSING.

14          YOUR HONOR, HP'S COSTS IN TAKING CARE OF

15  ITS CUSTOMERS HAVE WELL EXCEEDED ANYTHING FROM

16  NVIDIA.  WE ARE NOT TALKING, THEREFORE, ABOUT ANY

17  SORT OF WINDFALL SITUATION FOR HP WHICH IS SORT OF

18  WHAT THE PLAINTIFFS HAVE SUGGESTED IN MORE RECENT

19  PAPERS.

20          IN AN ATTEMPT TO GET AROUND THE UCL

21  STANDING ISSUE, THE LACK OF CONNECTION TO

22  CALIFORNIA, THE PLAINTIFFS HAVE POINTED TO A

23  CALIFORNIA VENUE AND CHOICE OF LAW CLAUSE IN THAT

24  AGREEMENT.

25          YOUR HONOR, AT THE RISK OF STATING THE

9

1    OBVIOUS, THAT AGREEMENT GOVERNS CLAIMS BETWEEN HP

2    AND NVIDIA.  IT IS AN AGREEMENT BETWEEN HP AND

3    NVIDIA.  IT SPEAKS NOTHING TO THE FACT OF WHAT LAW

4    COULD APPLY TO THE PLAINTIFF'S CLAIMS AGAINST HP.

5            WHEN YOU STEP BACK AND LOOK AT THOSE

6    FACTS THAT ARE RELEVANT, YOU GET BACK TO WHERE WE

7    STARTED, NON CALIFORNIA RESIDENTS WHO BROUGHT

8    PRODUCTS OUTSIDE OF CALIFORNIA THAT WERE DESIGNED

9    AND MANUFACTURED OUTSIDE OF CALIFORNIA.

10           YOUR HONOR, IF I COULD, I WOULD LIKE TO

11   RESERVE THREE-MINUTES TO RESPOND TO THE PLAINTIFFS

12   OR SO.

13           THE COURT:  SURE.  LET'S HEAR FROM YOUR

14   OPPONENT.

15           MR. RAM:  THANK YOU, YOUR HONOR.

16   I'VE GOT A BINDER THAT HAS FIVE EXHIBITS, AND AT

17   THE END THERE'S A TAB THAT TALKS ABOUT HP'S

18   CALIFORNIA CONTACTS.  AND WITH THE COURT'S

19   PERMISSION I WOULD LIKE TO HAND IT TO THE COURT.

20           AND YOUR HONOR, IF IT'S OKAY, I'VE GOT

21   ONE FOR THE LAW CLERKS.

22           THE COURT:  SURE.  JUST GIVE IT TO THE

23   CLERK.

24           MR. RAM:  YES, YOUR HONOR.

25           THE COURT:  GO AHEAD.

10

1          MR. RAM:  THE LAST TAB IN THE BINDER,

2     YOUR HONOR, IS CALLED HP CALIFORNIA CONTACTS.

3          FIRST OF ALL, AS THE COURT OF COURSE

4     KNOWS, AND THAT'S WHY THE COURT GETS SO MANY OF

5     THESE CASES, IS HEWLETT-PACKARD IS HEADQUARTERED IN

6     PALO ALTO.  HEWLETT-PACKARD MANAGEMENT IN PALO ALTO

7     WAS ULTIMATELY RESPONSIBLE FOR DECISIONS CONCERNING

8     THE HP NOTEBOOK COMPUTERS.

9          CALIFORNIA -- I GUESS I SHOULD STOP AND

10    REMIND THE COURT THAT WE'VE GOT ONE CLAIM HERE, THE

11    UNFAIRNESS PRONG OF THE UCL.  SO OUR CASE IS MUCH

12    SIMPLER THAN THE NVIDIA ONE THAT PROCEEDED IN THAT

13    WAY.  IT'S THE ENTIRE COURSE OF CONDUCT BY HP WHEN

14    THEY TREATED OUR CLASS MEMBERS, INCLUDING NOT

15    TELLING THEM THAT THEY'RE DEFECTIVE, NOT FIXING

16    THEM, GIVING THEM THESE BOGUS BIOS FIXES THAT MASK

17    THE PROBLEM AND DON'T FIX IT, TALKING TO THEM ON

18    THE PHONE AND GIVING THEM ALL KINDS OF FIXES THAT

19    DON'T WORK, NEVER COMING UP WITH A REMEDY.  SO IT'S

20    THE WHOLE COURSE OF CONDUCT.

21          IT BEGINS HERE, YOUR HONOR, WHERE

22    CALIFORNIA WAS THE HUB OF HP'S MARKETING OF ITS

23    NOTEBOOK COMPUTERS; THAT'S THE THIRD BULLET POINT

24    HERE.

25          IN MAY 2006, THE HP MOBILITY SUMMIT WITH

1    PRESS COVERAGE FOR THEIR NEW CONSUMER NOTEBOOKS

2    THAT WE ARE FIGHTING ABOUT HERE, YOUR HONOR, FROM

3    OVER 45 UNITED STATES PRESS AND ANALYSTS, WAS IN

4    SAN FRANCISCO.  THAT'S WHERE THEY ADVERTISE, NOT IN

5    TEXAS, NOT IN CHINA, IN SAN FRANCISCO, IN

6    CALIFORNIA.

7            AND I WON'T RECITE THE CITES WE'VE GOT

8    HERE IN THE BINDER FOR THE COURT, BUT ALL OF THIS

9    IS IN THE RECORD, YOUR HONOR.

10           THE NEXT BULLET POINT, THE PRODUCT

11   PROMOTION EMANATED FROM CALIFORNIA.  PRESS

12   CONFERENCES ADVERTISING HP NOTEBOOKS OCCURRED IN

13   SAN FRANCISCO.

14           THE NEXT BULLET POINT, AND HERE IS WHERE

15   WE GET TO ONE OF THE TWO DOCUMENTS IN THE CASE THAT

16   ARE NOW SEALED, YOUR HONOR.  INITIALLY, HP SEALED

17   EVERY SINGLE INTERNAL DOCUMENT THAT THEY PRODUCED.

18   WE HAVE BEEN FIGHTING WITH THEM ABOUT THAT SINCE

19   FEBRUARY.  AND WE HAVE BEEN IN FRONT OF MAGISTRATE

20   LLOYD.

21           AND NOW WE'VE BOILED IT DOWN TO WHERE

22   THERE'S JUST A COUPLE DOCUMENTS.  BUT ONE OF THEM

23   IS THE AGREEMENT THAT COUNSEL HAS REFERRED TO.  SO

24   I'M TRYING TO TREAD CAUTIOUSLY HERE, YOUR HONOR.

25   BUT IT'S EXHIBIT 1.  IT'S UNDER SEAL AND IT'S THE

1    FIRST EXHIBIT IN THE BINDER.

2            AND IF YOUR HONOR WOULD TURN TO THE FIRST

3    EXHIBIT IN THE BINDER, YOU WILL SEE AT THE TOP --

4    MAY I READ IT INTO THE RECORD, YOUR HONOR?

5            THE COURT:  NO, I CAN READ IT.

6            MR. RAM:  OKAY.

7            THE COURT:  TELL ME WHAT PAGE.

8            MR. RAM:  LET'S LOOK AT PAGE 1.  AND

9    THERE ARE A NUMBER OF "WHEREAS" CLAUSES.

10           AND I WOULD ASK THE COURT TO PLEASE LOOK

11   AT THE LAST TWO WHEREAS CLAUSES ON PAGE 1 AND YOU

12   WILL SEE WHAT CASE IS DESCRIBED HERE AS HAVING BEEN

13   RESPONSIBLE FOR THIS DOCUMENT THAT WE HAVE UNDER

14   SEAL.

15           THE COURT:  YEAH.

16           MR. RAM:  AND THEN IF THE COURT WOULD

17   LOOK AT PAGE 3 OF EXHIBIT 1.

18           THE COURT:  YES.

19           MR. RAM:  UNDER "PAYMENT TERMS" YOU SEE

20   HOW MUCH MONEY HAS TRANSPIRED HERE SO FAR, BECAUSE

21   OF THE CASE LISTED IN EXHIBIT 1.

22           SO ANYWAY, IF WE COULD NOW RETURN TO THE

23   HP CALIFORNIA CONTEXT, WHICH IS THE LAST TAB, WE

24   SEE HP'S NOTEBOOK CHIP MANUFACTURER, NVIDIA, AS THE

25   COURT KNOWS, IS HEADQUARTERED IN SANTA CLARA.

1          AND HP'S SETTLEMENT WITH NVIDIA WHICH WAS

2     PROMPTED BY OUR CASE WHICH WAS PART OF THE COURSE

3     OF DEALING THAT HP HAS ENGAGED IN WITH RESPECT TO

4     OUR CLASS MEMBERS WHERE THEY'VE GONE TO NVIDIA AND

5     SAID, YOU GUYS OWE US BECAUSE THERE'S A CLASS-WIDE

6     DEFECT.  IT IS AN EPIDEMIC FAILURE.

7          AND OTHER DOCUMENTS IN HERE, YOUR HONOR,

8     EXHIBIT 11, HP'S ENGINEERS CALLED A TRAIN WRECK,

9     THAT ONE IS PUBLIC.

10         BASED ON THIS TRAIN WRECK THAT THEY'VE

11    INFLICTED ON OUR CLASS MEMBERS, THEY'VE GONE AND

12    TAKEN A SUBSTANTIAL AMOUNT OF MONEY AND THEY

13    HAVEN'T GIVEN IT TO OUR CLASS MEMBERS.

14         AND IN THAT AGREEMENT, THEY SAY NOTICES

15    CONCERNING THE SETTLEMENT SHOULD GO TO NVIDIA IN

16    SANTA CLARA.

17         THE NEXT BULLET POINT, HP'S MANAGER FOR

18    TEST LIABILITY, GLOBAL ENGINEERING AND TEST

19    SERVICES, IS LOCATED IN PALO ALTO.  THIS SAYS IT --

20    IT SHOULD SAY, HE WAS INVOLVED IN DISCUSSIONS

21    CONCERNING QUANTA WHICH MAKES THE BOX.

22         THIS DOCUMENT IS ALSO UNDER SEAL.  THEY

23    GOT MONEY FROM QUANTA IN THIS CLASS-WIDE DEAL.

24         THE COURT:  LET ME SEE IF I CAN FOCUS

25    YOUR ARGUMENT.

14

1                I CAN SEE SOME THINGS THAT CONNECT HP AND

2     NVIDIA TO CALIFORNIA, OF COURSE.

3                AS YOUR FIRST BULLET POINT POINTS OUT,

4     ITS HEADQUARTERS ARE IN PALO ALTO AND NVIDIA IS A

5     CALIFORNIA COMPANY.  NO DOUBT THAT THE CLASS SHOULD

6     HAVE AVAILABLE TO IT, THEN, THE RIGHT TO BRING THE

7     CLAIM AGAINST HP.

8                BUT WHY CALIFORNIA?  WHAT IS IT ABOUT

9     CALIFORNIA THAT WOULD MAKE THIS -- WELL, LET ME ASK

10    IT THIS WAY:  WHAT IS IT ABOUT TEXAS THAT WOULD BE

11    DIFFERENT SUCH THAT YOU NEED TO BE IN CALIFORNIA IN

12    ORDER TO OBTAIN EFFECTIVE RELIEF?

13               MR. RAM:  BECAUSE IF YOU LOOK AT THE CASE

14    LAW, YOUR HONOR, THERE'S THE MAZZA CASE THAT WE

15    CITED, THERE'S THE PARKINSON CASE THAT WE CITED,

16    THERE'S THE KEILHOLTZ CASE.

17               THESE ARE ALL CASES IN FEDERAL COURT IN

18    CALIFORNIA THAT DEFENDANTS' HEADQUARTERS ARE

19    IMPORTANT.  IN ALL THESE CASES YOU'VE GOT A

20    DEFENDANT HEADQUARTERED IN CALIFORNIA, PLUS YOU'VE

21    GOT SOME OTHER CONDUCT.

22               THE COURT:  BUT WHAT IS IT ABOUT THAT

23    THAT WOULD MAKE TEXAS OR SOME OTHER PLACE WHERE THE

24    SITE OF THIS PRODUCT, ITS MANUFACTURER, ITS

25    TESTING, WHAT IS IT THAT YOU WOULD BE DENIED IF YOU

                                                      15

1    ARE NOT REQUIRED TO BRING YOUR CLAIM THERE?

2              MR. RAM:  WELL, YOU WOULD MOST LIKELY BE

3    DENIED THE RIGHT TO HAVE A NATIONAL CLASS.

4              THE COURT:  WHY?

5              MR. RAM:  BECAUSE THE CASES THAT CERTIFY

6    THE NATIONAL CLASSES LOOK TO SEE WHERE THE

7    DEFENDANT IS HEADQUARTERED BECAUSE THEY SAY, WHEN

8    THE LEGISLATURE -- WHEN THE CALIFORNIA LEGISLATURE,

9    FOR EXAMPLE, PASSES THE UNFAIR COMPETITION LAW,

10   THEY'RE LOOKING TO SEE HOW ARE WE GOING TO REGULATE

11   BUSINESSES THAT ARE HEADQUARTERED IN OUR STATE?

12             THE COURT:  AND TEXAS DOES NOT HAVE A

13   COMPARABLE LAW -- THAT'S WHAT I'M TRYING TO GET YOU

14   TO TELL ME.  HAVE YOU LOOKED TO SEE WHETHER THERE'S

15   SOMETHING ABOUT CALIFORNIA THAT IS SO UNIQUE TO

16   THIS THAT YOU WOULDN'T BE ABLE TO GO TO ANOTHER

17   PLACE AND BRING YOUR CLAIM?  BECAUSE I'VE GOT TO

18   WEIGH VARIOUS THINGS.

19             AND I SEE PAGES AND PAGES OF CONTACTS

20   THAT ARE OUTSIDE OF CALIFORNIA, BUT THAT DOESN'T

21   MEAN THAT I'M RUNNING A NUMEROSITY TEST.  BUT I

22   WANT TO KNOW A FACTOR THAT WOULD WEIGH MORE HEAVILY

23   WITH ME.

24             AND YOU SAY, JUDGE, THERE WOULD BE SOME

25   INJUSTICE, THERE WOULD BE UNFAIRNESS, THERE'S SOME

1    STRONG REASON WHY CALIFORNIA AS OPPOSED TO THE

2    OTHER PLACE.

3           IF IT'S SIMPLY A MATTER OF CONVENIENCE,

4    THAT WEIGHS LESS HEAVILY FOR ME.  AND I'M NOT

5    SAYING IT'S SIMPLY A MATTER OF CONVENIENCE, I'M

6    TRYING ASK YOU TO PUT ME ON THAT SCALE AND SHOW ME

7    WHY CALIFORNIA.

8           MR. RAM:  YES, YOUR HONOR.

9           A COUPLE POINTS.

10          ONE, THE CALIFORNIA LEGISLATURE HAS MADE

11   A CONSIDERED JUDGMENT THAT COMPANIES LIKE

12   HEWLETT-PACKARD THAT ARE HEADQUARTERED IN

13   CALIFORNIA SHOULD ABIDE BY THE UNFAIR COMPETITION

14   LAW OF CALIFORNIA.

15          AND THIS LAW, I BELIEVE, IS MORE

16   PROTECTIVE OF CONSUMERS THAN THE LAW OF TEXAS,

17   BECAUSE HERE WE'VE GOT TOBACCO II WHICH SAYS YOU

18   CAN HAVE CLASS-WIDE RELIEF WITHOUT SHOWING

19   INDIVIDUAL INJURY CAUSATION AND DAMAGE.

20          THE COURT:  AND IN TEXAS?

21          MR. RAM:  TEXAS DOES NOT HAVE A SIMILAR

22   LAW TO TOBACCO II.  TEXAS HAS A SIMILAR PROTECTION

23   STATUTE.

24          AND I SUPPOSE WE COULD GO AROUND THE

25   COUNTRY AND FIND 50 CLASS ACTIONS IN 50 STATES, BUT

17

1    WE COULDN'T CERTIFY NATIONAL TRANSACTIONS.

2           THE COURT:  YOU HAVEN'T TOLD ME ENOUGH.

3           YOU ARE SAYING TEXAS HAS A CONSUMER

4    PROTECTION LAW.  YOU ARE SAYING IT DOES NOT ALLOW A

5    NATIONWIDE CLASS ACTION?

6           MR. RAM:  I DON'T THINK HERE YOU HAVE A

7    DEFENDANT WHO IS HEADQUARTERED IN CALIFORNIA.

8    THERE IS -- THERE ARE ANY CASES, AND THIS IS WHAT I

9    DO YOUR HONOR, THIS IS MY WHOLE PRACTICE, I DO

10   THESE CONSUMER CLASS ACTION PRACTICES.

11          THE COURT:  IF YOU HAVE DONE IT ENOUGH,

12   YOU CAN ANSWER MY QUESTION.

13          IS THERE SOMETHING ABOUT THE TEXAS LAW

14   THAT WILL NOT ALLOW A NATIONWIDE CLASS?

15          MR. RAM:  YES.

16          THE COURT:  WHAT?

17          MR. RAM:  YOU CAN'T CERTIFY A NATIONWIDE

18   CLASS ACTION IN TEXAS WITH A CALIFORNIA DEFENDANT,

19   IS MY UNDERSTANDING OF THE CASE LAW.

20          THE COURT:  CAN YOU CITE TO ME A CASE

21   THAT I CAN LOOK AT THAT SAYS THAT IN TEXAS?  THIS

22   WOULD BE A TEXAS SUBSTANTIVE PRINCIPLE.

23          MR. RAM:  THAT'S MINDING OF THE LAW OF

24   THE FIFTH CIRCUIT, AND I DON'T HAVE IT OFF THE TOP

25   OF MY HEAD, YOUR HONOR, BUT I CAN GET IT TO YOU

1    WITHIN THE WEEK.

2            THE COURT:  ALL RIGHT:

3            I CAN LOOK MYSELF, BUT THAT CAN MAKE A

4    DIFFERENCE TO ME.

5            ARE YOU FAMILIAR WITH THE FIFTH CIRCUIT

6    AND SAYING THAT A TEXAS STATUTE SUBSTANTIVE LAW

7    WILL NOT ALLOW YOU TO CERTIFY A NATIONWIDE CLASS IF

8    THE MANUFACTURER IS OUTSIDE OF TEXAS?

9            MR. COONEY:  YOUR HONOR, TO BE FAIR, WE

10   DON'T THINK A NATIONWIDE CLASS IS APPROPRIATE.

11           THE COURT:  I KNOW, BUT I'M ASKING THAT

12   QUESTION.

13           MR. COONEY:  I'M NOT AWARE OF A TEXAS

14   STATE STATUTE THAT WOULD SAY THAT.

15           AGAIN, TO BE UP FRONT, YOUR HONOR, I'M

16   NOT SUGGESTING THERE WOULD BE THE CAPABILITY OF A

17   NATIONWIDE CLASS.

18           THE COURT:  I UNDERSTAND.

19           SO THAT'S THE REASON I'M LOOKING TO

20   CALIFORNIA, BECAUSE ALTHOUGH THERE ARE LOTS OF

21   CONNECTIONS TO TEXAS AND OTHER PLACES, THIS IS HP'S

22   WORLD HEADQUARTERS AND IT IS THE ONLY STATE WHICH

23   WOULD ALLOW A NATIONWIDE CLASS, PRESUMING I WILL

24   ALLOW THEM.

25           MR. RAM:  THAT'S MY UNDERSTANDING OF THE

1    LAW, YOUR HONOR, FROM HAVING READ THOUSANDS OF

2    THESE CASES.

3            THE COURT:  WELL, I WANT TO LOOK, BUT

4    THAT -- THAT'S MORE THAN SIMPLY ARGUING THAT ITS

5    WORLD HEADQUARTERS, WHICH I DON'T TAKE TO BE A

6    SIGNIFICANT FACTOR AS MUCH AS WHERE THE PROBLEM

7    TOOK PLACE, THESE WERE NOT MANUFACTURED IN

8    CALIFORNIA.

9            AS I UNDERSTAND IT, NONE OF THE WARRANTY

10   SERVICE WAS IN CALIFORNIA.  THERE MIGHT BE LAB

11   TESTING OR THAT SORT OF THING THAT TOOK PLACE HERE,

12   BUT EVERYTHING IMPORTANT TO THIS CASE TOOK PLACE

13   OUTSIDE OF CALIFORNIA.

14           MR. RAM:  WELL, THEY SHIPPED THEM OFF TO

15   NVIDIA OR QUANTA, AND QUANTA IS IN CHINA,

16   YOUR HONOR.

17           BUT MAY I KEEP MARCHING THROUGH MY BULLET

18   POINTS HERE WITH THE CALIFORNIA CONTEXT?

19           THE COURT:  WELL, YOU ARE AT THE BULLET

20   POINT THAT I'M MOST CONCERNED ABOUT, BUT I'LL LET

21   YOU FINISH YOUR ARGUMENT.

22           MR. RAM:  THE LAST ONE WE LOOKED AT WAS

23   HP'S MANAGER FOR RELIABILITY TEST ENGINEERING,

24   GLOBAL ENGINEERING SERVICES IS LOCATED IN PALO

25   ALTO.  HE WAS INVOLVED IN DISCUSSIONS CONCERNING

1    QUANTA NVIDIA.

2            THE COURT:  THESE ARE ALL PERTINENT TO

3    THE HEADQUARTERS BEING HERE.

4            IF YOUR HEADQUARTERS ARE HERE, YOU'VE GOT

5    LOTS OF MANAGERS HERE, THAT WOULD HAVE LOTS TO DO

6    WITH THINGS THAT TAKE PLACE ELSEWHERE.

7            BUT THAT'S JUST THE NATURE OF

8    HEADQUARTERS.

9            MR. RAM:  I WOULD ALSO POINT YOUR HONOR,

10   JUMPING AHEAD TO THE LAST BULLET POINT ON PAGE 1,

11   THE PLURALITY OF THE CLASS MEMBERS NATIONALLY ARE

12   IN CALIFORNIA.

13           AND IF YOU LOOK AT THE CLOTHESRIGGER CASE

14   WHICH IS IN OUR PAPERS THERE, THAT WAS AN IMPORTANT

15   FACTOR TO THE COURT IN CERTIFYING A NATIONAL CLASS

16   IN CALIFORNIA.

17           AND FRANKLY, YOUR HONOR, THAT IS A FACT

18   THAT THE TEXAS COURT WOULD HOLD AGAINST US IN

19   TRYING TO CERTIFY A NATIONAL CLASS IN TEXAS.

20           AND IF THE COURT WOULD PLEASE TURN TO THE

21   SECOND PAGE OF THIS LIST OF ALL THE HP CALIFORNIA

22   CONTACTS, ALL THE HP NOTEBOOK COMPUTERS SUBMITTED

23   FOR REPAIR THROUGH ONE OF HP'S RETAIL PARTNERS AND

24   OR AUTHORIZED SERVICE PROVIDERS MAY BE ROUTED TO

25   CHINO, CALIFORNIA OR TO KENTUCKY.

1       APOLLO CUSTOMERS INTERFACING THEIR UNITS

2   FOR REPAIR SUBMIT THEIR UNITS TO FREMONT,

3   CALIFORNIA.

4       HP EXPERTS FROM PALO ALTO WERE INVOLVED

5   IN THE DISCUSSIONS WITH NVIDIA.  SIGNIFICANT

6   FINDINGS WERE DERIVED FROM THE LAB IN CALIFORNIA.

7   HUNT HODGE, OF HP, SAID DISCUSSIONS WITH NVIDIA AND

8   QUANTA SHOULD INVOLVE A TACTICAL PLAN FOR

9   ENGAGEMENT, MOST LIKELY IN CALIFORNIA WHERE WE HAVE

10  BOTH HAVE NVIDIA AND LABS IN PALO ALTO.

11      NVIDIA'S TEAM IN CALIFORNIA WAS

12  RESPONSIBLE FOR REVIEWING EVIDENCE REGARDING THE

13  DEFECTIVE NVIDIA CHIP THAT WAS CAUSING WIRELESS

14  PROBLEMS IN HP NOTEBOOK COMPUTERS.  AND THEN THE

15  SETTLEMENT AGREEMENT WE LOOKED AT SPECIFIES VENUE

16  HAS TO LIE IN CALIFORNIA.

17      AND AGAIN, YOUR HONOR, I WOULD EMPHASIZE

18  WE ARE TALKING ABOUT THE ENTIRE COURSE OF CONDUCT

19  BETWEEN HP AND OUR CLASS MEMBERS.  AND WE ARE

20  LOOKING AT CASES WHERE IF YOU'VE GOT A DEFENDANT

21  HEADQUARTERED IN CALIFORNIA AND SUBSTANTIAL, IT

22  DOESN'T HAVE TO BE ALL OR EVEN MOST OF THE CONDUCT,

23  BUT THE DEFENDANT HEADQUARTERED IN CALIFORNIA AND

24  SUBSTANTIAL CONDUCT IN CALIFORNIA, EVERY SINGLE ONE

25  OF THESE CASES MAZZA, PARKINSON, KEILHOLTZ, EVERY

1    ONE CERTIFIES A NATIONAL CLASS ON CONSUMER LAW.

2              THERE'S NO CASE ON THE OTHER SIDE WHERE

3    THERE WAS A DEFENDANT HEADQUARTERED IN SOME

4    SUBSTANTIAL RELEVANT CONDUCT IN CALIFORNIA AND THE

5    COURT SAID, I'M NOT GOING TO CERTIFY A NATIONAL

6    CLASS.

7              THERE WERE A COUPLE OTHER EXHIBITS IN THE

8    BINDER THAT SINCE THE COURT HAS IT I WOULD LIKE TO

9    TOUCH ON, IF WE MIGHT.  OR DO YOU WANT ME TO FOCUS

10   ON A DIFFERENT POINT RIGHT NOW, YOUR HONOR?

11             THE COURT:  PERTINENT TO THIS STANDING

12   ISSUE?

13             MR. RAM:  THESE EXHIBITS ARE TO SHOW THE

14   COURT WHAT, IN THE PRIOR ARGUMENT, THE COURT SAID

15   RELATE TO WHETHER WE HAVE A GOOD CLASS ACTION.  WE

16   FEEL WE HAVE A GREAT CLASS ACTION.

17             THE COURT:  LET'S STICK TO THIS.

18             LET ME GO BACK TO YOUR OPPONENT THEN.  IF

19   I WANT TO GO FURTHER INTO THE CLASS ISSUE, I WILL.

20             ACTUALLY, MY INCLINATION IS TO SAVE THAT

21   UNTIL I SOLVE THIS PROBLEM.

22             BUT DO YOU WANT TO SPEAK IN RESPONSE TO

23   COUNSEL'S BULLET POINTS?

24             MR. COONEY:  I DO, YOUR HONOR.

25   FIRST OF ALL, I THINK WHAT MR. RAM'S PRESENTATION

1  MAKES CLEAR IS THE PLAINTIFFS MADE A TACTICAL

2  DECISION HERE TO SUE UNDER THE CALIFORNIA UCL, WELL

3  AWARE OF THE FACT THAT WE WERE GOING ARGUE IT

4  WOULDN'T APPLY TO A WISCONSIN, FLORIDA AND VIRGINIA

5  RESIDENT BUYING THEIR PRODUCTS OUTSIDE OF

6  CALIFORNIA.

7        AND THE REASON THEY DID THAT IS CLEAR.

8  THEY WERE WORKING BACKWARDS FROM CLASS

9  CERTIFICATION.  BUT THIS ISN'T ABOUT CLASS

10  CERTIFICATION, AS YOUR HONOR SAID.

11        THIS IS A SUMMARY JUDGEMENT MOTION AS TO

12  THE NAMED PLAINTIFFS.  ONLY THE NAMED PLAINTIFF'S

13  CIRCUMSTANCES ARE NOW RELEVANT TO THAT SUMMARY

14  JUDGEMENT MOTION, YOUR HONOR.  THEIR CLAIMS MUST

15  RISE AND FALL AT THE SUMMARY JUDGEMENT STAGE BASED

16  ON THEIR OWN FACTS.  THERE IS NO SPECIAL CONTRARY

17  RULE UNDER RULE 56 FOR PUNITIVE CLASS ACTION OF

18  NAMED PLAINTIFFS.

19        THE CASE LAW, YOUNG AND OTHER CASES,

20  ANALYZED WHETHER THE PLAINTIFFS ARE CALIFORNIA

21  RESIDENTS OR NOT, THE PURCHASE OF THE PRODUCT

22  OUTSIDE OF CALIFORNIA, AND WHETHER THE CONDUCT THAT

23  GAVE RISE TO THE ALLEGED INJURY EMANATED FROM

24  CALIFORNIA.

25        YOUR HONOR, I RESPECTFULLY SUGGEST THAT

1    WHAT COULD HAPPEN IN OTHER PLACES IS SIMPLY NOT

2    PART OF THAT CALCULUS.  THE GEOGRAPHIC REACH OF THE

3    UCL IS WHAT IT IS AND IT DOES NOT CHANGE BY

4    PLAINTIFF'S FACTUAL DECISION TO TRY TO SUE UNDER

5    UCL FOR WHATEVER TACTICAL REASONS THEY CHOOSE, AND

6    IT IS NOT CHANGED BY WHAT COULD HAPPEN IN OTHER

7    PLACES.

8             EVEN ASSUMING THEY COULD HAVE SUED IN

9    STATE X, Y OR Z, THEY HAVE DECIDED TO PUT THEIR

10   EGGS IN THE CALIFORNIA UCL BASKET.

11            THE FACTS DON'T BEAR OUT APPLICATION OF

12   THE UCL.  AND THAT'S TRUE NO MATTER WHAT COULD

13   HAPPEN IN TEXAS OR ANY OTHER STATE.  THEY HAVE

14   TAKEN A SHOT AT THE UCL.  THE CONDUCT DOESN'T

15   SUPPORT IT, AND THAT'S THE END OF THE INQUIRY, YOUR

16   HONOR.

17            THE COURT ASKED WHETHER THERE WAS

18   SOMETHING DIFFERENT ABOUT TEXAS STATUTE OR ANOTHER

19   STATE CONSUMER PROTECTION STATUTE THAT WOULD AFFECT

20   THEIR CLAIMS.  THEY SEEM TO BE SUGGESTING THERE

21   MIGHT BE NOW.

22            IN THEIR CLASS CERTIFICATION PAPERS THEY

23   SAY THERE WAS NO DIFFERENCE BETWEEN CONSUMER

24   PROTECTION LAWS IN 50 STATES.  THAT'S NOT THE CASE,

25   BUT THAT'S THEIR POSITION.  AND IT'S DIFFICULT NOW

1    TO BACK OFF OF THAT, AND I THINK IT HIGHLIGHTS THE

2    FACT THAT THEY HAVE TAKEN THEIR SHOT AT THE

3    CALIFORNIA UCL, AND THE FACTS DON'T BEAR IT OUT.

4            YOUR HONOR, HP IS HEADQUARTERED IN PALO

5    ALTO.  THERE'S NO SECRET ABOUT THAT.  THE UCL TEST

6    IS NOT SIMPLY:  WHERE ARE YOUR HEADQUARTERS?  AS

7    YOUR HONOR HIT ON, IT'S:  WHERE HAS THE CONDUCT

8    THAT YOU CLAIM GAVE RISE TO YOUR CLAIMS OCCURRED?

9            THERE IS NOT, OTHERWISE THERE WOULD BE A

10   RULE THAT EVERY DEFENDANT HEADQUARTERED IN

11   CALIFORNIA IS SUBJECT TO A UCL CLAIM.  THAT'S NOT

12   THE LAW AND THE PLAINTIFFS HAVEN'T CITED A CASE TO

13   SHOW THAT.

14           MANY OF MR. RAM'S BULLET POINTS IN THIS

15   BINDER, WHICH I RECEIVED FOR THE FIRST TIME A

16   MINUTE AGO, ARE SIMPLY REGURGITATIONS OF ISSUES

17   RAISED IN THEIR BRIEFS.

18           YOUR HONOR CAN LOOK AT THE DECLARATION OF

19   HUNT HODGE AND NORMA NUSSBAUMER, SUBMITTED WITH OUR

20   PAPERS, TO SHOW THE LITANY OF NON CALIFORNIA

21   CONTACTS.

22           NEVERTHELESS, A FEW QUICK POINTS TO SORT

23   OF SHOW THE STRETCH PLAINTIFFS MUST GO TO TRY TO

24   INVOKE THE UCL.

25           THERE'S A REFERENCE TO THE PROMOTION OF

26

1    THESE PRODUCTS EMANATING FROM CALIFORNIA. NOT THE

2    CASE, BUT IRRELEVANT. YOUR HONOR HAS DISMISSED ANY

3    MOTION OR MISREPRESENTATION CLAIMS IN THE CASE.

4            THE CASE IS BASED ON THE DESIGN OF THE

5    PRODUCTS WHICH DIDN'T HAPPEN IN CALIFORNIA. HP'S

6    ALLEGED INABILITY TO REPAIR THE PRODUCTS, WHICH FOR

7    PLAINTIFFS MODELS OF COMPUTERS, HAPPENED IN

8    TENNESSEE.

9            THE LAST BULLET POINT ON PAGE 1 WHERE HE

10   WRITES, APPROXIMATELY 24 PERCENT OF THE NOTEBOOK

11   COMPUTERS SENT TO HP FOR REPAIRS WERE FROM

12   CALIFORNIA. THAT'S NOT THESE PLAINTIFFS. THERE

13   ARE PROBLEMS WITH THAT ASSERTION, AND WE ADDRESSED

14   THOSE IN THE CLASS CERT PAGES.

15           BUT AGAIN, YOUR HONOR BRINGS US BACK TO

16   WHAT WE'RE TALKING ABOUT HERE. THIS IS A SUMMARY

17   JUDGEMENT MOTION AS TO THESE NAMED PLAINTIFFS.

18   THEIR FACTS DON'T BEAR OUT APPLICATION OF THE UCL,

19   AND TRYING TO STRETCH TO SOMEBODY ELSE'S FACTS

20   DOESN'T MATTER.

21           THIS ISSUE IS DETERMINED THE SAME WHETHER

22   THESE THREE PLAINTIFFS SUED INDIVIDUALLY OR ON

23   BEHALF OF A PUTATIVE CLASS. IF THEIR OWN FACTS

24   DON'T SUPPORT APPLICATION OF UCL, THAT'S THE ANSWER

25   TO THAT QUESTION.

1          THE COURT:  LET ME HAVE YOUR RESPONSE TO

2     THAT, THEN I WILL HAVE THIS UNDER SUBMISSION.

3          MR. RAM:  THANK YOU, YOUR HONOR.

4          AND I WANTED TO CITE THE CASES THAT ARE

5     IN OUR PAPERS.

6          FIRST OF ALL, IN OUR OPPOSITION TO

7     SUMMARY JUDGEMENT, PAGE 15 FOOTNOTE 23, IN

8     CERTIFYING A NATIONAL CLASS UNDER THE UCL, IN

9     MAZZA V. AMERICAN HONDA, 254 F.3D 610 AT 620 TO 21,

10    SO THIS IS A PUBLISHED CASE.

11         THE COURT DID NOT EVEN MENTION WHICH

12    STATES THE CLASS REPRESENTATIVES WERE FROM.  IN

13    FACT, IN MAZZA THE CLASS REPRESENTATIVES WERE FROM

14    FLORIDA AND MARYLAND.  AND WE KNOW THAT BECAUSE

15    HONDA UNSUCCESSFULLY MOVED TO DISMISS MAZZA ON THE

16    GROUND THAT PLAINTIFFS ARE NOT RESIDENTS OF

17    CALIFORNIA AND HAVE NO SIGNIFICANT CONTACT WITH

18    CALIFORNIA SO THEY CANNOT INVOKE THE PROTECTION OF

19    CALIFORNIA LAW.

20         JUDGE FAIRBANK REJECTED THAT ARGUMENT AND

21    CERTIFIED A NATIONAL CLASS BECAUSE YOU HAD A

22    DEFENDANT HEADQUARTERED HERE IN SUBSTANTIAL

23    CONDUCT.

24         IN OUR OPENING CLASS CERT BRIEF,

25    YOUR HONOR, AT PAGE 16, LINE 10, WE HAVE THE

28

1    CLOTHESRIGGER CASE. 191 CAL APP 3D 605, WHERE

2    AGAIN, THE COURT CERTIFIED A NATIONAL CASE UNDER

3    CALIFORNIA LAW BECAUSE THE DEFENDANTS, AT LEAST ONE

4    OF THEM, WERE HEADQUARTERED HERE. A SIGNIFICANT

5    NUMBER OF THE CLASS MEMBERS RESIDED IN CALIFORNIA

6    AND ADVERTISING EMANATED FROM HERE, JUST AS

7    ADVERTISING IN OUR CASE EMANATED HERE.

8            AND THEN LASTLY, JUST WITHIN THE LAST FEW

9    MONTHS, YOUR HONOR -- THIS IS PAGE 13 OF OUR REPLY

10   BRIEF. IN THE KEILHOLTZ CASE, JUDGE WILKINS

11   CERTIFIED A NATIONAL CLASS UNDER THE UCL PRODUCT

12   CASE BECAUSE THE DEFENDANTS WERE HEADQUARTERED IN

13   CALIFORNIA AND HAD SUBSTANTIAL RELEVANT CONDUCT IN

14   CALIFORNIA.

15           THIS IS 2010, US DISTRICT LEXIS 145 53,

16   IN KEILHOLTZ THERE WAS ALSO SUBSTANTIAL CONDUCT IN

17   TEXAS AND ELSEWHERE. BUT FOLLOWING WHAT'S THE

18   UNIFORM PUBLISHED LAW, THE COURT APPLIED THE

19   CALIFORNIA UCL CERTIFIED A NATIONAL CLASS,

20   YOUR HONOR.

21           THE COURT: LET ME BRING THIS TO A CLOSE

22   AND TELL YOU WHAT I WANT TO THINK ABOUT.

23           I WANT TO THINK ABOUT WHAT TO DO IN A

24   CASE WHERE IT APPEARS THAT THE INDIVIDUALLY NAMED

25   PARTIES HAVE VERY LITTLE TO DO WITH CALIFORNIA IN

1   TERMS OF THE PROBLEM THEY ARE BRINGING BUT THE

2   DEFENDANT IS HEADQUARTERED HERE.

3           THAT'S KIND OF WHAT I HEAR IN THE

4   ARGUMENT.  THE PLAINTIFF EMPHASIZED THAT HP'S

5   HEADQUARTERS ARE IN CALIFORNIA, THAT THAT SHOULD

6   FACTOR STRONGLY IN THE COURT'S RULING ON THE

7   PENDING MOTION TO DISMISS FOR LACK OF STANDING.

8           IT ALSO POINTS TO THE FACT THAT NVIDIA,

9   WHICH MAY INDEED PLAY A PART IN THE PROBLEMS THAT

10  ARE IN CALIFORNIA, AND ON THE OTHER SIDE OF THE

11  ARGUMENT THE DEFENSE ARGUES, AND IT'S UNCONTESTED

12  BY THE PLAINTIFF, THAT ON THE FACTS THIS IS A

13  PROBLEM THAT ALTHOUGH IT'S A CALIFORNIA

14  HEADQUARTERED COMPANY, THE PRODUCT INVOLVED WAS

15  MANUFACTURED IN TEXAS AND TESTED THERE AND THE

16  WARRANTY ISSUES WERE ADDRESSED OUTSIDE OF

17  CALIFORNIA, AND THE PLAINTIFFS THAT ARE BRINGING

18  THIS CLAIM ARE PEOPLE WHO PURCHASED IN OTHER

19  STATES.

20          SO ALL OF THOSE ARE FACTORS THAT THE

21  COURT NEEDS TO TAKE A LOOK AT IN DECIDING THIS

22  MATTER.  IF I WERE AT THE -- IF I WERE AT SIMPLY A

23  MOTION FOR CLASS CERTIFICATION, I DIDN'T HAVE THIS

24  MOTION IN FRONT OF ME, THE QUESTION MIGHT BE

25  PHRASED A LITTLE BIT DIFFERENTLY BUT I THINK I

1    WOULD HAVE THAT SAME QUESTION, NEVERTHELESS.

2            SO LET ME TAKE THIS UNDER SUBMISSION AND

3    GET BACK TO YOU.  THE REASON I WANT TO DEFER

4    TALKING ABOUT CLASS CERTIFICATION IS I WANT TO

5    TREAT THIS MOTION, BECAUSE I DON'T HAVE A CLASS

6    YET, INDEPENDENTLY.  AND IF I SAY THESE PEOPLE HAVE

7    STANDING THEN I COME BACK AND THE CLASS

8    CERTIFICATION MOTION IS MUCH EASIER.

9            BUT IF I DENY STANDING THEN THERE IS NO

10   REPRESENTATIVE, ALTHOUGH YOU POINT OUT THAT A

11   PLURALITY OF PERHAPS PRODUCTS OUTSIDE WHO MIGHT

12   HAVE THIS PROBLEM ARE IN CALIFORNIA, THEY ARE NOT

13   NAMED AS PLAINTIFFS IN THIS CASE.

14           I PRESUME THAT'S BEYOND MY CONTROL.  I

15   CAN'T SAY, WELL WHY DON'T YOU BRING A VALID POINT

16   BEFORE ME, I GUESS.  BUT I HAVE TO TAKE THE CASE AS

17   PRESENTED AT THIS POINT IN TIME.

18           MR. RAM:  MAY I, YOUR HONOR?

19           THE COURT:  BRIEFLY.

20           MR. RAM:  THERE'S A RELATED CASE

21   PERRON V. HEWLETT-PACKARD.  IT DEALS WITH THE SAME

22   FACTS, IT DEALS WITH SOME DIFFERENT LEGAL THEORIES

23   BECAUSE THEY ARE BASED ON THE CONCEALMENT FACTS

24   THAT CAME OUT IN DISCOVERY IN THIS CASE.

25   THERE ARE TWO PLAINTIFFS IN THAT CASE.  ONE IS BACK

                                                    31

1    EAST AND ONE IS FROM CALIFORNIA.

2              THE COURT:  SO WHAT GOOD DOES THAT DO ME?

3              MR. RAM:  YOUR HONOR WAS ASKING HOW COME

4    WE DIDN'T HAVE A CALIFORNIA PLAINTIFF.

5              I HONESTLY DON'T THINK WE NEED ONE UNDER

6    ALL THIS LAW.  BUT I WANTED THE COURT TO KNOW,

7    SINCE THE COURT WAS ASKING, THAT THERE IS A RELATED

8    CASE.  WE ARE THE SAME COUNSEL, AND THERE IS A

9    CALIFORNIA CLASS REPRESENTATIVE THERE, YOUR HONOR.

10             THE COURT:  ALL RIGHT.  THANK YOU BOTH.

11             MR. RAM:  THANK YOU, YOUR HONOR.

12             THE COURT:  I KNOW THERE'S LOTS MORE TO

13   BE SAID.  SUBMITTED.

14             MR. RAM:  THANK YOU, YOUR HONOR.

15             THE COURT:  DOES THAT COMPLETE OUR LAW

16   AND MOTION?

17             I SEE SO MANY PEOPLE OUT THERE, SO THERE

18   MUST BE SOMETHING ELSE GOING ON.

19             THE CLERK:  THAT CONCLUDES OUR CALENDAR.

20             (WHEREUPON, THE PROCEEDINGS IN THIS

21   MATTER WERE CONCLUDED.)

22

23

24

25

1

2

3

4                        **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22            _____
             SUMMER A. FISHER, CSR, CRR
23            CERTIFICATE NUMBER 13185

24

25